# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JONATHAN MULLANE, | DOCKET NO. 1:19-CV-12379-DJC |
| *Plaintiff*, | |
| v. | |
| UNITED STATES DEPARTMENT OF JUSTICE and UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | FILED UNDER SEAL |
| *Defendants.* | |

## PLAINTIFF'S [PROPOSED] MOTION FOR JUDICIAL NOTICE AND INCORPORATED MEMORANDUM OF LAW

COMES NOW Plaintiff Jonathan Mullane (hereinafter, "Plaintiff") and hereby respectfully moves this Honorable Court to take judicial notice of the annexed public records of the United States Department of Justice (hereinafter, "DOJ"), the federal judiciary, and the judiciary of the Commonwealth of Massachusetts. See EXHIBITS A-E; H-J.

Plaintiff further moves for judicial notice of the criminal action styled United States v. Martin Lustgarten Acherman et al., Case No. 15-20840-CR-COOKE/TORRES (S.D. Fla.) together with its publicly-accessible docket sheet. See EXHIBIT F. It is further requested that the Court take judicial notice of the first page of Defendant Martin Lustgarten Acherman's "Motion to Dismiss Indictment for Violations, and Reckless Disregard, of Brady and other Discovery

Obligations[.]" See **EXHIBIT G**. In support hereof, Plaintiff relies on the grounds set forth in his incorporated Memorandum of Law, *infra*:

"The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." See Fed. R. Evid. 201(b). "The court: (1) may take judicial notice on its own; or (2) **must take judicial notice if a party requests it and the court is supplied with the necessary information.**" (Emphasis supplied) see Fed. R. Evid. 201(c). "**The court may take judicial notice at any stage of the proceeding.**" (Emphasis supplied) see Fed. R. Evid. 201(d).

Courts have consistently held that judicial notice of public records is appropriate in civil actions. See, e.g., Universal Express, Inc. v. Securities and Exchange Comm'n, 177 Fed. Appx. 52, 53 (11th Cir. 2006); Kalos v. United States, 87 Fed. Cl. 230, 241 (2009); Jefferson v. Lead Indus. Ass'n, Inc., 106 F.3d 1245, 1250 n.14 (5th Cir. 1997). As the Eleventh Circuit explained in United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994), the effect of taking judicial notice under Rule 201 is to preclude a party from subsequently introducing contrary evidence.

Fed. R. Civ. P. 201 does not require that a movant set forth any "purposes" or reasons for its request for judicial notice. However, for the convenience of the Court, Plaintiff hereby provides the following descriptions of the annexed material to be judicially noticed:

## EXHIBIT A

This exhibit contains certain public records of the DOJ which include, *inter alia*, email correspondence pertaining to Plaintiff's DOJ employment in the Asset Forfeiture Division of the Miami USAO.

## EXHIBIT B

This exhibit contains certain public records of the DOJ which include, *inter alia*, email correspondence pertaining to Defendants' willful misrepresentations and false statements on DOJ Litigation Hold addenda, falsely stating therein that:

(i)  they were not in possession of any responsive telephone records[1];

(ii) they were not in possession of any responsive personal telephone ESI whatsoever[2]; and

(iii) they were not in possession of any responsive mobile device ESI; together with other misrepresentations (many of which are even contradictory) and serious violations of the Rules of Professional Conduct.

## EXHIBIT C

This exhibit contains certain records of the DOJ which include, *inter alia*, email correspondence pertaining to correspondence between DOJ Main Justice employees in Washington, DC, and Miami USAO employees in connection with:

---

[1] But see email correspondence of Defendant Benjamin G. Greenberg sent April 18, 2019 at 09:25 hours: "I'll *call* Judge Moreno today." **EXHIBIT E**, EOUSA-2019-000468-00070.

[2] But see email correspondence of Defendant Alison W. Lehr, which was sent from her mobile telephone: "[s]ent from my iPhone[.]" **EXHIBIT E**, EOUSA-2019-000468-00765. Not only did Defendant Lehr unlawfully fail to disclose the existence of this and other responsive ESI on mobile devices, *not one* of the Miami USAO employees who signed the Litigation Hold addenda disclosed the existence of responsive ESI on their own mobile devices in violation of federal law.

