UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

)
JONATHAN MULLANE,                          )
                                           )
    Plaintiff,                         )
                                           )
    v.                                 )    Civil Action No. 19-cv-12379-DJC
                                           )
                                           )
UNITED STATES DEPARTMENT OF                )
JUSTICE and U.S. SECURITIES and            )
 EXCHANGE COMMISSION,                      )
                                           )
    Defendants.                        )
_____)

### MEMORANDUM OF LAW AND
### STATEMENT OF UNDISPUTED FACTS IN SUPPORT
### OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Jonathan Mullane ("Plaintiff") commenced this action under the Freedom of

Information Act, 5 U.S.C. § 552 ("FOIA"), seeking the release of documents and information by

Defendant United States Department of Justice ("DOJ") and the United States Securities and

Exchange Commission ("SEC"). In general, Plaintiff requested documents concerning his

volunteer legal internship with the Unites States Attorney's Office ("USAO") in the Southern

District of Florida ("SDFLA") and his internship with the SEC in Florida.

In support of its Motion for Summary Judgment, the DOJ files herewith the Declaration

of Francys Marcenaros ("Marcenaros Decl."), which recounts the chronology of the USAO

SDFLA's administrative processing of the Plaintiff's FOIA and Privacy Act request, as well as

the Declaration of Justin Wilkinson ("Wilkinson Decl.") of the Executive Office of United States

Attorneys ("EOUSA") which explains its review of the documents provided by the SDFLA to

the EOUSA and the bases for withholding or redacting any information during production of responsive materials.

Also, the SEC files the Declaration of Ray McInerney ("McInerney Decl.") which describes its processing of Plaintiff's FOIA request and the withholding of certain information it asserts is protected under Exemption 6 of FOIA. For the reasons set forth herein, the Defendants respectfully submits that no genuine issue of material fact exists and that their Motion for Summary Judgment should be granted pursuant to Rule 56 of the Federal Rules of Civil Procedure because they have produced all documents responsive under FOIA, and all documents that were withheld from production or redacted by Defendants are exempted under that statute.

## LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS

### I.     USAO SDFLA SEARCH FOR RESPONSIVE RECORDS

1.     On October 23, 2018, the Plaintiff submitted a FOIA request. EOUSA acknowledged its receipt of the FOIA request on that date and assigned it FOIA No. 2018-00468. *See* Marcenaros Decl., *Exhibit 1,* ¶ 4.

2.     On December 20, 2019, the USAO for the SDFLA retrieved the referenced FOIA request from FOIAOnline, an automated database system designed to coordinate the processing of every aspect of FOIA/PA requests to United States Attorney's Offices, including USAO-SDFLA. *Id.,* ¶ 5. The request was for records seeking "any DOJ record regarding Jonathan Mullane, including but not limited to his employment or personnel records, between the months of January 2018 and April 2018". *Id.*

3.     On January 8, 2020, to process Plaintiff's FOIA request, FOIA No. 2018-000468, the USAO-SDFLA sent an office-wide email to all USAO-SDFLA personnel notifying of the

substance of Plaintiff's FOIA request. *Id.,* ¶ 6. USAO-SDFL personnel was asked to contact its FOIA coordinator to inform whether they had records "regarding Jonathan Mullane, including any/all records in the possession of the USAO-Miami, but not limited to his employment or personnel records, between the months of January 2018 and April 2018." *Id.*

4.      In addition, on January 8, 2020, in an effort to ensure that any and all responsive records were obtained, the FOIA paralegal specialist, Ms. Marcenaros, transmitted an email to the Assistant United States Attorneys ("AUSAs") who run the USAO-SDFL internship program (Mr. Mullane was an intern), USAO-SDFLA's human resources department, and the leadership of its Asset Forfeiture Division (the Division to which Mr. Mullane was assigned). *Id.,* ¶ 7. In that email, Ms. Marceneros requested the AUSAs to contact her if they had any records within their custody and control that were responsive to this request, and to preserve any such records. *Id.* Due to the allegations in the civil complaint, Ms. Marceneros reached out to the executive division and informed the staff assistant to the FAUSA that a search for emails and correspondence of former United States Attorney Benjamin Greenberg was required. *Id.* The search conducted was for all emails and correspondence between the USAO-SDFLA office and Judge Moreno pertaining to Mr. Mullane. *Id.*

5.      Between January 8, 2020, and January 16, 2020, Ms. Marcerneros received responsive records to the FOIA request at issue in this action. *Id.,* ¶ 8. Those records included emails, correspondence, court pleadings, transcript of hearing and personnel records. *Id.* Those records came from the AUSAs who were in charge of the USAO-SDFLA internship program between the months of January 2018 and April 2018. *Id.* A copy of Mr. Mullane's personnel file was hand-delivered to the FOIA Unit by Lesnay Vazquez, Human Resources Specialist.

6.      On January 21, 2020, the FOOIA coordinator uploaded information regarding my

search results and the responsive records themselves into the FOIAOnline database system for review by EOUSA FOIA/PA Staff.  *Id.,* ¶ 9.

7.      On June 9, 2020, the USAO-SDFLA notified EOUSA that it had located some additional email communications from former USA Benjamin Greenberg that were responsive to Plaintiff's request.  *Id.,* ¶ 10.  Those emails were found in the FOIA coordinator's computer and were not included in the USAO-SDFL original response submitted to EOUSA on January 21, 2020.  *Id.*

8.      EOUSA completed its review and processing of these additional records located and they were provided to Plaintiff as a supplemental response.  *Id.,* ¶ 11.

