UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JONATHAN MULLANE, | ) | Docket No. 1:19-CV-12379-DJC |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF JUSTICE and | ) | |
| UNITED STATES SECURITIES | ) | |
| AND EXCHANGE COMMISSION, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OMNIBUS:**
**[1] OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;**
**OR, IN THE ALTERNATIVE,**
**[2] CROSS-MOTION FOR LIMITED DISCOVERY;**
**[3] CROSS-MOTION FOR *IN CAMERA* REVIEW; AND**
**[4] CROSS-MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Now comes Plaintiff Jonathan Mullane (hereinafter, "Plaintiff") in the above-captioned action, and respectfully requests that this Honorable Court deny the motion for summary judgment [D.E. 27-28] of Defendants United States Department of Justice (hereinafter, "DOJ") and United States Securities and Exchange Commission (hereinafter, "SEC") (collectively, "Defendants").

In support of his opposition, Plaintiff states that *inter alia*:

(i)     Consistent with the First Circuit's binding precedent in <u>Church of Scientology v. United States Dep't of Justice</u>, 30 F.3d 224 (1st Cir. 1994), summary judgment is inappropriate because the Plaintiff is disputing, without limitation, the *scope* of the Defendants' search for responsive records[1] (*i.e.*, in addition to the FOIA exemptions erroneously invoked);

(ii)    As a practical matter, Defendants' vague and conclusory statements prevent this Court from performing any meaningful *de novo* factual review of Defendants' Freedom of Information Act (hereinafter, "FOIA") exemption claims, and their affidavits and <u>Vaughn</u> index fail to set forth specific facts in support of the exemptions invoked;

---

[1] This argument is independent and unrelated to the separate issue of whether Defendants herein improperly invoked FOIA/PA disclosure exemptions for the documents that they did, in fact, produce (yet heavily redacted). The First Circuit's written opinion in <u>Church of Scientology v. United States Dep't of Justice</u>, 30 F.3d 224 (1st Cir. 1994) **[Ex. 1]** provides a helpful overview of the application of these two separate arguments, respectively, in a FOIA context.

(iii)    In light of the fact that the Parties hereto are *not* in agreement as to the material facts of this case, this Court should first grant: (1) limited discovery; (2) an *in camera* review of the heavily-redacted FOIA and PA records; and (3) an order compelling Defendants to release additional documents[2]; and

(iv)    Even assuming *arguendo* that the Defendants' properly invoked one or more FOIA exceptions—and they did not—this still does not alter the fact that Plaintiff has *also* submitted requests under the Privacy Act of 1974 (hereinafter, "Privacy Act" or "PA"), and Defendants' reliance on the "criminal investigation" exemption to disclosure under that separate statutory scheme, *viz.* 5 U.S.C. § 552a(j)(2), is erroneous and factually unsupported.

## STANDARD OF REVIEW

On a motion for summary judgment, the burden is upon the moving party to show, based upon the discovery and disclosed materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In both FOIA and Privacy Act cases, the defendant government agency bears the burden of proof, and must prove that it acted in accordance with both statutes. See, e.g., Batton v. Evers, 598 F.3d 169, 175 (5th Cir. 2010) (FOIA); Cooper Cameron Corp. v. U.S. Dep't of Labor, OSHA, 280 F.3d 539, 543 (5th Cir. 2002) (FOIA); Chambers v. U.S. Dep't of Interior, 568 F.3d 998, 1003 (D.C. Cir. 2009) (FOIA and Privacy Act).

In a FOIA context, summary judgment is only authorized "when the agency proves that it has fully discharged its obligations under the FOIA after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Moffat v. DOJ, 2011 U.S. Dist. LEXIS 87396, at *1 (D. Mass. Aug. 5, 2011) (internal quotations and

---

[2] As set forth in Plaintiff's contemporaneously-filed affidavit, while certain responsive records have indeed been produced by Defendants (but remain improperly redacted), numerous other responsive FOIA/PA records have not been produced *at all*. For such unproduced documents, limited discovery is both appropriate and required. The question of whether the defendant agency can lawfully invoke FOIA/PA exemptions is completely unrelated to the separate issue of whether the search uncovered all responsive records in the first place. Indeed, agency defendants may not preemptively invoke FOIA/PA exemptions for undiscovered records because the agency "cannot know, without [first] searching, whether some of its responsive records may contain segregable, non-exempt information." James Madison Project v. DOJ, 208 F. Supp. 3d 265, 287 (D.D.C. 2016); Broward Bulldog, Inc. v. DOJ, 2014 WL 2999205 at *3 (S.D. Fla. Apr. 4, 2014) (where government failed to conduct certain searches based on belief that responsive documents would be subject to FOIA/PA exemptions, government improperly "deprive[d] the Court of its role in examining any relevant documents and independently determining whether any exemptions may apply").

citations omitted). "An agency fully discharges its burden when it proves that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the FOIA's inspection requirements." Id.

The defendant agency is required to prove that each and every FOIA and/or PA exception that it invoked was, in fact, applicable. See, e.g., Maynard v. CIA, 986 F.2d 547, 557-58 (1st Cir. 1993); In Re Department of Justice, 999 F.2d 1302, 1305 (8th Cir. 1993). Courts cannot give any deference to the defendant agency's decision to invoke a FOIA exception; instead, the court must determine *de novo* whether the queried agency has met its burden of proof in the instant proceeding. See Aronson v. IRS, 973 F.2d 962, 966 (1st Cir. 1992).

## ANALYSIS

To justify summary judgment in a FOIA action, the defendant agency has the burden to make two showings: (1) "that its search was adequate," and (2) "that any withheld documents fall within an exemption to FOIA." Carney v. DOJ, 19 F.3d 807, 812 (2d Cir. 1994). In the case at bar, Defendants have failed to carry their burden on either issue in this action. Summary judgment should therefore be denied.

**I.      SUMMARY JUDGMENT SHOULD BE DENIED, AS DEFENDANTS' SEARCH FOR RESPONSIVE FOIA/PA DOCUMENTS: (1) WAS IMPERMISSIBLY NARROW AS A MATTER OF LAW; (2) FAILED TO SEARCH NUMEROUS CRITICAL RECORDS SYSTEMS WHERE CERTAIN RESPONSIVE RECORDS ARE LOCATED; (3) FAILED TO INCLUDE EMAIL ATTACHMENTS; AND (4) ENTAILED ASKING DOJ AND SEC EMPLOYEES WHO WERE INDIVIDUALLY-NAMED DEFENDANTS IN SEPARATE RICO ACTIONS TO PERSONALLY ASSIST AND PARTICIPATE IN DEFENDANTS' SEARCHES FOR RESPONSIVE FOIA/PA RECORDS.**

An adequate FOIA search is one which is "reasonably calculated to discover the requested documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991). Before summary judgment can enter, "the defending agency must show beyond material doubt that it has conducted" such a search. Morley v. CIA, 508 F.3d 1108, 1114 (D.C. Cir. 2007). Here, the available evidence shows that the exact *opposite* has occurred, and that Defendants have utterly failed to uncover numerous responsive documents in their possession. At a minimum, material

disputes of fact regarding the reasonableness of Defendants' searches preclude summary judgment at this particular juncture. Defendants' motion should therefore be denied.