3

(i) the Miami USAO's unlawful refusal and failure to produce responsive records pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") to Plaintiff for an extended **two (2) year period** in order to shield the individual Defendants Federico A. Moreno, Alison W. Lehr, and Benjamin G. Greenberg ("Individual Defendants") from civil liability, and to otherwise obstruct justice and to willfully and knowingly interfere with the administration of justice in federal civil actions pending in the District of Massachusetts[3];

(ii) the Miami USAO's unlawful refusal and failure to produce responsive records pursuant to the Privacy Act of 1974, 5 U.S.C. § 552a ("PA") to Plaintiff for an extended **two (2) year period**, in order to shield the Individual Defendants from civil liability in a RICO action pending in the District of Massachusetts, and to otherwise obstruct justice and to willfully and knowingly interfere with the administration of justice in federal civil actions;

(iii) the *personal* participation and involvement of the Individual Defendants in the FOIA/PA records "search," production, and disclosure of a woefully-incomplete corpus of responsive documents—*i.e.*, documents which were also heavily redacted, in violation of both the FOIA and PA—to Plaintiff and his attorney in the parallel FOIA/PA litigation[4] pending in the District of Massachusetts, and the openly-expressed concerns of DOJ Main Justice employees with this behavior and unlawful interference by the Miami USAO (*i.e.*, even stating in writing that the interference of the Miami USAO with Plaintiff's numerous FOIA/PA requests "may raise some questions" in the FOIA/PA litigation);

---

[3] Throughout this extended two (2) year period, the Miami USAO and Defendants herein had actual knowledge of Plaintiff's contemporaneous civil RICO action in the United States District Court for the District of Massachusetts, *viz.* Mullane et al. v. Moreno et al., Docket No. 1:18-CV-12618 (D. Mass. Dec. 20, 2018) exposing the Individual Defendants to civil liability.

[4] See, e.g., Mullane v. DOJ et al., Docket No. 1:19-CV-12379, ECF 19 (D. Mass. Nov. 19, 2019) (Casper, J.).

4

(iv) the significant, *mala fide* redaction of responsive documents by DOJ employees with a view to shield the Individual Defendants from civil liability and to otherwise unlawfully obstruct the administration of justice in federal civil actions, all in violation of the FOIA and the PA; and

(v) the fact that, while Defendants Moreno and Lehr had retained Assistant United States Attorney **JASON C. WEIDA** (hereinafter, "AUSA Weida") to represent them in their *individual* capacities in the Massachusetts RICO action;

(a) Attorney Weida was simultaneously receiving email communications from both DOJ Main Justice and the Miami USAO regarding the Miami USAO's ongoing concealment of responsive FOIA and PA records, and therefore had actual knowledge of his clients' ongoing scheme to obstruct justice; thus, he knew that a fraud was contemporaneously being perpetrated on the United States District Court for the District of Massachusetts in the matter of Mullane v. Breaking Media, Inc. et al., Docket No. 1:18-cv-12618 (D. Mass. Dec 20, 2018) by their withholding of the said responsive records[5];

(b) Attorney Weida had actual knowledge throughout his representation of Moreno and Lehr in the above-referenced RICO action of the fact that his clients were *contemporaneously* perpetrating a fraud on the court in the FOIA/PA litigation, *viz.* Mullane v. DOJ et al., Docket No. 1:19-CV-12379 (D. Mass. Nov. 19, 2019)—*i.e.*, an entirely separate action— and inexplicably failed to disclose and/or remedy the fact that his clients, in concert with

---

[5] Indeed, at all times relevant hereto, the responsive records requested by Plaintiff and his attorney through the FOIA/PA requests were all in the possession, custody, and control of the Miami USAO.

the Miami USAO, were unlawfully and corruptly withholding responsive records from Plaintiff for an extended **two (2) year** period[6];

(c) the manifest conflict of interest between the antithetical interests of the United States (*i.e.*, its interest in avoiding civil liability by simply complying with Plaintiff's FOIA/PA requests) and the interests of the Individual Defendants Moreno, Lehr, and Greenberg (*i.e.*, whose legal interests were obviously **not** served by the production of incriminating FOIA/PA records to Plaintiff and his attorney, as that would in turn expose them personally to civil liability in the Massachusetts RICO action).

## EXHIBIT D

This exhibit contains certain public records of the DOJ which include, *inter alia*, Plaintiff's lawfully-protected whistleblowing activities vis-à-vis "fraud, waste, and abuse" committed by Defendants herein and the Miami USAO within the meaning of the Whistleblower Protection Enhancement Act of 2012 ("WPEA"), see, e.g., 5 U.S.C. § 2302, together with public records pertaining to Plaintiff's written complaint of verbal abuse engaged in by Assistant United States Attorney **ADRIENNE E. ROSEN** of the Miami USAO after:

(i) AUSA Lehr and AUSA Rosen both improperly and inappropriately assigned Plaintiff to work and research assignments in connection with the Government's prosecution of Martin Lustgarden Acherman in the matter of <u>United States v. Martin Lustgarten Acherman et al.</u>, Case No. 15-20840-CR-COOKE/TORRES (S.D. Fla.), even after Plaintiff had correctly, lawfully, and timely disclosed to AUSA Lehr that:

---

[6] *All* of AUSA Weida's acts and omissions created a clear conflict of interest: while AUSA Weida had certainly acted in the interests of Defendants Moreno and Lehr, that same conduct was <u>contrary</u> to the legal and economic interests of the United States by failing to disclose and/or remedy any of the ongoing FOIA and PA violations.