## II.      ADMINISTRATIVE HISTORY OF PLAINTIFF'S FOIA REQUEST TO EOUSA

### A.   FOIA No. EOUSA-2019-000468

9.      By letter, dated October 14, 2018, DOJ's Mail Referral Unit (MRU) received a FOIA request from Plaintiff, wherein he sought the following:

> *I respectfully request any and all records and information in the possession of the United States Department of Justice pertaining to Jonathan Mullane, the undersigned. I further request any and all information in connection with my employment at the United States Attorney's Office ("USAO") in Miami, Florida, between the months of January 2018 and April 2018. This includes, but is in no way limited to, my employee and/or personnel file. See* Wilkinson Decl., *Exhibit 2,* ¶ 5.

10.      On October 23, 2018, EOUSA received Plaintiff's request from MRU.  *Id.,* ¶ 5a.

11.      By letter, dated October 31, 2018, EOUSA sent Plaintiff a letter that acknowledged his request and assigned it the control number EOUSA-2019-000468.  *Id.,* ¶ 6. See Exhibit C attached thereto.

12.     On that same date, EOUSA asked the USAO-SDFLA to conduct a search for material that is potentially responsive to Plaintiff's request. *Id.,* ¶ 7.

13.     On January 21, 2020, USAO-SDFLA uploaded approximately 4,400 pages[1] of records that were potentially responsive to Plaintiff's request and certified their search complete. *Id.,* ¶ 8.  EOUSA reviewed the search and determined that it was reasonably and adequately calculated to locate material responsive to Plaintiff's request.  *Id.*

14.     By letter, dated February 27, 2020, uploaded and transmitted via FOIA Online,[2] EOUSA sent Plaintiff its first interim response releasing 64 pages in full. *Id.,* ¶ 9.  Attached thereto as Exhibit D is a true and accurate copy of the first interim response letter.  *Id.*

15.     By letter, dated March 31, 2020, uploaded and transmitted via FOIA Online, EOUSA sent Plaintiff its second interim response releasing 279 pages in full and 20 pages in part. *Id.,* ¶ 10.  As grounds for these withholdings, EOUSA cited Exemption 5.  *Id See* 5 U.S.C. § 552(b)(1-9).  Attached thereto as Exhibit E is a true and accurate copy of the second interim response letter.

16.     On April 28, 2020, EOUSA was informed that Plaintiff's email address was entered into FOIA Online incorrectly during the intake process, so Plaintiff had not received any prior interim responses to this request. *Id.,* ¶ 11.

17.     On April 29, 2020, via encrypted emails, EOUSA re-sent courtesy copies of its

---

[1] USAO-FLS initially reported that there were 1,413 pages of potentially responsive requests, but that estimate did not take into account attachments that were embedded in emails. That material was extracted and produced.

[2] FOIA Online is a case management platform that is routinely used by EOUSA to manage all aspects of requests and respond to requesters.

first and second interim responses to Plaintiff.  *Id.,* ¶ 12.

18.     By letter, dated April 29, 2020, transmitted via encrypted emails, EOUSA sent Plaintiff its third interim response releasing 302 pages in full.  *Id.,* ¶ 13.  Attached thereto as Exhibit F is a true and accurate copy of the third interim response letter.

19.     By letter, dated June 2, 2020, transmitted via encrypted emails, EOUSA sent Plaintiff a fourth and final response releasing 3,246 pages in full, 350 pages in part, and withholding 88 pages in full.  *Id.,* ¶ 14.  As grounds for these withholdings, EOUSA cited Exemptions 5 and 6.  *See* 5 U.S.C. § 552(b)(1-9).  *Id.*  Attached thereto as Exhibit G is a true and accurate copy of the final response letter.

20.     One June 9, 2020, USA-FLS notified EOUSA that it had located 20 additional pages of potentially responsive material.  *Id.,* ¶ 15.  On that same day, those records were transmitted to EOUSA for processing.  *Id.*

21.     By letter, dated June 10, 2020, transmitted via encrypted email, EOUSA sent Plaintiff a supplemental response releasing six (6) pages in full and seven (7) pages in part.  *Id.,* ¶ 16.  As grounds for these withholdings, EOUSA cited Exemption 5.  *Id.*  *See* 5 U.S.C. § 552(b)(1-9).  The seven (7) non-included pages were determined to be duplicates of previously produced material.  Attached thereto as Exhibit H is a true and accurate copy of the supplemental response letter.  *Id.*  In total, EOUSA processed 4,362 pages of responsive material—3,897 pages released in full, 377 pages released in part, and 88 pages withheld in full.  *Id.*

22.     On that same date, EOUSA administratively closed EOUSA-2019-000468.  To date, neither EOUSA nor OIP have received an administrative appeal of this request.  *Id.,* ¶ 17.

### III.     PRIVACY ACT EXEMPTION

23.     The EOUSA processes all requests by individuals for records pertaining to themselves under both the Freedom of Information and the Privacy Acts in order to provide the

requester the maximum disclosure authorized by law. *Id.,* ¶ 18. The Privacy Act exempts from disclosure material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals. *Id. See* 5 U.S.C. § 552(j)(2). This material was created to investigate and potentially prosecute individuals for the commission of federal crimes. *Id.* As such, Plaintiff is not entitled to disclosure under the Privacy Act, so EOUSA proceeded to consider Plaintiff's request under FOIA. *Id.*

## IV.     DESCRIPTION AND LEGAL RATIONALE FOR INFORMATION WITHHELD PURSUANT TO FOIA

24.     The narrative description of the information withheld as provided in this declaration and the attached Vaughn Index (*see* Exhibit A) is intended to provide the Court and Plaintiff with an understanding of the information withheld from disclosure. *Id.,* ¶ 19.

25.     All responsive records related to Plaintiff's FOIA requests were processed to achieve maximum disclosure consistent with the provisions of FOIA. *Id.,* ¶ 20.