When an agency relies on sworn declarations to establish the adequacy of its search, those declarations "must be 'relatively detailed and non-conclusory.'" Serv. Women's Action Network v. Dep't of Def., 888 F. Supp. 2d 231, 240-41 (D. Conn. 2012) (quoting SafeCard, *supra* at 1200). The agency's declarations "must detail files searched and the general scheme of the agency file system," id. at 245, and they must "describe in reasonable detail the scope of the search and the **search terms** or methods employed," (bold supplied) id. at 241. To satisfy the FOIA, the agency must conduct a search "reasonably calculated" to uncover all relevant documents and the agency must provide "reasonable detail" regarding the search and the methods used. Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).

In the case at bar, Defendants' declarations are *de jure* insufficient to support summary judgment because: (1) they fail to provide specific facts about the scope and methods of Defendants' searches (which the affiants themselves did not even perform, and had delegated to others) and  the specific **search terms** they used; and (2) where Defendants' declarations did, in fact, set forth specific examples of searches conducted, those few examples demonstrate that Defendants actually failed to search in locations where responsive FOIA/PA records were likely to be located, failed to use any search terms that would likely result in discovery of other responsive records, and impermissibly failed to construe Plaintiff's FOIA/PA records "broadly."

In cases such as the instant matter, where the FOIA requester "demands **all** agency records on a given subject," the agency's search is not legally adequate and sufficient unless it "pursue[s] any 'clear and certain' lead it cannot in good faith ignore" in pursuit of all responsive records. Halpern v. FBI, 181 F.3d 279, 288 (2d Cir. 1999). A search's failure to uncover material known to be in the possession of the agency "raises a legitimate question as to thoroughness of the search." See Bagwell v. U.S. Dep't of Justice, 2015 WL 9272836, at *2 (D.D.C. 2015) (**finding doubt as to the adequacy of the DOJ's search where it failed to uncover a record of communication alluded to elsewhere**).

With respect to the few parts of Defendants' affidavits that are detailed, they conspicuously demonstrate that Defendants' searches were under-inclusive. *Inter alia*, as set forth in the DOJ's own affidavits, the DOJ erroneously and improperly limited its search solely to one record system for all aspects of the request, even though the disclosed email communications point to the

existence of relevant records in other places. Further, as more fully explained in his supporting affidavit [D.E. 45], Plaintiff informed Defendant of these deficiencies immediately after receiving the records of clearly-omitted material. This violates the agency's obligation to "**follow through on obvious leads**" to discover requested documents. (Emphasis supplied) <u>Valencia-Lucena v. U.S. Coast Guard</u>, 180 F.3d 321, 326 (D.C. Cir. 1999).

By way of example only, according to the sworn declaration of Miami USAO paralegal and FOIA/PA coordinator Francys Marcenaros [D.E. 28-1, p. 7 ¶ 7], instead of searching for any and all Miami USAO email correspondence between January and April 2018 wherein the Plaintiff's name was mentioned—something which could reasonably be conducted on any computer by simply using "Jonathan Mullane" as the search term—Ms. Marcenaros and her Miami USAO colleagues inexplicably and improperly limited their "search" to emails to or from certain individuals. Indeed, as Ms. Marcenaros herself explains in her sworn declaration, "**[t]he search conducted was for all emails and correspondence between our office [*i.e.*, the Miami USAO] and Judge Moreno pertaining to Mr. Mullane.**" <u>Id.</u> This was improper, as Plaintiff never asked for *only* "emails and correspondence" to and from Judge Moreno.

In light of the foregoing statement in Defendants' own affidavit, Defendant DOJ cannot now request, in good faith, that this Court now enter summary judgment in its favor when its own affidavits readily confirm that it did *not* perform any adequate search for all responsive FOIA/PA records. For FOIA requests that "demands all agency records on a given subject" (such as Plaintiff's FOIA requests in the instant matter for *all* records relating to himself and his Miami USAO and Miami SEC employment), the agency's search is not legally sufficient unless it "pursue[s] any 'clear and certain' lead it cannot in good faith ignore" in pursuit of the responsive records. <u>Halpern v. FBI</u>, 181 F.3d 279, 288 (2d Cir. 1999).

In addition, Defendants deliberately overlooked numerous record systems that it should have searched, thereby adopting an improperly narrow reading of Plaintiff's FOIA/PA requests. <u>See, e.g.</u>, <u>Pub. Emps. for Envtl. Responsibility. v. U.S. Int'l Boundary & Water Comm'n.</u>, 842 F. Supp. 2d 219, 225 (D.D.C. 2012). As set forth in his contemporaneously-submitted affidavit [D.E. 45], Plaintiff has also identified numerous omitted documents that Defendants impermissibly overlooked, the existence of which is readily apparent based upon the material produced to-date. <u>Valencia-Lucena</u>, 180 F.3d at 327 ("It is well-settled that if an agency has reason to know certain

places may contain responsive documents, it is obligated under FOIA to search barring an undue burden.").

    *Firstly*, as more fully explained in his affidavit, Plaintiff has *repeatedly* apprised Defendant DOJ of the fact that its employees such as former AUSA Alison W. Lehr were using personal email accounts in order to evade FOIA/PA requests, and that responsive FOIA/PA records were likely to be found on such accounts. Courts have consistently held that the defendant agency cannot escape liability in FOIA actions in such situations. Though agencies need not retrospectively search records they failed to retain, SafeCard Servcs., Inc. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991), **"agencies violate the FOIA when they fail to search for records an employee improperly secreted from the agency's control."** Judicial Watch, Inc. v. U.S. Dep't of State, 1:14-CV-01242 (D.D.C. Jul. 21, 2014) (citing Judicial Watch, Inc. v. U.S. Dep't of Commerce, 34 F. Supp. 2d 28, 42-44 (D.D.C. 1998)) **[Ex. 3]**; see Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 159 (1980) (Brennan, J., concurring in part and dissenting in part) (noting the majority's suggestion "that an agency would be improperly withholding documents if it failed to take steps to recover papers removed from its custody deliberately to evade an [*sic*] FOIA request").