(a) His father, E. Peter Mullane, Esq., was Lead Counsel of record for Defendant Lustgarten Acherman;

(b) That Plaintiff was personally acquainted with Defendant Lustgarten Acherman;

(c) That Plaintiff had previous viewed confidential and privileged information and documents obtained by defense counsel;

(d) That Plaintiff, who is fluent in both English and French and completed his bachelor degree studies at the University of Lausanne ("UNIL") (Lausanne, Switzerland), had personally assisted defense counsel after the <u>Lustgarten Acherman</u> case was terminated by translating confidential correspondence of the Swiss Government, *viz.* confidential correspondence of the Attorney General of the *Ministère public de la République et Canton de Genève* and from the federal *Ministère public de la Confédération Helvétique* ("MPC") regarding the release of seized assets and funds in Switzerland and in certain Swiss bank accounts that had been initially seized pursuant to DOJ Mutual Legal Assistance Treaty ("MLAT") requests transmitted to the Swiss Government in connection with <u>Lustgarten Acherman</u>, *supra*; and

(e) numerous other clear conflicts of interest, all of which Plaintiff had correctly, appropriately, and **timely disclosed to Defendants on the first day of his employment in the Miami USAO Asset Forfeiture Division**;

(ii) AUSA Lehr and AUSA Rosen both improperly and unethically assigned Plaintiff to work and research assignments in connection with the Government's asset forfeiture activities relating to:

(a) the same subject matter of <u>Lustgarten Acherman</u>, *supra*;

7

(b) Ongoing Miami USAO assert forfeiture activities and investigations into other Venezuelan nationals who were allegedly connected with and/or personally known to Defendant Lustgarten Acherman, whose assets the Miami USAO was seeking to recover pursuant to the pertinent federal asset forfeiture statutes through criminal, civil, and administrative forfeiture proceedings; and

(c) Ongoing Miami USAO assert forfeiture activities and investigations vis-à-vis certain corruption and money laundering activities allegedly engaged in by certain Venezuelan nationals connected and/or affiliated with **PETRÓLEOS DE VENEZUELA, S.A. ("PDVSA")**, a large multinational oil and gas concern which is wholly owned and operated by the Government of Venezuela.

## EXHIBIT E

This exhibit contains certain public records pertaining to and evidencing Defendants' unlawful conspiracy, scheme, and enterprise within the meaning of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.* ("RICO") whereby Defendants herein, together with other employees of the Miami USAO:

(i) Requested the material assistance of a sitting United States District Judge, *viz.* Defendant **FEDERICO A. MORENO** of the United States District Court of the Southern District of Florida, to corruptly interfere with the administration of justice in a civil action then pending before him, *viz.*, Mullane v. Barclays Bank Delaware, 1:18-CV-20596 (S.D. Fla. Feb. 15, 2018), in order to manufacture and fabricate "good cause" to terminate Plaintiff's two (2) separate employment agreements with the Government (*i.e.*, the USAO and SEC, respectively) by:

(a) requesting that Defendant Moreno *himself* place a telephone call to Plaintiff on his personal cell phone number, in order to ensure that Plaintiff would personally appear before Defendant Moreno without counsel—purportedly and deceptively in connection with a civil credit card dispute;

(b) **requesting that Defendant Moreno corruptly manufacture and fabricate a pretext and spurious excuse—all of which was to be stated on the record—which would then provide Defendants "good cause" and a convenient excuse to unlawfully terminate Plaintiff's federal employment, and to conceal Defendants' wrongdoing by improperly assigning Plaintiff to ongoing asset forfeiture operations relating to PDVSA and Defendant Lustgarten Acherman** (*i.e.*, a case wherein Plaintiff had assisted counsel for the defendant); and