26.     In accordance with FOIA, and in keeping with DOJ regulations, 28 C.F.R. 16.1, *et seq.,* EOUSA FOIA/PA staff processes all requests for records that are maintained by EOUSA in Washington, D.C., and the 93 USAOs nationwide. *Id.,* ¶ 21. Among other things, EOUSA attorneys and paralegals coordinate with other DOJ components regarding FOIA/PA matters and oversee the processing of requests of EOUSA and/or USAO records, direct USAOs to search for responsive records, and prepare final determinations to release or withhold agency records pursuant to FOIA or PA. *Id.*

### A.    *FOIA Exemption (b)(5) - Privileged*

27.     FOIA exemption (b)(5) provides that FOIA does not apply to matters that are inter-agency or intra-agency memoranda or letters which would not be available by law to a

7

private party in litigation with DOJ.[3] *Id.*, ¶ 22. Mr. Wilkinson reviewed the documents responsive to Plaintiff's FOIA request and identified numerous instances of intra-agency and inter-agency memoranda containing information that are protected from disclosure by one or more of the following three privileges: a) the work-product doctrine; b) the attorney-client privilege; and c) the deliberative process privilege. *Id.*

28.     *Work-Product Doctrine* – The work-product doctrine protects information, legal analysis, and opinions prepared in anticipation of criminal, civil, and administrative proceedings or litigation. *Id.*, ¶ 23.

29.     In this instance, the records were comprised of USAO-FLS drafts of legal filings and emails containing legal strategies, research, opinion, and legal impression of the strength or weakness of litigation of Plaintiff. *Id.*, ¶ 24. Disclosure of this information would reveal the government attorneys' legal strategies, research, opinion and legal impression of the strength or weakness of their criminal case against Plaintiff. *Id.* In addition, much of the attorney work product present in responsive material relates specifically to civil litigation to which Plaintiff is a party—*Mullane v. United States*, Case No.: 1:18-cv-12618 (D. Mass.) and *Mullane v. DOJ*, 1:19-cv-12379 (D. Mass). *Id.*

30.     For example, the document labeled Bates 00824 through 00825 is a chart created by Assistant U.S. Attorney (AUSA) Alison Lehr listing all active cases in USAO-SDFLA's Asset Forfeiture Division itemizing potential future actions and litigation goals. *Id.*, ¶ 25. The document Bates labeled 00894 through 00911 consists of an unsigned, draft Motion to Dismiss, sent from Defense Counsel, Jason Weida, to his client, Alison Lehr, in *Mullane v. United States*

_____

[3] 5 U.S.C. § 552 (b)(5) (2000).

for comment and discussion.  *Id.*  The document Bates labeled 00916 through 00935 an unsigned, draft Memorandum of Law in support of that Motion to Dismiss, sent from Attorney Weida to his client Alison Lehr. In the email Bates labeled 00983, DOJ Trial Attorney Connor Hackert discussed legal strategies, impressions, and opinion with Alison Lehr as it relates to her as a witness and potential defendant in *Mullane v. United States*.  *Id.*  In emails Bates labeled 01063 and 01509 through 01512, Co-Defense Counsel Christopher Morgan and Jason Weida convey their impressions of case developments and their implications to then-Defendant Lehr in *Mullane v. United States*.  *Id.*  In an email Bates labeled 01130, Defendant Lehr is seeking specific legal advice from Defense Counsel Weida regarding contact with the opposition in *Mullane v. United States*.  *Id.*  In a memorandum Bates labeled 03049 through 03050, AUSA created a contemporaneous memorialization of interactions between herself and Extern-Plaintiff from January 23, 2019, to February 14, 2019.  *Id.*  In an email Bates labeled 03962, EOUSA's Attorney-Advisor Tricia Francis transmits an unsigned, draft answer to USAO-FLS in *Mullane v. DOJ*.  *Id.*

31.    *Attorney-Client Privilege* – The attorney-client privilege protects confidential communications between a client and his attorney relating to the matter for which the client has sought legal advice.  *Id.,* ¶ 26.

32.    In the instant matter, the records were comprised of numerous confidential communications between AUSA Alison Lehr and DOJ attorneys representing her in her individual capacity—Jason Weida and Christopher Morgan.  *Id., 27.*  These communications included legal advice on various legal topics, impressions of the case, and legal strategies related to her civil defense in *Mullane v. United States*, Case No.: 1:18-cv-12618 (D. Mass.).  *Id.*  Such

communications were prepared and transmitted with the joint expectation that they would be held in confidence. *Id.*

33. Specifically, in the email Bates labeled 00894, then-Defendant Lehr sought and received legal advice from Defense Counsel Weida regarding the viability of specific legal defenses in that matter for which he was hired—*Mullane v. United States. Id.,* ¶ 28. In emails Bates labeled 00913 through 00914, then-Defendant Lehr sought and received legal advice from Defense Counsel Weida regarding future actions in light Plaintiff's filings in that same matter. *Id.* In the above-described document, Bates labeled 00916 through 00935, Defense Counsel Weida transmitted an unsigned, draft Memorandum of Law in support of that Motion to Dismiss, to client Alison Lehr in a confidential communication regarding *Mullane v. United States. Id.* As identified in my Vaughn Index, there are extensive, substantive communications identified and properly withheld from the records that were provided to Plaintiff in response to FOIA request No. EOUSA-2019-000468. *Id.*