    *Secondly*, as previously explained, *ante*, Defendants improperly limited their searches (*e.g.*, only looking for emails relating to Plaintiff that were sent to or from Judge Moreno, *etc.*). *Thirdly*, Defendants knowingly failed to follow "obvious leads" by omitting numerous documents which were specifically referenced in numerous emails (*e.g.*, attachments to the emails themselves). *Fourthly*, entire categories of information are conspicuously missing from Defendants' "searches." *Inter alia*, there is not a single email or telephone record showing the Miami USAO's numerous communications with Judge Moreno. With respect to Defendant DOJ, in one responsive email, Miami SEC employee Lisa T. Roberts forwards a PDF copy of an April 10, 2018 hearing transcript relating to Plaintiff to her Miami SEC colleagues—yet, almost miraculously, the SEC's "search" fails to provide the source of that PDF file (*e.g.*, the original email sending Ms. Roberts the transcript in the first instance). Because such emails are conspicuously missing, Defendant SEC's purportedly *bona fide* "search" for responsive FOIA/PA records is insufficient as a matter of law.[3]

---

[3] This list of deficiencies relating to Defendants' "searches" is not exhaustive. By way of further example, with respect to Defendant SEC, the affidavit of Washington, DC, SEC employee Ray McInerney [D.E. 28-3] fails to provide a single **search term** used in the "search" for responsive FOIA/PA records.

*Fifthly*, while the affidavit of SEC employee Ray McInerney [D.E. 28-3, ¶ 6] claims that "staff has ***now*** requested that individuals in the Miami Regional Office ("MIRO") who may have potentially responsive emails conduct a search for those emails[,]" and that "OHR and MIRO are the offices in the SEC that are likely to have responsive documents[,]" id., there is no mention whatsoever of what happened next. Here, there is nothing to indicate: (1) whether the Miami SEC ever performed any "search" in response to that request; (2) what responsive records, if any, that search yielded; (3) what search terms were used by the Miami SEC; (4) whether the SEC intended to invoke any FOIA/PA exemptions for the records that were later obtained through the Miami SEC (assuming *arguendo* that the Miami SEC would later uncover responsive records through their search), *etc.* Under such circumstances, and without a fully-developed factual record for this Court to review, Defendants DOJ and SEC have come nowhere close to meeting the requirements for summary judgment in FOIA/PA cases, and have come nowhere close to meeting their burden of proof. Indeed, all factual inferences must be construed "in the light most favorable to the FOIA requester." Moffat v. DOJ, 2011 U.S. Dist. LEXIS 87396, at *1 (D. Mass. Aug. 5, 2011).

Because Defendants have yet to describe any reasonably thorough search, the burden has not shifted to Plaintiff to show that the search was *not* adequate or conducted in good faith. See Church of Scientology Int'l, 30 F.3d at 233 ("The presumption of good faith accorded to agency affidavits . . . can only be applicable when the agency has provided a reasonably detailed explanation for its withholdings . . . ."). Even if had the burden shifted, Plaintiff would still prevail, as it is clear on the face of Defendants' affidavits that their "searches"—which entailed the affiants simply asking other DOJ and SEC employees to perform the "searches" for them, and without providing any specific instructions and/or search terms for them to use—were all under-inclusive as a matter of law. This is because: (1) the searches were improperly narrowed by Defendants themselves; and (2) Defendants both overlooked serious issues which were timely raised by Plaintiff. Aff. of Pl. J. Mullane, D.E. 45 ¶¶ 34-44. Summary judgment is therefore inappropriate in light of the foregoing shortcomings. Aguiar v. DEA, 865 F.3d 730, 737 (D.C. Cir. 2017).

What is more, it is "crystal clear" that Defendants' searches were *not* undertaken in "good faith" in this matter. As confirmed by Defendants' own affidavits, the Miami USAO deliberately and knowingly failed to act on Plaintiff's FOIA/PA requests for fifteen (15) months in an effort to shield themselves and their employees from civil liability in the contemporaneous RICO actions. Defendants' affidavits conspicuously fail to explain to this Court why it took them fifteen (15)

7

months to respond to Plaintiff's FOIA/PA requests—and for good reason. In Plaintiff's first RICO action against certain federal employees, *viz.* Mullane, et al. v. Moreno, et al., 1:18-CV-12618-PBS, ECF 164 (D. Mass. Dec. 20, 2018), the Hon. Patti B. Saris did not enter her decision on the defendants' Rule 12 motion to dismiss in that matter until **January 6, 2020**. See **Ex. 4**. Without first allowing the parties to engage in any discovery, Judge Saris ordered dismissal of that action on January 6, 2020, holding *inter alia* that Plaintiff's allegations of government misconduct were "implausible." This unfortunate result is unsurprising given that, as confirmed by its own affidavits in this action, **Defendant DOJ deliberately and knowingly delayed the disclosure of FOIA/PA records for over an entire year. In point of fact, as confirmed by the sworn declaration of DOJ employee Francys Marcenaros [D.E. 28-1, ¶ 6], Ms. Marcenaros did not *begin* to process Plaintiff's FOIA/PA request until January 8, 2020—*i.e.*, less than 48 hours after Judge Saris' January 6, 2020 ruling on the Rule 12 motion to dismiss in Mullane, et al. v. Moreno, et al., 1:18-CV-12618-PBS, ECF 164 (D. Mass. Dec. 20, 2018) [Ex. 4].**

Thus, Defendants have successfully perpetrated a fraud on two separate federal courts: first in the Moreno action before Judge Saris, and now for the second time in the instant FOIA/PA action. Here, Defendants now misrepresent to this Court that their respective FOIA/PA searches were all undertaken in "good faith" notwithstanding the prolonged delays which they conspicuously fail to explain. Even worse, Defendants now misrepresent in sworn declarations submitted to this Court that: (1) they did not have the correct email address for Plaintiff on file, even though they had "miraculously" used the correct email to contact Plaintiff on earlier occasions [Ex. 5], and even though they inexplicably failed to call or write a letter to Plaintiff requesting his correct email address; (2) that Defendants "suddenly" discovered missing emails on a computer after (yet another) unexplained six-month delay [D.E. 28-1, ¶ 10]; and (3) that it is pure coincidence that **Defendants finally started performing their FOIA/PA searches less than 48 hours after Judge Saris' ruling on the Rule 12 motion on January 6, 2020, and after an unexplained fifteen (15) month delay**. In point of fact, in their own affidavits, Defendants do not even bother explaining to this Court the reason for that delay, or why their "searches" directly coincide with the Moreno court's January 6, 2020 order dismissing that action.