(c) corruptly influencing Defendant Moreno to openly discredit Plaintiff both in open court and in the press, with a view to: (1) conceal their wrongdoing and gross incompetence by having improperly assigned Plaintiff to the PDVSA cases; (2) to further retaliate against both Plaintiff and his father, E. Peter Mullane, Esq., particularly with respect to Plaintiff's submission of a written complaint to Defendant Lehr (which, as Lehr subsequently informed Plaintiff, would then become available to defense counsel in all other PDVSA-related cases through discovery); and (3) to irreparably harm and destroy Plaintiff's reputation in order to prevent him from obtaining any subsequent employment within the federal government;

(ii) transmitted a copy of the April 10, 2018 hearing transcript and/or other information and facts regarding the said hearing, together with Defendant Moreno's false allegations made therein, to: (1) Miami journalist Carolina Bolado of LexisNexis' *Law360* publication; and (2) New York journalist and former editor-in-chief Elie Mystal of the national publication *Above the Law*; in order to defame and discredit Plaintiff with a view to conceal Defendants' own corruption and gross incompetence, "case fixing" in a federal civil action, obstruction of justice, and other criminal RICO-predicate acts;

(iii) knowingly defamed Plaintiff in correspondence sent to the University of Miami by Defendant Lehr and Defendant Moreno, *inter alia*, in order to further discredit Plaintiff and with a view to conceal the true purpose of the impromptu April 10, 2018 "miscellaneous hearing" held by Defendant Moreno on behalf of the other named Defendants herein (*i.e.*, to dissuade Plaintiff from attempting to continue his federal employment, and to give Defendants "good cause" to terminate Plaintiff therefrom); and

(iv) further retaliated against Plaintiff by:

(a) Making factually-false and representations regarding Plaintiff's "moral character" and "fitness" for the practice of law to numerous state bar associations; and

(b) corruptly manipulating the involvement of **HOLLAND & KNIGHT LLP**—a Miami law firm with active cases which are currently pending before Defendant Moreno as of the time of writing—and recommending that the said law firm be retained and engaged by the Massachusetts Board of Bar Examiners ("BBE") to

conduct an investigation into Defendant Moreno's fabricated and manufactured allegations of criminal conduct against Plaintiff.[7]

Plaintiff further states that Defendants' collective motives therefor are clear and unambiguous. Were Plaintiff to publicly disclose that he, as the son of the Lead Counsel of record for Defendant Martin Lustgarden Acherman, had been personally assigned cases pertaining to the said Defendant, PDVSA, and the Miami USAO's PDVSA asset forfeiture operations—notwithstanding the clear and obvious conflicts of interest—not only would this prove to be a source of great public embarrassment and humiliation for Defendants and the entire Miami USAO, it would foreseeably even lead to: (1) Defendants themselves being terminated by the federal government; (2) bar discipline against Defendants, together with potential disbarment; (3) PDVSA asset forfeiture operations being compromised, and the resultant economic loss of hundreds of millions of dollars generated therefrom by the Asset Forfeiture Division of the Miami USAO; and other significant and detrimental consequences for Defendants.

## EXHIBIT F

This exhibit contains the publicly-accessible docket sheet of **United States** v. **Martin Lustgarten Acherman et al.**, Case No. 15-20840-CR-COOKE/TORRES (S.D. Fla.) which unambiguously evidences the fact that Plaintiff's father, E. Peter Mullane, Esq., appeared as Lead Counsel on behalf of Defendant Martin Lustgarden Acherman, and that Assistant United States

---

[7] *Ab initio*, the Plaintiff has consistently and freely admitted to having requested a certified copy of the unsealed record in his civil credit card dispute. As an experienced United States District Judge, at all times relevant hereto, there can be no *bona fide* dispute that Defendant Moreno had actual knowledge of the fact that there is absolutely nothing improper or unethical about a litigant making such a request to a clerk. Defendant Moreno's specious protestations to the contrary, together with his feigning to have been oblivious to the fact that Plaintiff's father (who has the same last name) was an attorney notwithstanding his telephone calls with Defendant Greenberg regarding Plaintiff *prior* to the April 10, 2018 hearing, were indeed disingenuous. Defendant Moreno's thespian performance at this April 10, 2018 "miscellaneous hearing" was designed solely to fraudulently and corruptly manufacture false allegations against Plaintiff, which would then allow Defendants to have "good cause" to terminate Plaintiff's federal employment.

Attorney **NALINA SOMBUNTHAM** of the Asset Forfeiture Division[8] in Miami, a close friend and colleague of Defendant Lehr,[9] appeared on behalf of the Government.

## EXHIBIT G

This exhibit contains the first page of Defendant Martin Lustgarten Acherman's "Motion to Dismiss Indictment for Violations, and Reckless Disregard, of <u>Brady</u> and other Discovery Obligations[,]" wherein Plaintiff's father E. Peter Mullane, Esq., in his capacity as Lead Counsel for the said Defendant, openly accused Assistant United States Attorney **NALINA SOMBUNTHAM** and other Miami USAO employees of unethical conduct and of making willful and knowing misrepresentations to the Court, together with other serious violations of the Rules of Professional Conduct.