34.   *Deliberative Process Privilege* – The scope of FOIA exemption (b)(5) is quite broad and incorporates virtual all civil discovery privileges. *Id.,* ¶ 29. Courts have construed FOIA exemption (b)(5) to incorporate the civil discovery concept that information or documents of pre-decisional, deliberative process are exempt from disclosure. *Id.* The deliberative process privilege protects the internal deliberations of the government by exempting from release those recommendations, analyses, and discussions—both factual and legal—prepared to inform or in anticipation of decision-making. *Id.* The integrity of the government's deliberative process— not just the documents themselves—is protected by this privilege. *Id.*

35. The deliberative process privilege of Exemption (b)(5) is meant to "prevent injury to the quality of agency decisions." *See NRLB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151

10

(1975). *Id.*, ¶ 30. The rationale behind the privilege is to (1) encourage open, frank, discussions on matters of policy between subordinates and superiors; (2) protect against premature disclosure of proposed policies before they are actually adopted; and (3) protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's actions. *Id.* The deliberative process privilege protects the decision making processes of agencies. *Id.*

36.     The deliberative process privilege is asserted here to protect from disclosure the back-and-forth pre-decisional communications among decision-makers at USAO-SDFLA and other components of DOJ. *Id.*, ¶ 31. These employees were discussing rule-making related to the USAO Internship Program, case strategies concerning on-going litigation, and human resources related to Plaintiff. *Id.*

37.     For example, in an email Bates labeled 01063, Defense Counsel Christopher Morgan provides his impressions of *Mullane v. DOJ* for discussion and client guidance on how to proceed. *Id.*, ¶ 32. In emails Bates labeled 01216 through 01224, AUSA Alison Lehr sought guidance from her supervisor, Evelyn Sheehan, on office policies relating to the USAO Spring Internship Program's final evaluation and certification. *Id.* In an email Bates labeled 01570 through 01578, AUSA Lehr seeks guidance from USAO-SDFLA Civil Litigation Chief regarding policies governing USAO employees who may be named in civil litigation. *Id.* Similarly, Mr. Wilkinson's declaration describes numerous discussions throughout the responsive document set that are pre-decisional and deliberative in nature. *Id.* Those discussions have been segregated where possible and properly withheld when those deliberations would chill future government deliberations and/or confuse the public about the deliberation process. *Id.*

### B. *FOIA Exemption (b)(6) – Personal Privacy*

38.     Defendant is also withholding under Exemption 6 private personal information from the produced records because the disclosure of that information would constitute a clearly unwarranted invasion of the personal privacy of individuals, *i.e.,* telephone numbers, facsimile numbers, email addresses, medical information, GPAs and names of candidates for the 2018 USAO Internship Program. *Id.,* ¶ 33.

39.     Exemption 6 protects personal identifying information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."[4] *Id.,* ¶ 34. As a threshold matter, the withheld records constitute both "personnel" and "similar files" within the meaning of Exemption 6 because they pertain to particular individuals, *i.e.,* the individuals listed in the preceding paragraph. *Id.*

40.     Public identification of the government personnel who are regularly involved in the criminal prosecutions could subject them to harassment both in the conduct of their official duties and their private lives — as dramatized by Plaintiff's discovery requests. Similarly, individuals—whether targets, suspects, or witnesses—have a strong interest in not being unfairly associated publicly with alleged criminal activity. *Id.,* ¶ 35. The mention of a private individual's name in a law enforcement file engenders comment and speculation and could produce an unfair stigma which could expose the individual to harassment or criticism. *Id.* Accordingly, Defendant has recognized that these individuals also have a substantial privacy interest in avoiding disclosure of their personal information in the requested documents. *Id.*

---

[4] *Id.* § (b)(6).

41.     The FOIA requires that, once a substantial privacy interest has been identified, it must be balanced against the magnitude of any recognized public interest that would be served by the disclosure.  *Id.,* ¶ 36.  The proper focus of the balancing process is on the nature of the requested information and its relationship to FOIA's purpose to open agency action to the light of public scrutiny.  *Id.*  Disclosure of the personal information that would not shed light on the performance of the statutory duties of DOJ. Plaintiff's asserted private need for the information for use in his civil suits is not relevant to the balancing process.  *Id.*  Plaintiff has identified no public interest which should be balanced against the important privacy interests of the individuals.  *Id.*

C.  *Reasonably Segregable Obligation*

42.     Under FOIA, federal agencies are required to release any portion of the record that is non-exempt and that is reasonably segregable from the exempt material.  If non-exempt information contained in the record is inextricably intertwined with exempt information, then reasonable segregation is not possible.  *Id.,* ¶ 37.

43.     An agency may satisfy its segregability obligations by (1) providing an explanation that adequately describes each withheld document and the exemption under which it was withheld; and (2) submitting a declaration attesting that the agency released all segregable material.  *Id.,* ¶ 38.

44.     In reviewing the responsive material, EUOSA staff conducted a detailed, line-by-line review to satisfy EOUSA's reasonable segregability obligations, including evaluating all material under the foreseeable harm standard.  *Id.,* ¶ 39.  5 U.S.C. § 552(a)(8)(A).  The responsive material was either exempt itself or was so intertwined with non-exempt information that segregation of the non-exempt information was not reasonably possible without revealing

13

exempt information or leaving nothing but meaningless words or sentence fragments. *Id.*

45.    EOUSA determined that there was no reasonably segregable, non-exempt information that was releasable to Plaintiff and properly withheld information in full pursuant to FOIA Exemptions (b)(5) and (b)(6). *Id.,* ¶ 40. *See also* 5 U.S.C. § 552 (b)(5) and (6).