Similarly, in the separate Moreno action wherein the defendants were all represented by the USAO, counsel for the defendants moved to dismiss on plausibility grounds, arguing *inter alia* that the government misconduct alleged in Plaintiff's complaint was utterly implausible. Yet, at

the same time, counsel for the defendants had actual knowledge of the fact that Plaintiff had also[4] submitted FOIA/PA requests for material records which, if disclosed, would support Plaintiff's averments of government misconduct and likely expose defendants and/or their employees to civil liability in Moreno. Counsel for the government defendants, who was a DOJ employee at all times relevant hereto, had actual knowledge of the fact the Miami USAO were unlawfully *continuing* to delay disclosure of the FOIA/PA records until after the Moreno court's ruling on the Rule 12 motion to dismiss.[5] There can be no *bona fide* dispute that counsel had "actual knowledge" given that he **also** initially represented Defendants DOJ and SEC in the instant FOIA action. When the undersigned expressed concerns about the foregoing manifest impropriety, counsel for Defendants finally withdrew from this case. **Ex. 6**; Aff. of E. P. Mullane, Esq., D.E. 46.

With respect to the responsive FOIA/PA records that Defendants ultimately produced, the email communications therein explicitly reference email attachments and other responsive documents. However, in both the Vaughn index and in Defendants' own affidavits, there is no mention whatsoever of *any* of those omitted documents. In other words, instead of seeking to invoke FOIA exemptions for the subject email attachments, Defendants' "searches" do not even attempt to do so, and instead exclude them and fail to even recognize their existence—all in violation of the FOIA and PA. Ayyad v. IRS, 2018 WL 704849 at *5 (D. Md. Feb. 2, 2018) (requiring agency to produce attachments to previously disclosed emails). By way of example only, in one email produced by Defendant DOJ, the author of that message, who was a Miami USAO employee at the time in question, states that a memorandum directly pertaining to Plaintiff was being contemporaneously sent as an email attachment. See, e.g., **Ex. 7**. However, not only have Defendants inexplicably failed to produce a copy of that memorandum in response to

---

[4] As correctly acknowledged by Defendants' own affidavit [D.E. 28-1 p. 2 ¶ 4], Plaintiff's FOIA/PA requests were dated **October 23, 2018**. The initial Moreno action was not filed until the following month in Suffolk Superior Court on **November 27, 2018**. **Ex. 2**.

[5] Further evidencing the fact that the Miami USAO was closely following the Moreno action—and that all of its FOIA/PA disclosure decisions were specifically made with the Moreno case in mind—is the DOJ affidavit authored by Ms. Marcenaros [D.E. 28-1]. Therein Ms. Marcenaros states, in no uncertain terms, that she conducted her FOIA/PA "search" based upon the facts of the Moreno case: "[d]ue to the **allegations in the civil complaint,** I reached out to the executive division and informed the staff assistant to the FAUSA that a search for emails and correspondence of former USA Benjamin Greenberg was required." D.E. 28-1, ¶ 7. By mentioning a "civil complaint" involving "Benjamin Greenberg[,]" it is clear that Ms. Marcenaros is referring to the "civil complaint" in the Moreno lawsuit. Indeed, the name "Greenberg" does not appear anywhere in the complaint in this FOIA/PA action [D.E. 1]. The only "civil complaint" wherein the name "Greenberg" was even mentioned (as of that point in time) was the Moreno action before Judge Saris.

Plaintiff's FOIA/PA requests, their own affidavits and <u>Vaughn</u> index fail to even acknowledge that document's existence. Under such circumstances, this Court cannot possibly conduct any meaningful fact-based, *de novo* review of Defendants' application of the various FOIA and PA exemptions if Defendants' own statements fail to even acknowledge the existence of such responsive records in the first place.

Moreover, even if Defendant DOJ had correctly and lawfully limited it search to "all emails and correspondence between our office [*i.e.*, the Miami USAO] and Judge Moreno pertaining to Mr. Mullane"—and it did not—not one email to or from Judge Moreno has been produced to-date. Stated differently, Defendant DOJ is *not* arguing that such emails are subject to certain FOIA exemptions. Instead, DOJ is categorically denying the existence of such email communications. This is evidenced by its <u>Vaughn</u> index, wherein the Judge Moreno emails are conspicuously missing.

Given the facts of the instant matter, it is simply not cogent that there is not a single responsive email[6] between the Miami USAO and Judge Moreno. What is more, according the Judge Moreno himself, a telephone call with the Miami USAO had taken place prior to the April 10, 2018 hearing—yet, inexplicably, not one telephone record has been produced by Defendant DOJ. In addition, not a single email referencing the subject matter of that telephone call has been produced, or any other document referencing the discussions between Miami USAO personnel and Judge Moreno.[7]

Under such circumstances, as a matter of settled law, such an "unlikely absence of any external communications" supports a finding that the agency did *not* conduct an adequate search. <u>Safety Research & Strategies, Inc. v. Dep't of Trans.</u>, 903 F. Supp. 2d 1, 9 (D.D.C. 2012). In sum, Plaintiff is not pointing to the fleeting absence of some records, but serious, material omissions that raise fundamental issues about the reasonableness and adequacy of the search itself. <u>See</u> <u>Richardson v. United States</u>, 80 F. Supp. 3d 128, 134 (D.D.C. 2015). Summary judgment is

---

[6] Given that Judge Moreno himself has personally contacted undersigned counsel regarding this matter from his professional email address, to wit, <u>Federico_A_Moreno@flsd.uscourts.gov</u>, Defendant DOJ's purported inability to locate a single responsive email from Judge Moreno is simply impossible to believe, and lacks candor.

[7] Even if Defendant DOJ had produced email communications between the Miami USAO and Judge Moreno in this matter—and it has not—the agency would not have been able to invoke any FOIA exemptions for those emails. <u>See,</u> e.g., <u>Bernegger v. Exec. Office for United States Attys.</u>, 334 F. Supp. 3d 74 (D.D.C. 2018) (**holding that email communications between a federal district court and the U.S. Attorney's Office are not entitled to any FOIA exemptions, and must therefore be disclosed as public records**).

therefore inappropriate unless and until Defendants address the serious shortcomings in their searches.

Finally, it is well settled that, in FOIA actions, an agency may *not* preemptively invoke an exemption to avoid conducting a search, because it "cannot know, without [first] searching, whether some of its responsive records may contain segregable, non-exempt information." James Madison Project v. DOJ, 208 F. Supp. 3d 265, 287 (D.D.C. 2016); see also Broward Bulldog, Inc. v. DOJ, No. 12-61735-CIV, 2014 WL 2999205 at *3 (S.D. Fla. Apr. 4, 2014) (where government failed to conduct certain FOIA searches on belief that responsive documents would be exempt, government improperly "deprive[d] the Court of its role in examining any relevant documents and independently determining whether any exemptions may apply").