## EXHIBIT H

This exhibit contains certain public records of the Commonwealth of Massachusetts, *viz.* the Board of Bar Examiners ("BBE"). As evidenced therein, the BBE is currently retaliating against Plaintiff for having asserted claims against Defendant Moreno and the other individual RICO Defendants both in the District of Massachusetts and the Southern District of Florida. Indeed, notwithstanding the fact that Plaintiff: has successfully passed the Massachusetts bar examination; has no criminal record; has a business school degree from Imperial College London; and also has a JD degree from Suffolk University Law School, the BBE currently refuses to allow

---

[8] *i.e.*, the exact same Division and office wherein Plaintiff was employed.

[9] AUSA Sombuntham's private office is coincidently adjacent to Defendant Lehr's private office within the Miami USAO. As confirmed by the supporting public records and internal electronic correspondence [EXHIBITS A-E], Defendant Lehr personally consulted with AUSA Sombuntham regarding Plaintiff's father, E. Peter Mullane, Esq., and his connection to the PDVSA money laundering investigations and forfeitures.

Plaintiff to practice law in this Commonwealth, allegedly due to its "concerns" pertaining to Plaintiff's "moral character" and "fitness" for the practice of law.

Evidencing the fact that the foregoing acts of the BBE are **not** being done in "good faith" is the fact that it was recommended to the BBE that they retain Miami-based law firm Holland & Knight LLP—**a firm which *currently* has active cases pending before Defendant Moreno himself in Miami**—to perform a purportedly "objective" third-party investigation into Plaintiff's ongoing RICO action against Defendant Moreno, and to transcribe and record their discussions with Plaintiff regarding this active, ongoing litigation.[10]

## EXHIBIT I

This exhibit contains certain public records and other documents relating to Holland & Knight LLP's litigation which is currently pending before Defendant Moreno. The exhibit also contains other publicly-available records evidencing Defendant Moreno's troubling connections to this particular Miami law firm.

## EXHIBIT J

This exhibit pertains to Defendant Greenberg's so-called "Operation Money Flight," and the **July 2018** arrests of defendants allegedly involved "in a billion-dollar international scheme to launder funds embezzled from Venezuelan state-owned oil company PDVSA." At p. 1 ¶ 1. According to the Miami USAO, the "conspiracy had allegedly doubled in amount to $1.2 billion embezzled from PDVSA" and the "defendants remain[ed] at large." Id. at ¶¶ 3-4. This was the

---

[10] As this Court is well aware, it is black letter law that governmental agencies such as the BBE are prohibited from retaliating against any person for having exercised their First Amendment right to file a lawsuit and/or petition the judiciary for redress. Accordingly, the fact that the BBE is even investigating any litigation *at all* (while simultaneously withholding Plaintiff's license to practice law) is both concerning and troubling.

exact same criminal enterprise that the Miami USAO alleged Defendant Lustgarten Acherman—

*i.e.*, the client of Plaintiff's father, E. Peter Mullane, Esq.—was a part of.

Of note, Plaintiff was employed in the Asset Forfeiture Division of the Miami USAO while Defendant Greenberg was contemporaneously preparing these indictments.

## CONCLUSION

**WHEREFORE,** on the above-mentioned premises, Plaintiff respectfully requests that this Honorable Court take judicial notice of **EXHIBITS A-J** annexed hereto.

DATED: June 9, 2020

Respectfully submitted,

/s/ E. Peter Mullane, Esq.
E. PETER MULLANE, ESQ.
BBO #360000
MULLANE, MICHEL & McINNES LLP
6 Bennett Street
Cambridge, MA 02138
Tel.: (617) 661-9000
peter@3mlaw.com

*Counsel for Plaintiff*

## L.R. 7.1(a)(2) CERTIFICATION

Pursuant to L.R. 7.1(a)(2), the undersigned hereby certifies that he conferred with counsel for Defendants via electronic correspondence on June 9, 2020, who did not assent to the relief requested herein.

/s/ E. Peter Mullane, Esq.
E. PETER MULLANE, ESQ.

14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this filing submitted via the CM/ECF system shall be transmitted electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF"), and that paper copies shall be mailed via first class mail, postage prepaid, to those indicated as non-registered participants on the date of filing.

/s/ E. Peter Mullane, Esq.
E. PETER MULLANE, ESQ.