## V.    SEC RESPONSE TO PLAINTIFF'S REQUESTS

46.    In a letter dated October 14, 2018, Jonathan Mullane submitted a FOIA and Privacy Act request to the SEC requesting "any and all records and information in the possession of the United States Securities and Exchange Commission (hereinafter, 'SEC') pertaining to Jonathan Mullane" and "any and all information in connection with my offer of employment for an internship in the SEC's Miami, Florida office, together with the subsequent rescission thereof." Mr. Mullane's letter also requested expedited processing and a fee waiver. The FOIA Office designated the request as number 19-00009-FOPA. *See* McInerney Decl., *Exhibit 3,* ¶ 3.[5]

47.    In a letter dated October 17, 2018, the FOIA Office denied Mr. Mullane's request for expedited treatment and for a fee waiver. *Id.,* ¶ 4.

48.    In a letter dated October 18, 2018, Mr. Mullane appealed the FOIA Office's denial of his request for expedited treatment and for a fee waiver, and in a letter dated November 6, 2018, the SEC's Office of the General Counsel denied the appeal. *Id.,* ¶ 5.

49.    The FOIA Office searched for documents responsive to Mr. Mullane's request by asking the SEC's Office of Human Resources ("OHR") to search for and provide any responsive records. *Id.,* ¶ 6.  OHR maintains a shared drive that contains all documents, including emails,

---

[5]    SEC has not produced a *Vaughn* Index since McInerney Decl. describes the minimal redactions used under Exemption 6.

with any substantive information relating to an application, other than the initial application. *Id.* That shared drive contains a folder with documents relating to an offer to Mr. Mullane to participate in the SEC's Student Honors Program and the rescission of that offer. OHR staff provided 81 pages of documents to the FOIA Office and represented that they have provided all the documents relating to Mr. Mullane from the shared drive. *Id.* In addition, staff has now requested that individuals in the Miami Regional Office ("MIRO") who may have potentially responsive emails conduct a search for those emails. OHR and MIRO are the offices in the SEC that are likely to have responsive documents. *Id.*

50.     Staff in the FOIA Office reviewed the 81 pages provided by OHR to identify information that came within FOIA exemptions and then produced the non-exempt portions. *Id.,* ¶ 7. FOIA Office staff produced 33 pages (27 pages in full and 6 pages in part) and withheld 48 pages in full. *Id.*

51.     SEC has no record of ever receiving an appeal in this matter. *Id.,* ¶ 8. Consequently, the Office of the General Counsel ("OGC") reviewed the documents at issue for the first time in connection with this litigation. *Id.* OGC has determined that the documents and portions of documents originally withheld under Exemptions 2 and 5 can be released. *Id.* Thus, the only remaining redactions are under Exemption 6. *Id.*

52.     SEC is withholding under Exemption 6 phone numbers and email addresses of staff involved in the process of rescinding Mr. Mullane's offer to participate in the SEC Student Honors Program from five pages. *Id.,* ¶ 9.

53.      SEC staff have a privacy interest in not making their contact information available to individuals who might seek to contact and criticize them. *Id.,* ¶ 10.

54.     Mr. Mullane has not identified – and SEC is not aware of – any public interest in this information.  *Id.*, ¶ 11.

55.     SEC staff have provided all non-exempt information that could be segregated from exempt information.  *Id.*, ¶ 12.  Disclosure of information in which individuals have a privacy interest would create foreseeable harm by unnecessarily exposing personal information to the public.  *Id.*

## VI.   <u>STANDARD OF REVIEW</u>

### A.  Summary Judgment Standard

Where no genuine dispute exists as to any material fact, summary judgment is required. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Borges v. Serrano-Isern*, 605 F.3d 1, 4 (1st Cir. 2010) (citing Fed. R. Civ. P. 56(c)(2)).  A genuine issue of material fact is one that would change the outcome of the litigation.   *Anderson*, 477 U.S. at 247.  "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987).  Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### B.  FOIA Cases are Most Appropriately Decided on Summary Judgment

FOIA actions are "generally and most appropriately" adjudicated through summary judgment.  *National Day Laborer Organizing Network v. U.S. Immigration and Customs Enforcement*, 811 F. Supp. 2d 713, 732-733 (S.D.N.Y. 2011), *citing Bloomberg L.P. v. Board of*

*Governors of the Fed. Reserve Sys.,* 649 F. Supp. 2d 262, 271 (S.D.N.Y. 2009); *Miscavige v. Internal Revenue Serv.,* 2 F.3d 366, 369 (11th Cir. 1993).

"In a FOIA case, summary judgment may be granted to the government if 'the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.'" *ACLU Foundation of Massachusetts v. FBI,* No. 14-11759, 2016 U.S. Dist. LEXIS 110022, at *9 (D. Mass. Aug. 17, 2016) (quoting *Fischer v. U.S. Dep't of Justice,* 596 F. Supp. 2d 34, 42 (D.D.C.2009)). An agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and, if applicable, that each document that falls within the class requested either has been produced, is unidentifiable, or is exempt from disclosure. *Students Against Genocide v. Dept. of State,* 257 F.3d 828, 833 (D.C. Cir. 2001); *Weisberg v. U.S. Dep't of Justice,* 627 F.2d 365, 368 (D.C. Cir. 1980). An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and plaintiff with affidavits or declarations and other evidence which show that the documents in question were produced or are exempt from disclosure. *Hayden v. NSA,* 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), *cert. denied,* 446 U.S. 937 (1980); *Church of Scientology v. U.S. Dep't of Army,* 611 F.2d 738, 742 (9th Cir. 1980); *Trans Union LLC v. FTC,* 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (summary judgment in FOIA cases may be awarded solely on the basis of agency affidavits "when the affidavits describe 'the documents and the justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'") (quoting *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C. Cir. 1981)); *see also Public*

*Citizen Inc. v. Dept. of State*, 100 F. Supp. 2d 10, 16 (D.D.C. 2000), *aff'd in part, rev'd in part*, 276 F.3d 634 (D.C. Cir. 2002).