## II.    SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE THE DEFENDANTS' VAUGHN INDEX FAILS TO SET FORTH SPECIFIC FACTS WHICH WOULD ALLOW THIS COURT TO CONDUCT A MEANINGFUL EVALUATION OF THE DEFENDANTS' FOIA EXEMPTION CLAIMS.

As to the heavily-redacted FOIA/PA records that have been produced hitherto in this action, the purported grounds for applying FOIA exemptions are entirely unjustified here. Indeed, an agency must do much more than offer conclusory statements[8] in order to use FOIA withholding statutes to redact information. See Founding Church of Scientology v. NSA, 610 F.2d 824, 831 (D.C. Cir. 1979). To properly invoke FOIA exemptions, the agencies must provide affidavits with "the kind of detailed, scrupulous description [of the withheld information] that enables a District Court judge to perform a searching *de novo* review." Church of Scientology of Cal. v. Turner, 662 F.2d 784, 786 (D.C. Cir. 1980). In the case at bar, until Defendants do so, summary judgment is unavailable and barred. Whitaker v. CIA, 31 F. Supp. 3d 23, 35, 37–38 (D.D.C. 2014) (requiring CIA to "file a more sufficient declaration and Vaughn index which justifies the actual relationship between the withheld information and personnel functions of the CIA" and "why all of the information withheld pertains to intelligence sources and methods").

---

[8] *Inter alia*, Defendants' affidavits are replete with impermissible conclusions. For instance, in ¶ 40 of the affidavit of DOJ employee Justin P. Wilkinson, Mr. Wilkinson states that "EOUSA determined that there was no reasonably segregable, non-exempt information [ . . . ] pursuant to FOIA Exemptions (b)(5) and (b)(6)." Yet, in a FOIA action, courts are not permitted to give any deference whatsoever to such agency determinations and/or applications of FOIA exemptions. Indeed, in FOIA actions, courts are required to review all facts *de novo*—something which this Court cannot possibly do here, where Defendants' affidavits and Vaughn index fail to state *specific* facts, and where Defendants' own statements are all as vague and indistinct as the foregoing excerpt from Mr. Wilkinson's affidavit.

Notwithstanding Defendants' representation to the contrary, the <u>Vaughn</u> index supplied does not even provide a full accounting of their withholdings. Defendants' withholdings of entire documents are not reflected in their <u>Vaughn</u> index, nor have Defendants elsewhere provided a sufficiently detailed description of the withheld documents to enable Plaintiff and the Court to determine whether such withholdings were proper.

Defendants make much of the fact that the Plaintiff herein is also a party to separate actions, *viz.* <u>Mullane v. Moreno, et al.</u>, 1:20-CV-21339-AKK (S.D. Fla. Mar. 27, 2020) and <u>Mullane, et al. v. Moreno, et al.</u>, 20-1390 (1st Cir. Apr. 2, 2020). However, as the Supreme Court of the United States has consistently held, **a requester's rights under FOIA are neither diminished nor enhanced by the fact that the requester is *also* a litigant in a separate, concurrent lawsuit.** <u>NLRB v. Robbins Tire & Rubber Co.</u>, 437 U.S. 214, 242 n.23 (1978); <u>see also</u> <u>United Technologies Corp. v. FAA</u>, 102 F.3d 688, 690 (2d Cir. 1996) ("**It is a basic principle under FOIA that the individuating circumstances of a requester are not to be considered in deciding whether a particular document should be disclosed. All requesters are considered to have equal rights of access.**"). In the case at bar, there can be no *bona fide* dispute that Defendants felt that it was in their legal interests not to disclose any documents pursuant to Plaintiff's FOIA/PA requests while a lawsuit was ongoing against federal employees. However, pursuant to <u>NLRB</u>—a Supreme Court decision that the DOJ and SEC are presumptively well aware of—this cannot justify Defendants' unlawful decision to withhold all responsive FOIA/PA records pending the outcome of Plaintiff's lawsuit in <u>Moreno</u>, *supra.*

To be clear, Defendants' conduct herein is nothing short of disturbing. In the instant matter, Defendants—both federal agencies—made a deliberate, calculated decision to knowingly violate two (2) separate federal statutes, *viz.* the FOIA and PA, by unlawfully "sitting on" Plaintiff's FOIA/PA requests for a **<u>fifteen (15) month</u>** period (*i.e.*, over an entire year) and waiting until exactly 48 hours had passed after Judge Saris' decision on the Rule 12 motion to dismiss in order to finally *begin* processing Plaintiff's FOIA/PA requests. In so doing, Defendants knowingly committed an obstruction of justice, and knowingly caused an avoidable miscarriage of justice in the <u>Moreno</u> lawsuit by deliberately concealing material evidence that Plaintiff was legally entitled to obtain (and in a timely manner) through his lawfully-submitted FOIA/PA requests. This is the precise type of government misconduct that both the FOIA and PA are designed to deter. Further, this is the exact same factual scenario that the Supreme Court addressed in <u>NLRB</u>, *supra.*

III.    **SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE THE "DELIBERATIVE PROCESS" PRIVILEGE IS VITIATED AND DEFEATED BY THE "GOVERNMENT MISCONDUCT" EXCEPTION TO THAT PRIVILEGE.**

In the instant matter, Defendants continue to withhold thousands of pages of responsive FOIA/PA records under the so-called "deliberative process" exemption, which is recognized in FOIA's Exemption 5. See 5 U.S.C. § 552(b)(5). The deliberative process exemption allows agencies to withhold information when it establishes that the document is both "deliberative" and "predecisional." Stalcup v. CIA, 768 F.3d 65, 70 (1st Cir. 2014).[9] A document "consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context" is subject to disclosure. EPA v. Mink, 410 U.S. 73, 87-88 (1973).

However, even assuming *arguendo* that the "deliberative process" exemption applies here (and it does not), that particular privilege is overcome and defeated by the "government misconduct" exception—a well-settled exception to the privilege. As the First Circuit explained in Texaco Puerto Rico, Inc. v. Department of Consumer Affairs, 60 F.3d 867, 885 (1st Cir. 1995), that "**where the documents sought *may* shed light on alleged government malfeasance, the [deliberative process] privilege is routinely denied.**" (Emphasis supplied) id.; accord In re Sealed Case, 121 F.3d 729, 738, 326 U.S. App. D.C. 276 (D.C. Cir. 1997) ("[W]here there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government.").