Generally, a court should accord "substantial weight" to agency affidavits in these matters. *See Bell v. United States*, 563 F.2d 484, 487 (1st Cir. 1977). Further, the test of sufficiency of the submitted affidavits should be whether the affidavit demonstrates by "sufficient description (that) the contested document logically falls into the category of the exemption indicated," and the court "need not go further to test the expertise of the agency, or to question its veracity when nothing appears to raise the issue of good faith." *Id.* at 487. *See also Hrones v. C.I.A.*, 685 F.2d 13, 18 (1st Cir. 1982).

The requester may challenge such a showing by "set[ting] forth specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e), that would permit a reasonable jury to find in his favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). Agency declarations "are afforded a presumption of good faith", and an adequate affidavit "can be rebutted only 'with evidence that the agency's search was not made in good faith.'" *Defenders of Wildlife v. U.S. Dep't. of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004).

## VII.   ARGUMENT

### A.  DOJ is Entitled to Judgment as a Matter of Law

### 1.  DOJ Properly Withheld Information Pursuant to 5 U.S.C § 552(b)

### a.  FOIA Exemption (5)

Pursuant to Exemption 5, DOJ properly withheld documents protected by the deliberative process privilege, the attorney client privilege, and the attorney work product doctrine. Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." *State of Maine v.*

*U.S. Dep't of Interior*, 298 F.3d 60 (1st Cir. 2002). 5 U.S.C. § 552(b)(5).  The scope of the

exemption is intended to incorporate and mimic the rules of civil discovery, including doctrines

such as "attorney work product," "attorney client privilege," and the "deliberative process

privilege."  *Dep't of Interior v. Klamath Water Users Protective Assn.*, 532 U.S. 1, 8 (2001);

*N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149-150 (1975);  *see also State of Maine*, 298

F.3d at 66.

### i.   Internal Communications Deliberating Decisions by DOJ Were Properly Withheld Under the Deliberative Process Privilege

Documents covered by the deliberative process privilege and exempt under Exemption 5

include those that "reflec[t] advisory opinions, recommendations and deliberations comprising

part of a process by which governmental decisions and policies are formulated."  *See Sears,*

*Roebuck, & Co.,* 421 U.S. at 150 (internal quotations omitted), *quoting Carl Zeiss Stiftung v.*

*V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318, 324 (D.C. 1966).  The deliberative process privilege

exists "to prevent injury to the quality of agency decisions.  *Sears, Roebuck & Co.,* 421 U.S. at

151.  This also helps to avoid confusion of the public due to "...dissemination of documents

suggesting reasons and rationales for a course of action which were not...the ultimate reasons for

that action."  *American Federation of Government Employees, AFL-CIO, Local 1164 v. U.S.*

*Dept. Of Health & Human Services*, 64 F. Supp. 2d 104, 107 (D. Mass. 1999), *quoting*

*Providence Journal Co. v. U.S. Dept. of Army*, 981 F.2d 552, 557 (1st Cir. 1992).

To properly invoke Exemption 5, an agency must first show that a requested document

was pre-decisional;  that is, "...prepared prior to a final decision in order to assist an agency

decision maker in arriving at his decision.  *See Town of Norfolk v. U.S. Army Corps of*

*Engineers*, 968 F.2d 1438, 1458 (1st  Cir. 1992) (internal quotations omitted), *quoting*

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975).  It must

additionally be shown that the document represents "...a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Id*. By exempting disclosure, government agencies are able to engage in candid deliberations in advance of reaching a final decision on an issue. *See Petroleum Info Corp. v. U.S. Dep't of Interior*, 92 F.2d 1429, 1434 (D.C. Cir. 1992) (deliberative process privilege protects "give and take" consultative process in agency decision-making).

In this matter, records sought by the Plaintiff involve a number of internal DOJ documents concerning deliberations by the USAO-SDFLA regarding on-going litigation between Plaintiff and members of that office, as well as discussions concerning the rules and policies regarding that office's intern/extern legal program as a result of Plaintiff's brief tenure at the USAO-SDFLA office. *See* Wilkinson Decl., *Exhibit 2*, ¶ 31. For example, AUSA Chris Morgan in Massachusetts provided his impressions of the *Mullane v. DOJ* litigation for discussion and client guidance on how best to proceed in the case. *Id*. Similarly, AUSA Lehr of the USAO-SDFLA sought advice from her supervisor on the office's policies relating to its Spring Internship Program's final evaluation and certification process. *Id*. Likewise, redactions under Exemption 5 encompassed deliberations between AUSA Lehr and her Civil Chief regarding the office's policies as to AUSA's named in lawsuits. *Id*. In fact, the *Vaughn* index provides numerous examples of pre-decisional internal deliberations concerning Plaintiff's on-going litigation between members of the USAO-SDFLA and the strategies to defend that case. *See Vaughn* Index, Bates Nos. 1130, 1198-1260, 1579, 1620, 3086-87, 3239-40.[6] By exempting

---

[6] In fact, many of the redactions under Exemption 5 find their support under both deliberative process privilege and attorney client/work product privileges. *See, e.g., Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 926 F. Supp. 2d 121, 138-45 (D.D.C. 2013) (DHS

disclosure, government agencies are able to engage in candid deliberations in advance of reaching a final decision on an issue. *See Petroleum Info Corp. v. U.S. Dep't of Interior*, 92 F.2d 1429, 1434 (D.C. Cir. 1992)(deliberative process privilege protects the "give and take" consultive process in agency decision-making).