Indeed, the Supreme Court of the United States has held that such FOIA exemptions must be waived if the evidence "warrant[s] a belief by a reasonable person that the alleged government impropriety *might* have occurred." (Emphasis supplied) Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 174 (2004). In the case at bar, even assuming *arguendo* that the Court disagrees with Plaintiff's position that Defendants have not acted in good faith vis-à-vis his October 2018 FOIA/PA requests, a "reasonable onlooker" would objectively question the propriety of Defendants' actions in this matter by: (1) waiting over an entire year to finally *begin*

---

[9] After Stalcup was decided in 2014, Congress subsequently enacted the FOIA Improvement Act of 2016 (Public Law No. 114-185). The Act included provisions specifically seeking to constrain overuse and abuse of Exemption 5. One requires agencies to apply a "foreseeable harm" standard when seeking to withhold records under the exemption. The standard requires agencies to sufficiently show that disclosure of the requested records would cause a *specific* harm—something which Defendants have failed to do in this matter.

processing the October 2018 FOIA/PA requests; (2) waiting until Judge Saris first ruled on the Rule 12 motion to dismiss in <u>Moreno</u>, *supra*, before Defendants finally began to process the FOIA/PA requests (which they began to do less than 48 hours after Judge Saris' ruling); and (3) supposedly mistyping Plaintiff's email address. In order for the "government misconduct" exception to apply, Plaintiff need only show that misconduct potentially *may* have occurred. As a matter of law, Plaintiff is not required to make any showing of *actual* misconduct in order to invoke this exception.

**IV.    SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE IS A GENUINE DISPUTE OF MATERIAL FACT EXISTS REGARDING RECORDS WHICH ARE PURPORTEDLY SUBJECT TO ATTORNEY-CLIENT PRIVILEGE.**

To the extent that Defendants invoke the attorney-client privilege under FOIA Exemption 5, many of the emails between USAO employees and coworkers are *not* subject to the attorney-client privilege. Consequently, summary judgment should be denied because Defendants have erroneously invoked both: (1) the attorney-client privilege; and (2) the attorney work-product doctrine for numerous email communications which cannot possibly be covered by either of the foregoing.

It is well-established that not every communication between an attorney and a client—government or otherwise—is made for the purpose of securing legal advice or services. Indeed, **"consultation with one admitted to the bar but not in that other person's role as a lawyer is *not* protected"** by the attorney-client privilege. (Emphasis supplied) <u>In re Lindsey</u>, 148 F.3d 1100, 1106 (D.C. Cir. 1998) (internal quotation omitted). Hence, a government attorney's **"advice on political, strategic, or policy issues, valuable as it may [be], would not be shielded from disclosure by the attorney-client privilege."** (Emphasis supplied) <u>id.</u>; <u>Pub. Citizen, Inc. v. United States Dep't of Educ.</u>, 388 F. Supp. 3d 29 (D.D.C. 2019).

*Inter alia*, as expressly stated in the <u>Vaughn</u> index, Defendant DOJ has even gone as far as labeling emails between Ms. Lehr and Miami USAO Civil Chief Wendy Jacobus—a person who was *not* Ms. Lehr's attorney in any capacity whatsoever—as being subject to "attorney-client privilege[.]" <u>See, e.g.</u>, D.E. 28-2, p. 26. This was error. Indeed, advice on "political, strategic, or policy issues" are *not* shielded by the attorney-client privilege. Similarly, the emails amongst Miami USAO employees in the Asset Forfeiture Division were obviously not attorney-client

communications. Naturally, Ms. Lehr did not hire any of her coworkers in that particular Division due to the fact that the RICO actions against her have absolutely nothing to do with asset forfeiture.

## V.   SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE A GENUINE DISPUTE OF MATERIAL FACT EXISTS REGARDING RECORDS WHICH ARE PURPORTEDLY PRIVILEGED UNDER THE ATTORNEY WORK-PRODUCT DOCTRINE.

With respect to the responsive FOIA/PA records that are supposedly attorney "work-product," Defendants' own affidavits and Vaughn index indicate otherwise. It is black-letter law that, in a FOIA context, **the work-product doctrine *only* protects documents that were "prepared in anticipation of litigation**." (Emphasis supplied) Judicial Watch, Inc. v. Dep't of Justice, 432 F.3d 366, 369 (D.C. Cir. 2005); see Liounis v. Krebs, 2019 U.S. App. LEXIS 37966, at *2 (D.C. Cir. Dec. 19, 2019).[10]

In evaluating whether material was prepared in anticipation of litigation, courts have adopted a "because of" test. Equal Emp't Opportunity Comm'n v. Lutheran Soc. Servs., 186 F.3d 959, 968 (D.C. Cir. 1999). "This inquiry encompasses two related but distinct concepts—one a question of timing and the other a question of intent." Animal Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin., 370 F. Supp. 3d 116, 135 (D.D.C. 2019) (citing U.S. ex rel. Fago v. M & T Mortg. Corp., 242 F.R.D. 16, 18 (D.D.C. 2007)).

By way of example, memoranda discussing "interactions with Plaintiff" which were drafted by other Miami employees such as AUSA Adrienne Rosen [D.E. 28-2, p. 65] cannot possibly be considered "attorney work-product" for the simple reason that Ms. Rosen is not a party to the Moreno litigation. The mere fact that she possesses a law degree does not mean that each and every writing constitutes attorney work-product—particularly here, where Ms. Rosen is not involved in the Moreno litigation in any capacity whatsoever.

Perhaps more importantly, many of the responsive FOIA/PA records are emails which were written in the spring of 2018—*i.e.*, long before the first Moreno action was filed in November 2018. What is more, Plaintiff had not sent any demand letter at that particular point in time. In

---

[10] Courts have interpreted "litigation" to mean a specific proceeding—not a general risk that one might one day be sued. Of course, "if the agency were allowed 'to withhold any document prepared by any person in the Government with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated.'" Senate of the Commonwealth of Puerto Rico v. DOJ, 823 F.2d 574, 586-87 (D.C. Cir. 1987) (quoting Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 865 (D.C. Cir. 1980)).

sum, there was nothing that would have put any Miami USAO or Miami SEC employee on notice of imminent litigation. Under such circumstances, the "timing" prong of the two-part "because of" test for work-product has not been satisfied.