At bottom, the withheld or redacted documents detailed in the *Vaughn* Index are part of the deliberative process undertaken by the DOJ before reaching a final policy decision and protected under Exemption 5. *See, e.g., Stalcup v. CIA*, 768 F.3d 65, 70 (1st Cir. 2014) (key issue is whether the documents were "prepared to facilitate and inform a final decision or deliberate function essential to the agency."), *quoting Providence Journal Co.*, 981 F.2d at 560.

### ii.    Attorney Work Product Privilege

Exemption 5 also encompasses the work product privilege. *Sears, Roebuck & Co.*, 421 U.S. at 154-55 (1975). That doctrine protects documents "prepared in anticipation of litigation," as well as "mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3); *accord A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 146 (2d Cir. 1994). Without such protection, an entity would have to choose between "scrimp[ing] on candor and completeness" or disclosing its "assessment of its strengths and weakness . . . to litigation adversaries." *U.S. v. Adlman*, 134 F.3d 1194, 1200 (2nd Cir. 1998).

The privilege protects not only "deliberative materials but it also protects factual materials prepared in anticipation of litigation. Any part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like,

---

applied multiple privileges, specifically deliberative process, attorney work product and attorney client privileges over same set of documents).

is protected by the work product doctrine and falls under exemption 5." *Tax Analysts v. IRS*, 117 F.3d 617, 620 (D.C. Cir. 1997) (citations omitted), *quoted in ACLU v. U.S. Dep't of Justice*, 90 F. Supp. 3d 201, 213 (S.D.N.Y. 2015). Additionally, invocation of the privilege does not depend on the existence of a specific case or claim; "memos [that] advise the agency of the types of legal challenges likely to be mounted against a proposed program, potential defenses available to the agency, and the likely outcome" are protected work product. *Delaney, Migdail & Young, Chartered v. IRS*, 826 F.2d 124, 126-27 (D.C. Cir. 1987); *accord Adlman*, 68 F.3d at 1501-02; *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992) (documents that "contain[ ] tips for handling [a class of] cases that could affect subsequent . . . litigation" are the "sort of information—prepared in anticipation of litigation— [that] falls within the attorney work-product privilege and, therefore, within exemption 5"), *abrogated on other grounds*, *Milner v. Department of the Navy*, 131 S. Ct. 1259 (2011).

Here, the DOJ properly withheld internal email correspondences between government personnel at the USAO-SDFLA, and between the client and her legal counsel discussing cases developments, draft memoranda, and providing legal advice and impressions. *See* Wilkinson Decl., *Exhibit 2,* ¶¶ 24-25. For example, the withheld documents include, a chart created by AUSA Alison Lehr listing all active cases in USAO-SDFLA's Asset Forfeiture Division itemizing potential future actions and litigation goals. *Id.*, ¶ 25. Additionally, the DOJ withheld a draft Motion to Dismiss and Memorandum of Law in support of that Motion to Dismiss sent from Defense Counsel, Jason Weida, to his client, AUSA Alison Lehr. *Id.* Other withheld documents include email correspondence between defense attorneys, Connor Hackert, Christopher Morgan, and Jason Weida, and with their client, Alison Lehr, discussing legal strategies, impressions, and opinions. *Id.* The legal discussions and analyses contained within

these documents places them squarely within the scope of the Exemption 5, work product privilege.  *See Dalitzky v. U.S. Small Bus. Admin.*, 144 F.R.D. 8, at 13 (D. Mass. 1992) (granting attorney work product privilege to documents containing the "attorney's mental impressions and legal theories" created in preparation for litigation); *Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Justice*, 48 F. Supp. 3d 40, 49 (D.D.C. 2014) (acknowledging that administrative reports or documents can reveal an attorney's mental impressions and strategies, justifying attorney work product privilege); *Gov't Accountability Project v. U.S. Dep't of Justice*, 852 F. Supp. 2d 14, 26 (D.D.C. 2012) (applying the attorney work product privilege to emails and notes prepared in anticipation of litigation); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 800 F. Supp. 2d 202, 217 (D.D.C. 2011) (granting attorney work product privilege to email messages containing "draft memoranda and draft pleadings"). Therefore, these communications are exempt pursuant to the work product privilege.

### iii.    Attorney-Client Privilege

Finally, Exemption 5 includes the attorney-client privilege.  *Sears, Roebuck & Co.*, 421 U.S. at 154 (1975).  This portion of the exemption protects "confidential communications made by a client to his attorney." *State of Maine v. U.S. Dept. of Interior*, 298 F.3d 60, 71 (1st Cir. 2002); *accord In re Grand Jury Subpoena*, 274 F.3d 563, 571 (1st Cir. 2001).  The purpose of such protection is to promote full disclosure between clients and their attorneys, allowing attorneys to represent their clients effectively and efficiently. *Mead Data Ctr., Inc. v. U.S. Dept. of the Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977).

This privilege protects materials where: (1) the holder of the privilege is a client; (2) the individual receiving the communication is a member of the bar acting in their official capacity as a lawyer; (3) the communication relates to a confidential fact that was disclosed to the attorney

for the purpose of receiving legal advice; and (4) the client has claimed the attorney-client privilege. *Judicial Watch, Inc. v. United States Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 153-54 (D.D.C. 2012), *citing In re Sealed Case*, 737 F.2d 94, 98-99, 237 U.S. App. D.C. 312 (D.C. Cir. 1984). Additionally, the parties must maintain "the confidentiality of the communications at issue," and obtaining legal advice must be the primary purpose of the communication. *Judicial Watch*, 841 F. Supp. at 154; *accord Cause of Action Inst. v. United States DOJ*, 330 F. Supp. 3d 336, 347 (D.D.C. 2018), *citing In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 759-60 (D.C. Cir. 2014); *see Hunton & Williams LLP v. U.S. Env't al Prot. Agency*, 346 F. Supp. 3d 61, 81 (D.D.C. 2018) (finding a document covered by deliberative process privilege because it is primarily a recommendation, but not attorney-client privilege because obtaining legal advice was not the primary reason for the document).