**VI.    SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE DEFENDANTS' CONCLUSORY STATEMENTS REGARDING SEGREGABILITY PROVIDE NO SPECIFIC INFORMATION THAT WOULD ALLOW THIS COURT TO CONDUCT ANY MEANINGFUL EVALUATION OF THE DEFENDANTS' FAILURE TO SEGREGATE NON-EXEMPT PORTIONS OF THE FOIA/PA RECORDS.**

Even assuming *arguendo* that Defendants adequately (and timely) identified all responsive records and established that they contain material subject to Exemption 5—and they have not— that would not end the matter, because Defendants have *not* shown that these documents contained zero factual material which would potentially be non-exempt, and which could have been segregated (and then disclosed). See Mink, 410 U.S. at 91. Thus, there is currently a genuine dispute as to whether Defendants are using Exemption 5 to withhold entire documents that should be fully or partially released.

Because Defendants' Vaughn index is so vague as to "make it effectively impossible for the court to conduct de novo review of the applicability of FOIA exemptions," it is "necessary" for the Court to conduct *in camera* review of the fully and partially withheld documents. Associated Press v. DOJ, 549 F.3d 62, 67 (2d Cir. 2008). The Court must therefore deny summary judgment vis-à-vis the appropriateness, *vel non*, of Defendants' withholdings, and order Defendants to submit those documents in unredacted form for *in camera* review.

**VII.   SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE DEFENDANTS' TWO (2) YEAR DELAY IN RESPONDING TO PLAINTIFF'S FOIA/PA REQUESTS IS ACTIONABLE.**

FOIA/PA requesters such as Plaintiff cannot be made to wait two (2) years for a government agency to finally *begin* to conduct searches for responsive records. *A fortiori*, persons such as Plaintiff should not be required to file a lawsuit in federal court in order to motivate the defendant agency to finally begin disclosing responsive records—nor should a federal lawsuit be necessary to motivate federal agencies to simply comply with their legal obligations under both the FOIA and the PA.

Here, the timeline of events is not disputed by the Parties: Plaintiff submitted FOIA/PA requests to Defendants on **October 14, 2018**, and Defendants waited until 48 hours after Judge Saris' **January 6, 2020** ruling on the Rule 12 motion to dismiss to finally *begin* conducting their FOIA/PA searches. Not only do such actions constitute an unlawful obstruction of justice with respect to the <u>Moreno</u> action, and not only have Defendants deprived Plaintiff of his substantive due process rights therein, Defendants' acts and omissions, collectively, are also actionable under both the FOIA and PA.

## VIII.   SUMMARY JUDGMENT MUST BE DENIED AS TO THE SEPARATE PRIVACY ACT CLAIM, AS THERE ARE NO FACTS OF RECORD THAT COULD POTENTIALLY ALLOW THIS COURT TO CREDIT DEFENDANTS' FACTUALLY-UNSUPPORTED SPECULATION THAT A "CRIMINAL INVESTIGATION" OCCURRED; NEITHER THE MIAMI USAO NOR THE MIAMI SEC HAS JURISDICTION OVER INTERNAL INVESTIGATIONS, AND NEITHER OFFICE IS TASKED WITH PERFORMING <u>ANY</u> "CRIMINAL INVESTIGATIONS."

Rather than make the required showing for PA exemptions such as the "criminal investigation" exemption under 5 U.S.C. § 552a(j)(2),[11] Defendants rely on a combination of threadbare descriptions, conclusory statements, and irrelevant deflections designed to mislead the Court. This includes, without limitation, Defendants' vague allusion to an unspecified "criminal investigation" [D.E. 28-2 ¶ 18][12]—a *bona fide* "criminal investigation" that Defendants' now, for the first time, incredulously allege took place despite their apparent inability to: (1) provide the name of the person being investigated, and for what alleged crime(s); and (2) provide a single docket number, or anything else in support of Defendants' incredulous claim that a veritable "criminal investigation" was performed by the Miami USAO and/or Miami SEC (*i.e.*, as opposed

---

[11] 5 U.S.C. § 552a(j)(2) provides for a "criminal investigation" PA exemption in the following situations: "(B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision." <u>Id.</u>

[12] By way of example only, in the ongoing RICO action now pending in the Southern District of Florida, none of the individually-named DOJ and SEC defendants therein have ever mentioned and/or alluded to any such "criminal investigation" being conducted in either the Miami USAO or the Miami SEC. Accordingly, under such circumstances, Defendants' unsupported representation to this Court that a "criminal investigation" took place in the Miami, Florida, offices of the USAO and SEC is rank implausible and may be swiftly rejected.

to the FBI, OIG, OPR, or any agency and/or division that is authorized to conduct criminal investigations).

In reality, the only "criminal investigation" relating to this matter is the criminal investigation of former AUSA Alison W. Lehr of the Miami USAO. Aff. of N. Caplan, **Ex. 8**; Aff. of Pl. J. Mullane, D.E. 45 ¶¶ 41-42. Indeed, when Plaintiff's Florida process server attempted to effectuate service of the complaint and summons in the re-filed RICO action, Ms. Lehr proceeded to assault the female process server and her elderly father. Id. Ms. Lehr thereupon unlawfully detained Plaintiff's process server—refusing to allow her to leave the premises—which resulted in a 911 call and a criminal complaint against Ms. Lehr. Id. Such conduct by a Miami USAO employee is not only disturbing, it directly relates to the instant matter given that Defendant Lehr herself personally participated in Defendant DOJ's "search" for responsive FOIA/PA records.[13]

In any event, Defendants' "criminal investigation" PA exemption argument fails for another reason: neither the Miami USAO nor the Miami SEC has the lawful authority and/or jurisdiction needed to conduct internal investigations. As this Court is aware, only the Office of Professional Responsibility ("OPR") or the Office or the Office of the Inspector General ("OIG") in DOJ Main Justice in Washington, DC, have jurisdiction over such matters. Similarly, within the SEC, only the SEC's OIG in Washington, DC, has the authority and jurisdiction needed to conduct internal investigations. Holz v. Westphal, 217 F. Supp. 2d 50, 54-56 (D.D.C. 2002) **(finding subsection (j)(2) of the Privacy Act inapplicable to report of investigation even though report was maintained in exempt system of records, because the agency's own operating regulations provided that investigation underlying report was never within agency's purview, and therefore could not possibly have been compiled for criminal law enforcement purposes).**

Simply stated, unless the Miami USAO and Miami SEC have both become part of the FBI overnight, or unless OIG and/or OPR have recently relocated from Washington to Miami, there cannot possibly have been any "criminal investigation" within the meaning of 5 U.S.C. §

---

[13] As confirmed by the sworn declaration of Francys Marcenaros [D.E. 28-1 p. 2 ¶ 7], Ms. Marcenaros did not personally conduct any search for responsive FOIA/PA records. Instead, Ms. Marcenaros "requested the AUSAs to contact me if they had any records within their custody and control that were responsive to the [FOIA/PA] request[.]" Id. This is problematic because Alison W. Lehr—who was an AUSA in the Miami USAO office at the time in question, *i.e.*, prior to being terminated—*personally* participated in this "search." Further, given that she was an individually-named defendant in Mullane, et al. v. Moreno, et al., 1:18-CV-12618-PBS (D. Mass. Dec. 20, 2018), Lehr had actual knowledge of the fact that, were she to produce responsive records pursuant to Plaintiff's FOIA/PA requests, such disclosure would obviously not be in her personal legal interests and would likely expose her to further liability in Moreno, *supra* (which did, in fact, occur).