The DOJ properly withheld a number of emails between the client and her legal counsel concerning the lawsuit of *Mullane v. United States*. These withheld documents include confidential emails between the client and her attorneys discussing her DOJ representation, case updates, legal impressions, and strategies, as well as analyses of case filings and potential legal options. *See* Wilkinson Decl., *Exhibit 2,* ¶¶ 27-28. By way of example, the DOJ withheld emails between Defense Counsel Weida and Defendant Lehr because they contain requests for and responses to legal advice relevant to her case. *Id.*, ¶ 28. The DOJ also withheld correspondence from Defense Counsel Weida transmitting the unsigned draft Memorandum of Law in support of the Motion to Dismiss to client AUSA Lehr. *Id.* The DOJ properly withheld these communications, and others, under the attorney-client privilege protections of Exemption 5. *See State of* Maine, 298 F.3d at 72 (denying attorney-client privilege protections to *Vaughn* entries that fail to support a claim of confidentiality or justify the privilege); *Protect Democracy Project*,

*Inc. v. U.S. Dep't of Defense*, 320 F. Supp. 3d 162, 176 (D.D.C. 2018) (granting attorney-client privilege protection to a legal outline that was not shared beyond the Attorney General, the OLC and the President and his national security staff); *New York Times Co. v. U.S. Dep't of Justice*, 282 F. Supp. 3d 234, 238-39 (D.D.C. 2017) (finding a memo that details legal advice given based on confidential information as a "quintessential example" of a document covered by attorney-client privilege); *Bloche v. Dep't of Defense*, 414 F. Supp. 3d 6, 46 (D.D.C. 2019) (protecting redactions under attorney-client privilege on a document containing legal advice and recommendations).  As the communications at issue satisfy the standard to invoke the attorney-client privilege, they are exempt from disclosure.

### b.  FOIA Exemption 6

Exemptions 6, as well as Exemption 7(C)[7], both provide that government documents may be withheld where their disclosure would cause an "unwarranted invasion of personal privacy." *See* 5 U.S.C. § 552(b)(6), (b)(7)(C); *U.S. Dep't of State v. Ray*, 502 U.S. 164, 174-75 (1991). Specifically, Exemption 6 states that FOIA does not apply to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." § 552(b)(6). Similarly, Exemption 7(C) provides that FOIA does not apply to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." § 552(b)(7)(C). To determine whether a record has been properly withheld under both Exemptions 6 and 7(C), courts balance the privacy interests

---

[7]  Although not used by Defendants in this case, Exemption 7(C) is discussed to provide this Court with context of the similar privacy interests protected under Exemptions 6 and 7(C).

versus public interests in the disclosure of the records at issue. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004); *U.S. Dep't of Justice v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749, 762 (1989); *Providence Journal Co. V. U.S. Dep't of Army*, 981 F.2d 552, 568 (1st Cir. 1992). The only cognizable public interest for FOIA purposes in this context is the "citizen's right to be informed about 'what the government is up to.'" *See Maynard v. C.I.A.*, 986 F.2d 547, 566 (1st Cir. 1993). In the end, the purpose of Exemption 6 is to protect individuals from injury and embarrassment that can result from the unnecessary disclosure of personal information. *See U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982). As the Supreme Court noted, "disclosure of records regarding private citizens, identifiable by name, is not what the framers of the FOIA had in mind." *Reporters Comm.*, 489 U.S. at 765-66.

Conversely, as emphasized above, "the *only* relevant public interest in the FOIA balancing analysis," according to the Supreme Court, "is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties . . . ." *Bibles v. Or. Natural Desert Ass'n*, 519 U.S. 355, 355-56 (1997) (alteration and internal quotation marks omitted); *see Reporters Comm.*, 489 U.S. at 773. If the government satisfies its burden of proving that Exemption 6 (and 7(C)) is applicable because there is a relevant private interest in the requested materials, the burden then shifts to the individual requesting the information to demonstrate that the public interest served by disclosure "is a significant one," and that disclosure of the documents is likely to advance that interest. *Favish*, 541 U.S. at 172.

Here, generally speaking, the only information redacted by DOJ (and the SEC) from the documents under Exemption 6 was the personal email addresses, fax and telephone numbers of several USAO employees at the SDFLA, as well as employees at SEC, and nothing more. In

regards to the DOJ, several individuals are involved in criminal prosecutions as part of their official duties and the release of such personal identifiable information could subject them to harassment in their personal and private lives. *See* Wilkinson Decl., *Exhibit 2,* ¶ 35. In addition, in two other separate documents, the DOJ withheld medical information and the names of applicants to the volunteer law internship program. Certainly, there can be no claim by Plaintiff that the disclosure of this information would provide the public with a greater understanding of "what the government is up to" in order to mount a challenge to such minor withholdings under Exemption 6. Accordingly, where, as here, the information redacted under Exemption 6 does not have any discernable bearing on what the government is up to, there is no public interest recognized by FOIA for balancing purposes, and the use of Exemption 6 should be upheld in these circumstances. *See Federal Labor Relations authority v. United States Dep't of Navy,* 941 F.2d 49, 57 (1st Cir. 1991)(where the information does not relate to what the government is up to, a non-zero interest in privacy at stake cannot be outweighed by a public interest that falls outside FOIA's purpose).

## VIII.   CONCLUSION

For the foregoing reasons, the Defendant respectfully requests the Court to grant summary judgment in its favor.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:   */s/ Michael Sady*
MICHAEL SADY (B.B.O. #552934)
Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210

(617) 748-3100
michael.sady@usdoj.gov