552a(j)(2). In the case at bar, because Defendants have unlawfully withheld *all* PA records, and because there is no applicable PA exemption here, Plaintiff is entitled to an award of actual damages to be determined at the time of trial pursuant to the plain language of the Privacy Act itself, 5 U.S.C. § 552a. Cf. Aff. of Pl. J. Mullane, D.E. 45 ¶¶ 67-72 (relating to the quantifiable actual damages incurred as a result of Defendants' FOIA and PA violations).

**IX.   IN THE ALTERNATIVE, PLAINTIFF HEREBY CROSS-MOVES FOR AN ORDER HOLDING DEFENDANTS' SUMMARY JUDGMENT MOTION IN ABEYANCE AND ALLOWING: (1) DISCOVERY LIMITED TO THE "SCOPE OF SEARCH" ISSUE; (2) *IN CAMERA* REVIEW; AND (3) AN ORDER COMPELLING DEFENDANTS TO PRODUCE ADDITIONAL RESPONSIVE FOIA/PA RECORDS.**

Fed. R. Civ. P. 56(d) provides for targeted discovery where the government agency has provided an insufficient basis for the assertions it makes in support of its motion for summary judgment. Under Rule 56(d) (formerly Rule 56(f)), the Court is required to grant the nonmoving party "the opportunity to discover information that is essential to his opposition." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986); Pulliam v. EPA, 292 F. Supp. 3d 255, 261 n.5 (D.D.C. 2018) ("Typically, a Rule 56(d) request is granted 'almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence'" (internal quotation omitted)).

Where, as here, the agencies' declarations leave Plaintiff and this Court in the dark about key fact-bound issues—*e.g.*, the adequacy, *vel non*, of Defendants' respective "searches"—limited discovery is required. See Trebor Sportswear Co. v. The Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986) ("The nonmoving party should not be 'railroaded' into his offer of proof in opposition to summary judgment"). Plaintiff should be afforded an opportunity to discover information relating to Defendants' assertions about the purported adequacy of their searches, and this Court should have the benefit of adversarial briefing based on a meaningful factual record. Thus, targeted discovery is indispensable and unavoidable in light of the particular circumstances of this case.

Indeed, the Court cannot "cut off discovery" where the defendant agency's response to FOIA/PA requests raises serious doubts as to the completeness of the agency's search, where the agency's response is incomplete, or where the agency's response is for some other reason

unsatisfactory. Exxon Corp. v. FTC, 466 F. Supp. 1088, 1094 (D.D.C. 1978). District courts routinely grant this type of search-focused discovery in analogous circumstances. See, e.g., Eberg v. Dep't of Def., 193 F. Supp. 3d 95, 119 (D. Conn. 2016) (permitting depositions in a FOIA action wherein the agency's declarations provided "no explanation as to why [its] office searched certain available databases and not others").

In addition to the foregoing, Plaintiff hereby requests *in camera* review limited to the records for which Defendants' have invoked FOIA Exemption 5. See, e.g., Protect Democracy Project, Inc. v. United States NSA, 443 F. Supp. 3d 1 (D.D.C. Mar. 6, 2020) (ordering *in camera* review in a FOIA action wherein the agency invoked Exemption 5). It is respectfully submitted that *in camera* review is indispensable in this matter, particularly with respect to the Court's determination of the applicability of the "government misconduct" exception to Exemption 5's "deliberative process" privilege. Further, with regard to the specific FOIA/PA records which are purportedly subject to the attorney-client privilege, *in camera* review would permit this Court to determine: (1) whether the records in question are, in fact, communications made in an attorney-client context (or constitute work-product); and if they were, (2) whether the "crime-fraud exception" applies to those communications (thereby vitiating and negating the attorney-client privilege and requiring disclosure to Plaintiff).

Finally, Plaintiff further requests an order compelling Defendants to produce additional responsive records. Specifically, Plaintiff requests an order requiring Defendants to perform a basic search of responsive emails in the Miami USAO and Miami SEC using the search terms "Jonathan Mullane" and "Mullane"—something which Plaintiff had reasonably expected Defendants to do when he sent them his FOIA/PA requests in October 2018. As previously explained, *ante*, Defendants' searches were, and remain, utterly incomplete. *Inter alia*, Defendant DOJ inexplicably and improperly limited its search to emails to or from Judge Moreno (and apparently still could not locate a single one), while Defendant SEC's Washington, DC, office is apparently still waiting for the Miami SEC to perform their own search for responsive records.[14] In FOIA actions in the First Circuit, courts routinely enter orders compelling the defendant agency to produce additional responsive FOIA/PA records. See, e.g., Church of Scientology v. United States Dep't of Justice, 30 F.3d 224, 240 (1st Cir. 1994) (**holding that, in FOIA actions, district**

---

[14] See, e.g., Aff. of SEC employee Ray McInerney [D.E. 28-3, ¶ 6].

courts can order a combination of the following: (1) limited discovery; (2) *in camera* review; and (3) an order requiring the release of additional documents); 5 U.S.C. § 552(a)(4)(B).

## CONCLUSION

**WHEREFORE,** Plaintiff respectfully prays that this Honorable Court deny Defendants' motion for summary judgment [D.E. 27-28]. In the alternative, Plaintiff respectfully requests that the Court hold the summary judgment motion in abeyance and grant the following relief: (1) discovery limited to the scope of the DOJ's and SEC's respective searches; (2) *in camera* review; and (3) an order requiring the release of additional documents.

At Cambridge, Massachusetts,
This 25th Day of December, 2020

Respectfully submitted,

/s/ E. Peter Mullane, Esq.
E. Peter Mullane, Esq.
BBO #360000
MULLANE, MICHEL & McINNES LLP
6 Bennett Street
Cambridge, MA 02138
Tel.: (617) 661-9000
peter@3mlaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this filing submitted via the CM/ECF system shall be transmitted electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF"), and that paper copies shall be mailed via first class mail, postage prepaid, to those indicated as non-registered participants on the date of filing.

DATED:       December 25, 2020

/s/ E. Peter Mullane, Esq.
E. Peter Mullane, Esq.

21