# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JONATHAN MULLANE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 19-cv-12379-DJC |
| UNITED STATES DEPARTMENT OF JUSTICE and UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                    **March 19, 2021**

## I.      Introduction

Plaintiff Jonathan Mullane ("Mullane") brings this action under the Privacy Act ("Privacy Act"), 5 U.S.C. § 552a, (Count I) and Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, (Count II), against the United States Department of Justice ("DOJ") and the United States Securities and Exchange Commission ("SEC") (collectively, the "Agencies"). Mullane claims that the Agencies failed to conduct adequate searches in response to his FOIA/Privacy Act requests and improperly redacted or withheld responsive documents. D. 1. The Agencies now have moved for summary judgment. D. 27. Mullane moved to amend his complaint, D. 53, and to strike submissions in support of the Agencies' reply to his opposition, D. 58. For the reasons discussed below, the Agencies' motion for summary judgment is ALLOWED in part and DENIED in part, and Mullane's motions to strike and amend are DENIED.

1

## II.    Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law."  Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).  The movant bears the burden of demonstrating the absence of a genuine issue of material fact.  Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986).  If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial.  Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010).  The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

Summary judgment is warranted to an agency in a FOIA case "when the agency proves that it has fully discharged its obligations under the FOIA after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester."  Crooker v. Tax Div. of U.S. Dep't of Just., No. 94–30129–MAP, 1995 WL 783236, at *7 (D. Mass. Nov. 17, 1995) (internal quotations omitted) (citing Gordon v. Thornberg, 790 F. Supp. 374, 378 (D.R.I. 1992)).  An agency discharges its burden when it "proves that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the FOIA's inspection requirements."  Crooker, 1995 WL 783236, at *7 (internal quotations omitted) (quoting Gillen v. I.R.S., 980 F.2d 819, 821 (1st Cir. 1992)).  Summary judgment in FOIA cases "may be granted solely on the basis of agency affidavits."  Crooker, 1995 WL 783236, at

*10 (citing <u>Gardels v. C.I.A.</u>, 689 F.2d 1100, 1104–05 (D.C. Cir. 1982); <u>Hemenway v. Hughes</u>, 601 F. Supp. 1002, 1004 (D.D.C. 1985)).

### III.   Factual Background

The following facts are drawn from the Agencies' submissions of material facts and documents referenced therein, D. 28, and Mullane's response to same, D. 46, and are undisputed unless otherwise noted.[1]

#### A.   DOJ Request

On October 14, 2018, Mullane submitted a FOIA/Privacy Act request to DOJ, which the Executive Office of the United States Attorney ("EOUSA") received on October 23, 2018.  D. 28 ¶¶ 1–2, 4, 9–10.  Mullane requested records from the U.S. Attorney's Office for the Southern District of Florida ("USAO-SDFL"), where he was a law student intern, seeking "any and all records and information in the possession of the United States Department of Justice pertaining to Jonathan Mullane . . . [and] any and all information in connection with [Mullane's] employment at the United States Attorney's Office in Miami, Florida[,] between the months of January 2018 and April 2018. This includes, but is in no way limited to, [Mullane's] employee and/or personnel

---

[1] Mullane denies much of the Agencies' statement of undisputed material fact, particularly the timelines and descriptions of the Agencies' searches, D. 46 at 2–3, 10, but in many instances provides no factual basis for doing so or denies a factual assertion for lack of personal knowledge. <u>See, e.g.</u>, D. 46 ¶¶ 4–6, 13–16, 24–30, 37–38, 40–45.  A statement opposing the moving party's submission must contain "references to affidavits, depositions and other documentation," otherwise it does not comply with the Local Rules and a court may, in its discretion, deem these facts admitted.  <u>See Butters v. Wells Fargo Advisors</u>, 10-cv-10072-MLW, 2012 WL 5959986, at *1–2 (D. Mass. Nov. 27, 2012) (quoting Local Rule 56.1).  Mullane also cannot "create a genuine issue of fact by denying statements, which the moving party contends are undisputed and supported by sufficient evidence, on the basis that he lacks knowledge and information to admit or deny the statement." <u>Chapman v. Finnegan</u>, 950 F. Supp. 2d 285, 291 n.3 (D. Mass. 2013).  To the extent the Agencies' statements summarize sworn affidavits that describe their search processes, and Mullane has denied same without a factual basis or for lack of personal knowledge, the Court considers these statements admitted.

file." Id. ¶¶ 9–10.  On October 31, 2018, EOUSA sent Mullane a letter acknowledging receipt of his request, assigned it a control number, and informed Mullane that his request was determined to be "complex" and would "necessarily take longer" than ordinary requests.  Id. ¶ 11; D. 28-2 at 85.  That same day, EOUSA asked USAO-SDFL to conduct a search of material responsive to Mullane's request.  D. 28 ¶¶ 11–12.  On January 8, 2020, USAO-SDFL sent an office-wide email to all personnel regarding Mullane's request and asked them to inform the FOIA coordinator if they had records "regarding Jonathan Mullane, including any/all records in the possession of the USAO-Miami, but not limited to his employment or personnel records, between the months of January 2018 and April 2018." Id. ¶ 3.  USAO-SDFL collected responsive records and uploaded them on January 21, 2020, to EOUSA's FOIA system for review by EOUSA staff.  Id. ¶¶ 5, 13.

EOUSA made several productions of responsive documents to Mullane.  On April 29, 2020, EOUSA emailed Mullane 645 pages unredacted and twenty pages redacted, citing FOIA exemption 5.  D. 28 ¶ 14–15, 17–18.[2]  On June 2, 2020, EOUSA emailed Mullane 3,246 pages unredacted, 350 pages redacted, and withholding 88 pages, citing FOIA Exemptions 5 and 6.  Id. ¶ 19.  On June 10, 2020, EOUSA emailed Mullane six pages unredacted and seven pages redacted, citing FOIA Exemption 5.  Id. ¶ 21.  In total, EOUSA transmitted 3,897 pages unredacted, 377 pages redacted and withheld 88 pages.  Id.

---

[2] EOUSA sent response letters in February and March referencing their production of batches of these documents to Mullane via email; however, EOUSA claims it incorrectly entered Mullane's email address such that the first two productions were never received.  Mullane disputes this account.  D. 28 ¶ 16; D. 28-2 at 4, 87, 89; D. 46 at 4.  EOUSA re-sent Mullane the first two batches of documents with a subsequent production, D. 28 ¶¶ 14–15, 17, and the parties do not dispute that Mullane received these documents with the subsequent production on April 29, 2020.  D. 46 at 5.

B.      **SEC Request**

On October 14, 2018, Mullane submitted an expedited FOIA/Privacy Act request to the SEC's FOIA Office in Washington, D.C., for "any and all records and information in the possession of the United States Securities and Exchange Commission . . . pertaining to Jonathan Mullane" and "any and all information in connection with [his] offer of employment for an internship in the SEC's Miami, Florida office, together with the subsequent rescission thereof." Id. ¶ 46.  The SEC denied Mullane's request to expedite, Mullane appealed that denial and the SEC's Office of the General Counsel denied the appeal.  Id. ¶¶ 47–48.

The SEC searched for responsive documents in its Office of Human Resources shared drive, including Mullane's internship application, and located 81 pages of documents.  Id. ¶ 49. The SEC initially produced twenty-seven pages unredacted, six pages redacted and withheld forty-eight pages.  Id. ¶¶ 50–52.  The withheld pages were eventually produced in redacted form and the only redactions were of personal information pursuant to FOIA Exemption 6.  Id. ¶ 51.  SEC's Miami Office, where Mullane was set to intern, searched for responsive emails, and identified 241 pages, which were redacted only for personal information pursuant to FOIA Exemption 6.  D. 57-3 at 2.

IV.      **Procedural History**

Mullane initiated this case on November 19, 2019, alleging that the Agencies failed to conduct an adequate search and improperly withheld documents under FOIA and the Privacy Act. D. 1.  Mullane moved to amend his complaint, D. 23, which the Court denied, D. 35.  The Agencies have now moved for summary judgment.  D. 27.  Mullane again has moved to amend his complaint, D. 53, and to strike supplemental affidavits and a statement of facts submitted with the

Agencies' reply to his opposition.  D. 58.  The Court heard the parties on the pending motions and took the matters under advisement.  D. 61.

## V.     Discussion

### A.     Motion for Summary Judgment

#### 1.     *Adequacy of Search*

##### a)     Legal Standard

In FOIA and Privacy Act cases, an agency must establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  Oleskey v. U.S. Dep't of Def., 658 F. Supp. 2d 288, 294 (D. Mass. 2009) (quoting Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990)); Chambers v. U.S. Dep't of Interior, 568 F.3d 998, 1003, 1005 (D.C. Cir. 2009) (applying FOIA adequacy of search standard to Privacy Act).  "The crucial issue is not whether relevant documents might exist, but whether the agency's search was reasonably calculated to discover the requested documents."  Maynard v. C.I.A., 986 F.2d 547, 559 (1st Cir. 1993) (quoting Safecard Servs., Inc. v. S.E.C., 926 F.2d 1197, 1201 (D.C. Cir. 1991)).  Even if a plaintiff is correct that additional responsive records exist, an agency's failure to locate them "does not *ipso facto* render its search inadequate."  Oleskey, 658 F. Supp. 2d at 298.  A "failure to turn up [a requested] document does not alone render the [agency's] search inadequate; there is no requirement that an agency produce all responsive documents."  Nation Magazine, Washington Bureau v. U.S. Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  The focus of the adequacy inquiry is thus not on the results, but rather on the search itself.  Oleskey, 658 F. Supp. 2d at 298.

To demonstrate that an agency conducted an adequate search, the agency "may rely upon affidavits provided they are relatively detailed and nonconclusory, and are submitted by

responsible agency officials in good faith." Maynard, 986 F.2d at 559. Sufficient affidavits may include "the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." Oglesby, 920 F.2d at 68 (citation omitted). Additional search details may include "the structure of the agency's file system, the scope of the search performed, and the method by which it was conducted." Sephton v. F.B.I., 365 F. Supp. 2d 91, 97 (D. Mass. 2005), aff'd, 442 F.3d 27 (1st Cir. 2006)).

Once an agency has produced such showing, a court must afford the government a presumption of good faith, and "the burden shifts to the requester to 'provide countervailing evidence as to the adequacy of the agency's search.'" Oleskey, 658 F. Supp. 2d at 294–95 (quoting Iturralde v. Comptroller of Currency, 315 F.3d 311, 313–14 (D.C. Cir. 2003)). If the requester introduces evidence that "raises substantial doubt, particularly in view of well defined requests and positive indications of overlooked materials, summary judgment is inappropriate." Iturralde, 315 F.3d at 314 (citations and quotation omitted).

b)  Agencies' Search

The DOJ relies upon the affidavits of Francys Marcenaros ("Marcenaros"), the FOIA paralegal specialist for USAO-SDFL, who conducted the search pursuant to Mullane's request. Marcenaros' search consisted of (1) "sen[ding] an officewide email to all [USAO-SDFL] personnel" asking if they had records "regarding Jonathan Mullane, including any/all records in the possession of the USAO-Miami, but not limited to his employment or personnel records, between the months of January 2018 and April 2018"; (2) emailing the attorneys who run the internship program, the human resources department and the leadership of the Asset Forfeiture Division (where Mullane was assigned as an intern) requesting any responsive records; and (3) requesting responsive emails between the former U.S. Attorney Benjamin Greenberg

("Greenberg") and Judge Federico Moreno ("Judge Moreno") pertaining to Mullane.  D. 28-1 ¶¶ 6–7; D. 57-1 ¶ 5.  Marcenaros determined the scope of the search, "any records including the term 'Mullane,'" based on this outreach and the fact that Mullane was a student intern at USAO-SDFL for a few months, where Mullane had contact with a "very limited number of individuals," and she was further advised that responsive records would likely be found in emails.  D. 57-1 ¶¶ 5, 7–8.  Common terms like "law clerk" and "intern," as well as the term "Moreno" (who was then-Chief Judge in the Southern District of Florida) were not searched because Marcenaros determined "[s]earches for these extremely common terms would have yielded an overwhelming number of hits . . . in light of [Mullane's] targeted request for documents concerning himself."  Id. ¶ 6.  Marcenaros also "searched for and found a file in [the] Human Resources Department associated" with Mullane's internship.  Id. ¶ 10.

The Marcenaros affidavit specifies the type of search performed, a request for records from the entire office with targeted follow-up emails sent to those who worked closely or interacted with Mullane, as well as the search terms and other parameters used, any record "regarding Jonathan Mullane" during the period of his internship.  D. 28-1 ¶¶ 6–7; D. 57-1 ¶ 5.  Marcenaros also states, and the Court agrees given the nature of Mullane's limited contact with the office as an unpaid student intern, that her search "was reasonably calculated to uncover and identify all records potentially responsive to" Mullane's request.  D. 28-1 ¶ 12; D. 57-1 ¶ 7; see Oglesby, 920 F.2d at 68.  With respect to communications between Judge Moreno and USAO-SDFL mentioning Mullane, particularly between Greenberg and Judge Moreno, Marcenaros states that such records would have been covered by the initial search conducted by all personnel using the term "Mullane" as well as an additional search of Greenberg's records (who no longer worked at USAO-SDFL). D. 57-1 ¶ 8.

The SEC relies upon the affidavits of Ray McInerney ("McInerney"), a FOIA Officer at the SEC.  D. 28-3 ¶ 1; D. 57-3 ¶ 1.  SEC's search consisted of SEC's Office of Human Resources locating documents using the term "Mullane" in a shared folder that "contains all documents, including emails, with any substantive information relating to an application, other than the initial application."  D. 57-3 ¶ 3; D. 28-3 ¶ 6.  The SEC subsequently searched the emails of custodians in the Miami regional office of the SEC likely to have had contact with Mullane and used the search term "Mullane." D. 57-3 ¶ 4.

Like the Marcenaros affidavit, the McInerney affidavit specifies the search terms, "Mullane," and locations where the searches occurred, email custodians likely to have communicated with Mullane and the shared folder containing all internship applicant materials. D. 28-3 ¶ 6; D. 57-3 ¶ 3.  Given Mullane's more limited contact with the SEC—he applied for an internship, was accepted into that program, and then had his offer rescinded—the SEC search appears reasonably calculated to capture such relevant documents when it searched the folder that contains all such application information and correspondence beyond the initial application (which Mullane would have submitted himself), as well as the emails of those SEC employees Mullane interacted with.

Accordingly, the Court finds the Marcenaros and McInerney affidavits provide sufficient, non-conclusory detail about their searches, which were reasonably calculated to locate responsive documents, and therefore applies a presumption of good faith to DOJ and SEC's search.  See Oleskey, 658 F. Supp. 2d at 295.

Mullane argues that the "good faith" presumption cannot apply here, asserting that "DOJ deliberately and knowingly delayed the disclosure of FOIA/[Privacy Act] records for over an entire year" to coincide with and ensure dismissal of Mullane's civil action in another case in this District,

Mullane v. Breaking Media, No. 18-cv-12618-PBS ("Breaking Media"), where he named as defendants Judge Moreno and his internship supervisor Alison Lehr ("Lehr").   D. 44 at 8. Rebutting the good faith presumption requires more than "purely speculative claims about the existence and discoverability of other documents."   Maynard, 986 F.2d at 560 (quoting Ground Saucer Watch, Inc. v. C.I.A., 692 F.2d 770, 771 (D.C. Cir. 1981) (stating that FOIA requester "must point to evidence sufficient to put the Agency's good faith into doubt")).

Mullane asserts that DOJ has "successfully perpetrated a fraud" in Breaking Media, as well as this matter, and "knowingly committed an obstruction of justice" by withholding responsive documents that would lead to a different outcome in that case. D. 44 at 8, 12.  His only basis is conjecture about the temporal coincidence of the dismissal in Breaking Media and when the USAO-SDFL began its search for responsive documents. Id. at 8, 12, 17.  But the claims against Judge Moreno and Lehr were dismissed on September 16, 2019, nearly four months before the USAO-SDFL processing began on January 8, 2020.  Breaking Media, No. 18-cv-12618-PBS, D. 134 (D. Mass. Sept. 16, 2019).  The remaining claims dismissed in January 2020 were only against Breaking Media, Inc. and a journalist, for defamation.  See Mullane v. Breaking Media, Inc., 433 F. Supp. 3d 102, 106 (D. Mass. 2020).  Moreover, the judge in the other session dismissed that case for lack of personal jurisdiction, as Judge Moreno and Lehr reside in Florida, and Mullane's internship took place there too.  Breaking Media, D. 134.  These are publicly known facts, and Mullane fails to explain how these publicly known facts turn upon internal documents that were withheld, how the disposition of Breaking Media could have differed based on same, or how such sequence of events reflects bad faith on the part of the Agencies.  To the contrary, Marcenaros explains that the processing delay occurred because she was the sole staff member at USAO-SDFL processing FOIA requests, with USAO-SDFL receiving over 80 FOIA requests annually.  D. 57-

1 ¶ 11; see Nulankeyutmonen Nkihtaqmikon v. Bureau of Indian Affs., 493 F. Supp. 2d 91, 116 (D. Me. 2007) (finding two-year delay in producing responsive documents due to "inefficiencies, rather than a practice of unjustified delay," did not defeat conclusion that search was adequate); Wheeler v. U.S. Dep't of Just., 462 F. Supp. 2d 48, 54 (D.D.C. 2006) (finding occurrence of one-year delay in processing FOIA request does not "impugn[] the adequacy or reasonableness" of the search).

Mullane also asserts that the affidavits here are deficient in that they "fail to provide specific facts about the scope and methods of [the searches] . . . and the specific search terms they used." D. 44 at 4. But both affidavits provide the search terms and methods used for the search.[3] Mullane next asserts that DOJ "failed to search in locations where responsive . . . records were likely to be located [and] failed to use any search terms that would likely result in discovery of other responsive records." Id. The Marcenaros affidavit similarly contradicts this assertion, and Mullane has not brought forward any "countervailing evidence" to suggest that DOJ's search was improperly limited in scope or location. See Oleskey, 658 F. Supp. 2d at 294–95.

Mullane next asserts that he has "identified numerous omitted documents that [DOJ] impermissibly overlooked," D. 44 at 5–6, but in support of this contention provides the Court with

---

[3] The Agencies also have submitted supplemental affidavits further specifying their search terms and methodologies. D. 57-1; D. 57-3. Mullane moved to strike these affidavits on the basis that supporting affidavits (and supplemental statement of facts, D. 57) cannot be filed with a reply brief. D. 58. There is no such prohibition in the Federal or Local Rules. The decision to consider a supplemental affidavit is within the discretion of the Court. See McMahon v. Digital Equip. Corp., 162 F.3d 28, 34 & n.6 (1st Cir. 1998) (ruling that district court did not abuse discretion accepting supplemental affidavits to cure alleged deficiencies in prior supporting documentation). Mullane's opposition asserts that the Agencies' affidavits are deficient, therefore supplementing them here is appropriate. A supplemental affidavit is also apt where, as here, "the parties have continued to raise new theories and defenses." See New Haven Sav. Bank v. Follins, 431 F. Supp. 2d 183, 191 (D. Mass. 2006). Mullane's opposition made some additional arguments about the adequacy and scope of the search. For these reasons, the Court DENIES the motion to strike. D. 58.

only two examples:  one where an email attachment was produced but not the underlying email and another where an email references an attachment that was not produced.  Id. at 6, 9.  Mullane also argues that the search for responsive documents should not have been limited to the locations listed in the Marcenaros affidavit (i.e., requesting all personnel at USAO-SDFL search for documents in their records), which the court gathers means the personal email of Lehr, and phone records between Greenberg and Judge Moreno.  For this point, Mullane relies upon the supposition that Lehr used her personal email to "evade FOIA/[Privacy Act] requests," but points only to one entry in the DOJ's Vaughn index, describing emails produced to Mullane, where Lehr forwarded work emails to her personal email address.  Id. at 6; D. 45-1 at 14.  Mullane also points out that no documents between Greenberg and Judge Moreno were produced, which USAO-SDFL claims was because none were discovered, but Mullane contends is impossible given the nature of his ongoing litigation against both parties.  D. 44 at 6, 9–10.  For all these objections, Mullane's reliance on individual missing emails and documents, even if he were able to identify them, does not render a search inadequate as a matter of law.  Oleskey, 658 F. Supp. 2d at 298; Nation Magazine, Washington Bureau, 71 F.3d at 892 n.7.  Furthermore, Mullane's belief that certain documents must exist but have not been produced, D. 44 at 10, is not the standard for the Court's inquiry of whether the search was adequately tailored to the request and performed accordingly.  See Wilbur v. C.I.A., 355 F.3d 675, 678 (D.C. Cir. 2004) (citing Iturralde, 315 F.3d at 314) (concluding that "agency's failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for the requested records").

Finally, Mullane's argument that the SEC search was deficient because it did not include a description of the Miami regional office search is moot given the supplemental McInerney

affidavit which describes how individuals in Miami who had contact with Mullane searched their records for responsive emails and produced same.  D. 57-3.

Accordingly, the Court finds that DOJ and SEC conducted adequate searches in response to Mullane's requests.

### 2.   FOIA Exemptions

Under FOIA, "certain categories of materials are exempted from the general requirements of disclosure," but these exemptions "are to be construed narrowly, with any doubts resolved in favor of disclosure."  Am. Civ. Liberties Union of Mass., Inc. v. U.S. Immigr. & Customs Enf't, 448 F. Supp. 3d 27, 36 (D. Mass. 2020) (citing Moffat v. U.S. Dep't of Just., 716 F.3d 244, 250 (1st Cir. 2013)).  "The government bears the burden of proving that withheld materials fall within one of the statutory exemptions."  Id. (citing 5 U.S.C. § 552(a)(4)(B)).  To support the exemptions here, the Agencies rely on affidavits and a Vaughn index submitted to the Court in connection with its motion for summary judgment.  D. 28-2.

### a)   Exemption 5

FOIA's Exemption 5 aims to "facilitate[] government decision making by:  (1) assuring subordinates will feel free to provide uninhibited opinions, (2) protecting against premature disclosure of proposed government policies, and (3) preventing confusion among the public that may result from releasing various rationales for agency action."  New Hampshire Right to Life v. U.S. Dep't of Health & Hum. Servs., 778 F.3d 43, 52 (1st Cir. 2015).  The exemption thus protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency," and "incorporates doctrines that would limit the scope of discovery, including the attorney-client privilege, the work-product protection, and the deliberative-process privilege."  Stalcup v. C.I.A., No. 11-cv-11250-

FDS, 2013 WL 4784249, at *4 (D. Mass. Sept. 5, 2013), aff'd, 768 F.3d 65 (1st Cir. 2014) (quotations and citation omitted).  DOJ invokes Exemption 5 on these three bases and the Court addresses them in turn.

(1)  Attorney-Client Privilege

The attorney-client privilege "protects confidential communications made by a client to his attorney."  Maine v. U.S. Dep't of Interior, 298 F.3d 60, 70 (1st Cir. 2002) (citation omitted).  The party asserting the privilege must show "(1) that he was or sought to be a client of [the attorney]; (2) that [the attorney] in connection with the [document] acted as a lawyer; (3) that the [document] relates to facts communicated for the purpose of securing a legal opinion, legal services or assistance in legal proceedings; and (4) that the privilege has not been waived."  Id. (citations omitted).

These documents fall within the attorney-client privilege because in each instance, an attorney at DOJ, from whom Lehr sought and obtained representation, offered legal advice and assistance in legal proceedings, Mullane's civil lawsuit naming her as a defendant.  D. 28-2 at 24–28, 30, 35–36, 39, 42, 49–50, 56 (describing emails between Lehr and her counsel seeking legal advice related to her civil litigation with Mullane); Id. at 33, 45, 47–48, 51–53 (describing emails between Lehr and DOJ counsel regarding DOJ representing her in civil litigation with Mullane); see United States v. Jicarilla Apache Nation, 564 U.S. 162, 170 (2011) (explaining that "the Government may invoke the attorney-client privilege in civil litigation to protect confidential communications between Government officials and Government attorneys").

Mullane's primary objection is that emails between Lehr and USAO-SDFL Civil Chief Wendy Jacobus are not subject to the privilege because Jacobus was not Lehr's personal attorney (as opposed to Christopher Morgan or Jason Weida), rendering her advice "political, strategic, or

14

[on] policy issues." D. 44 at 14. DOJ's description of the emails contradicts Mullane's assertion as Jacobus was involved in discussing Mullane's civil litigation against Lehr in her capacity as an attorney at DOJ, from whom Lehr sought representation and legal advice. See D. 28-2 at 27.

Accordingly, DOJ properly invoked the attorney-client privilege.

(2)     Work-Product Protection

The work-product doctrine "protects from disclosure materials prepared by attorneys in anticipation of [or during] litigation." Maine, 298 F.3d at 66 (internal quotation marks omitted). Documents are "prepared for litigation and within the scope of the Rule" if, "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation." Id. at 68 (citations omitted). When a document is created for more than one purpose, it is still protected by the privilege if one of the reasons it was prepared was in anticipation of litigation. Id. "There is no requirement that a document . . . be written by an attorney to be protected," nor by an attorney who is party to the litigation at issue. Am. Civ. Liberties Union Found., Inc. v. U.S. Dep't of Educ., 320 F. Supp. 3d 270, 281 (D. Mass. 2018) (citing Church of Scientology Int'l v. U.S. Dep't of Just., 30 F.3d 224, 236 (1st Cir. 1994)). "Instead, [the Agencies] need only prove that the document was prepared under the direction of an attorney in contemplation of litigation." Id. (quoting Church of Scientology Int'l, 30 F.3d at 236). "An agency seeking to withhold a document in its entirety under this exemption must identify the litigation for which the document was created (either by name or through factual description) and explain why the work-product privilege applies to all portions of the document." Church of Scientology Int'l, 30 F.3d at 237.

Accordingly, Lehr's email circulating her division's Weekly Activity Report was properly redacted as work product as such document contained legal strategies, impressions and research

related to ongoing or future litigation by USAO-SDFL.  D. 28-2 at 22; see Martin v. Dep't of Just., 488 F.3d 446, 455 (D.C. Cir. 2007) (affirming internal agency memo that contained "legal analyses of potential claims available" to agency and set forth "facts integral to the legal analyses and discussions of investigation strategy" was properly withheld as attorney work product).

Next, draft memoranda of law, other filings, and emails discussing individual representation of Lehr were properly redacted as work-product because Mullane's lawsuit against them was ongoing and these documents were all prepared because of that ongoing litigation.[4]  D. 28-2 at 14, 24, 27–28, 32, 34–35, 49, 73.  Furthermore, a two-page memorandum drafted by AUSA Adrienne Rosen describing interactions with Mullane between January 23, 2019 and February 14, 2019 was properly withheld as Mullane's civil lawsuit against Lehr and other government defendants was ongoing during this period.  Id. at 65; see Diaz v. Devlin, 327 F.R.D. 26, 29 (D. Mass. 2018) (quoting Hickman v. Taylor, 329 U.S. 495, 510–11, (1947)) (explaining that "[p]rotected materials include an attorney's . . . 'mental impressions . . . reflected [in] memoranda'").

### (3)    Deliberative Process Privilege

As an initial matter, Mullane asserts that the deliberative process privilege cannot be invoked here because it is "overcome and defeated by the 'government misconduct' exception," where he alleges the Agencies delayed processing his FOIA/Privacy Act requests for "over an entire year" until forty-eight hours after Breaking Media was dismissed and then mistyped his email address causing further delay in producing documents to him.  D. 44 at 13–14.  He relies upon the First Circuit's statement in Texaco Puerto Rico, Inc. v. Dep't of Consumer Affs., 60 F.3d

---

[4] Mullane's lawsuit against Lehr, Judge Moreno and the other defendants was filed on November 27, 2018.  Breaking Media, 433 F. Supp. 3d at 108.

867, 885 (1st Cir. 1995) that "where the documents sought may shed light on alleged government malfeasance, the [deliberative process] privilege is routinely denied."  That case, however, involved civil discovery, not FOIA, and the few courts to apply a government misconduct exception in a FOIA case have described the exception as narrow and required the party asserting the exception to "provide an adequate basis for believing that [the documents] would shed light upon government misconduct."   See Stalcup, 2013 WL 4784249, at *4–5 (quoting Nat'l Whistleblower Ctr. v. Dep't. of Health and Hum. Servs., 903 F. Supp. 2d 59, 66–68 (D.D.C. 2012)).  As discussed above, the Court finds Mullane's allegations of government misconduct to lack factual support.  Further relevant here, Mullane has not stated how the "specific documents [withheld pursuant to the deliberative process privilege] would shed light on" the alleged processing delays, either to coincide with the motion to dismiss or in typing his email incorrectly when turning over documents.  Id. at *5.  Accordingly, Mullane has not made a sufficient showing that the government misconduct exception applies here.

To invoke the deliberative process privilege, DOJ "must demonstrate that the communications were both 'predecisional' and 'deliberative.'"  New Hampshire Right to Life, 778 F.3d at 52 (quoting Providence J. Co. v. U.S. Dep't of Army, 981 F.2d 552, 557 (1st Cir. 1992)). "A document is predecisional if the agency can:  '(1) pinpoint the specific agency decision to which the document correlates, (2) establish that its author prepared the document for the purpose of assisting the agency official charged with making the agency decision [and was not the final decisionmaker], and (3) verify that the document precedes, in temporal sequence, the decision to which it relates.'"  Id.  Conclusory assertions that merely parrot the legal test do not suffice and an agency's description of documents must at least specify the relevant final decision.  See Senate of the Com. of Puerto Rico v. U.S. Dep't of Just., 823 F.2d 574, 585 (D.C. Cir. 1987); Sensor Sys.

Support, Inc. v. F.A.A., 851 F. Supp. 2d 321, 331 (D.N.H. 2012) (citing Providence J. Co., 981 F.2d at 557) (finding that agency cannot invoke deliberative process privilege without "at the very least identify[ing] the decision contemplated").  "A predecisional document will qualify as 'deliberative' provided it (i) formed an essential link in a specified consultative process, (ii) 'reflect[s] the personal opinions of the writer rather than the policy of the agency,' and (iii) if released, would 'inaccurately reflect or prematurely disclose the views of the agency.'" Providence J. Co., 981 F.2d at 559.  "[T]he agency must present to the court the function and significance of the document(s) in the agency's decisionmaking process, the nature of the decisionmaking authority vested in the office or person issuing the disputed document(s), and the positions in the chain of command of the parties to the documents."  Arthur Andersen & Co. v. I. R. S., 679 F.2d 254, 258 (D.C. Cir. 1982) (quotations and citation omitted).

DOJ thus properly invoked the deliberative process privilege when it redacted an unsigned, not-final draft where Lehr "was seeking feedback from the [USAO-SDFL] Civil Litigation Chief prior to formal submission" on her request for legal representation from DOJ.  D. 28-2 at 58.  Such description identifies the specific agency decision (representation of Lehr), that it was a preliminary draft, and how the parties to the draft fit into the agency chain of command (Lehr, an AUSA, and Jacobus, the Litigation Chief).

DOJ cannot, however, redact or withhold an email from Lehr to "University of Miami's School of Law," an outside party, "certifying Mullane's completion of his externship in her office," D. 28-2 at 14–15, since "communications between agencies and outside parties . . . are not protected under Exemption 5," and such external communications would waive the privilege. Elec. Frontier Found. v. U.S. Dep't of Just., 826 F. Supp. 2d 157, 171 (D.D.C. 2011).  As this record is described as an external communication with Mullane's law school, and DOJ invokes

deliberative process in redacting its contents, those redactions must be removed, and the record released to Mullane accordingly.

The Court has also identified two deficiencies in DOJ's Vaughn index as to other records redacted or withheld pursuant to deliberative process. First, several index entries fail to specify the final agency decision being contemplated. See D. 28-2 at 40 (describing "emails regarding policies related to the intern/extern program" but not specifying policy or decision), 42 (describing same), 50 (describing emails with "impression of developments in civil litigation with [Mullane] that may be considered during future rulemaking" but not stating what rule being considered), 54 (describing email "discussing potential action that may be taken in light of civil litigation developments" but not stating what the potential action is), 68 (describing email "discussing specific actions that [USAO-SDFL] may or may not take relating to its Internship Program" but not stating what those "specific actions" are), 69 (describing same), 72 (describing email where AUSAs "discuss their impressions of [Mullane's] FOIA requests and related civil litigation" but not specifying agency decision being contemplated); see also Sensor Sys. Support, Inc., 851 F. Supp. 2d at 331 (noting that agency must identify the specific decision being deliberated); Bloche v. Dep't of Def., 370 F. Supp. 3d 40, 54 (D.D.C. 2019) (finding index descriptions insufficient because specific policies "never identified or described"). Second, several index entries fail to describe the relevant parties to a record or describe the chain of command among the parties. See D. 28-2 at 29 (describing emails between AUSAs at SDFL but not explaining relative positions or chain of command), 40 (describing "internal [USAO-SDFL] emails" but not naming author or recipient of emails), 42 (describing same), 50 (describing emails between AUSAs at USAO-SDFL but not explaining relative positions or chain of command), 72 (describing emails between AUSAs within multiple DOJ offices but not explaining relative positions or chain of command); see also

New Orleans Workers' Ctr. for Racial Just. v. U.S. Immigr. & Customs Enf't., 373 F. Supp. 3d 16, 53 (D.D.C. 2019) (citing Arthur Andersen & Co., 679 F.2d at 258) (finding that "Vaughn entries assert[ing] only that withheld documents were sent to 'various [agency] Officers' or contain internal discussions between 'agency officers and/or employees,' [but] provides no further information about these officers or employees and the nature of their decisionmaking authority . . . fall far short of satisfying the [agency's] burden to provide 'explicit' information regarding the parties to these documents").

Where, as here, a court finds that a Vaughn index or agency affidavit inadequately describes records redacted or withheld under the deliberative process privilege, it may deny summary judgment as to those records and "direct the government to revise its submissions with respect to [the] specific records." Church of Scientology Int'l., 30 F.3d at 239; Spirko v. U.S. Postal Serv., 147 F.3d 992, 997 (D.C. Cir. 1998) (citations omitted) (explaining that "[i]f the agency fails to provide a sufficiently detailed explanation to enable the district court to make a de novo determination of the agency's claims of exemption, the district court then has several options" including but not limited to requesting further affidavits); see Seife v. U.S. Dep't of State, 298 F. Supp. 3d 592, 631 (S.D.N.Y. 2018) (denying summary judgment without prejudice as to documents withheld under Exemption 5 and requiring agency to submit updated Vaughn index); Elec. Frontier Found. v. C.I.A., No. 09-cv-3351 SBA, 2013 WL 5443048, at *26 (N.D. Cal. Sept. 30, 2013) (finding same); Sensor Sys. Support, Inc., 851 F. Supp. 2d at 336 (denying summary judgment as to the documents with insufficient descriptions and "directing the agency either to produce a supplemental Vaughn index and/or supporting affidavit to enable [the court] to determine whether redactions in those documents are exempt from disclosure, or to submit the documents for in camera review"); Elec. Frontier Found., 826 F. Supp. 2d at 175 (denying

summary judgment without prejudice as to the documents insufficiently described in the index and "directing the agency to revise their Vaughn submissions, taking into account the deficiencies identified by the Court"); Judicial Watch, Inc. v. U.S. Postal Serv., 297 F. Supp. 2d 252, 270 (D.D.C. 2004) (denying summary judgment and requiring agency to review all previously withheld and redacted documents, and after review, produce documents unredacted that it determines do not fall under Exemption 5 and submit more detailed Vaughn index to those that it still believes should be withheld).

Accordingly, because the Court finds the index descriptions inadequate with respect to the records discussed above, the Agencies shall either submit a revised Vaughn index by **April 16, 2021**, correcting the deficiencies outlined above, or produce the documents unredacted to Mullane and inform the Court of its decision, also by **April 16, 2021**.  For records that were redacted or withheld pursuant to the deliberative process privilege as well as the attorney-client or work-product privileges, D. 28-2 at 14, 22, 24, 26, 28, 32, 34, 35, 65, 73, the Court is satisfied by DOJ's submissions to invoke the latter two.  Accordingly, the Court's conclusion regarding the above applies to those records redacted or withheld under Exemption 5 invoking only the deliberative process privilege.  D. 28-2 at 29, 40, 42, 50, 54, 68, 69, 72.

b)      Exemption 6

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  Mullane does not appear to challenge the Agencies' Exemption 6 redactions.  See generally D. 44.  Furthermore, the redactions encompass direct emails, telephone and fax numbers of both private individuals other than Mullane and government employees, as well as personal information of other law students in the Agencies' internship programs.  See D. 28-2.  The Court

is satisfied that redacting this information comports with the balancing required by FOIA and sees no strong public interest in releasing said personal information of the individuals reflected in these records.  See Stylianos v. U.S. Citizenship and Imm. Servs., No. 20-CV-11127-IT, 2021 WL 294287, at *5 (D. Mass. Jan. 28, 2021).

### 3. *Privacy Act*

"The [Privacy Act] gives agencies detailed instructions for managing their records and provides . . . relief to individuals aggrieved by failures on the Government's part to comply with the requirements" such as "a right of access against any agency refusing to allow an individual to inspect a record kept on him." Doe v. Chao, 540 U.S. 614, 618 (2004).  The relevant provision here states that an agency, "upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof. . . ." 5 U.S.C. § 552a(d)(1).  Mullane asserts that the Agencies have "unlawfully withheld all [Privacy Act] records," that "there is no applicable [Privacy Act] exemption here,"[5] and that he is "entitled to an award of actual damages" as a result. D. 44 at 19.  DOJ contends that it "did not redact or withhold any information contained in any responsive record under [Privacy Act] exemptions," but that "some of the [responsive] records" were "exempt from disclosure under 5 U.S.C. § 552a(j)(2) [as] related to investigations or prosecutions of third parties," therefore "outside the scope of the Privacy Act [and] processed solely under FOIA" and some records "were subject to the [Privacy Act], primarily relating to"

---

[5] Privacy Act exemptions are distinct from exemptions under FOIA.  House v. U.S. Dep't of Just., 197 F. Supp. 3d 192, 209 (D.D.C. 2016) (citing Martin v. Office of Special Counsel, 819 F.2d 1181, 1184 (D.C. Cir. 1987)) (explaining that "[i]f a FOIA exemption covers the documents, but a Privacy Act exemption does not, the documents must be released under the Privacy Act"); see also 5 U.S.C. § 552a(t) (establishing same).

Mullane's internship with USAO-SDFL and were released without any Privacy Act exemptions applied.  D. 56 at 13–14.

Mullane asserts that Privacy Act exemption (j)(2) does not apply here because DOJ cannot point to a specific criminal investigation related to his request that fits within the exemption.  D. 44 at 17–18.  Mullane's argument misconstrues the exemption, which allows agencies to "promulgate rules to exempt records systems from Privacy Act coverage" if they contain criminal investigatory material.  Campbell v. U.S. Dep't of Just., 133 F. Supp. 3d 58, 69 (D.D.C. 2015) (citing 5 U.S.C. § 552a(j)(2)).  Thus, the "general exemption" applies to the "system" maintained by the agency, not to the individual circumstances of an investigation or record.  5 U.S.C. § 552a(j)(2); 28 C.F.R. § 16.81 (enumerating systems of records at U.S. Attorney's Offices pursuant to 5 U.S.C. § 552a(j)(2)).  At U.S. Attorney's Offices, like USAO-SDFL, both criminal and civil case files are exempt from the Privacy Act, among other systems.  28 C.F.R. § 16.81(a)(2), (a)(4).  To the extent there were records about Mullane on such systems housed at USAO-SDFL, these would not be subject to Privacy Act access; however, DOJ has not sufficiently asserted the exemption because it did not identify to the Court which records were at issue or on which systems the records were located.  See House, 197 F. Supp. 3d at 209–10 (determining, based on agency affidavit, that records located on DOJ's Title III database were exempted by regulation under (j)(2), but that DOJ email archive was not enumerated in regulations); Watson v. U.S. Dep't of Just., 799 F. Supp. 193, 197 (D.D.C. 1992) (finding records requested from U.S. Attorney's Office were properly withheld because agency asserted in affidavit that records were "maintained in the Criminal Case File System," a system of records exempt under 28 C.F.R. § 16.81).

Regardless, Mullane's Privacy Act claim is barred because he failed to exhaust his administrative remedies and the Court therefore lacks jurisdiction over it.[6] See Barouch v. U.S. Dep't of Just., 962 F. Supp. 2d 30, 67 (D.D.C. 2013) (noting that "failure to exhaust administrative remedies under the Privacy Act is a jurisdictional deficiency because exhaustion is required by [the] statute") (citing Mulhern v. Gates, 525 F. Supp. 2d 174, 183 (D.D.C. 2007) (noting that Privacy Act requires plaintiff to "seek review within the agency under the agency's regulations," and failure to do so deprives court of subject matter jurisdiction); 28 CFR § 16.45 (outlining appeal process within DOJ for denials of requests for access to records, which must be made within 60 days of such denial and stating that plaintiffs who "wish to seek review by a court of any adverse determination or denial of a request . . . must first appeal it under this section"); 17 CFR § 200.80(f) (outlining same for SEC, requiring appeals within 90 days before seeking judicial review); Varad v. U.S. Dep't of the Treasury, No. 18-cv-91338-RGS, 2018 WL 3849861, at *2 (D. Mass. Aug. 13, 2018) (dismissing Privacy Act claim for failure to exhaust administrative remedies). Accordingly, his Privacy Act claim is barred.[7]

### B. Motion to Amend

On February 8, 2021, Mullane sought leave again to amend his complaint to add six Privacy Act counts, one FOIA count and one count of retaliation under the Whistleblower Protection

---

[6] Mullane only appealed the Agencies' denial of his request to expedite processing and for a fee waiver. See D. 1-1 at 11, 30; Barouch, 962 F. Supp. 2d at 67 (finding that appeal of initial adverse determination did not apply to "subsequent determination to withhold" records).

[7] Even if Mullane had stated a claim under the Privacy Act and exhausted his administrative remedies as required by the statute, damages are not an available remedy for records access claims. Mulhern, 525 F. Supp. at 183–84 (citing 5 U.S.C. § 552a(g)(1)(B)) (explaining that Privacy Act permits "individuals who believe they have been wrongly denied access to records pertaining to them may bring a civil action to compel the agency to disclose the records" and claims for actual damages available in improper disclosure cases).

Enhancement Act of 2012 ("WPEA"), 5 U.S.C. §§ 2302(b).  D. 53-1.  Under Fed. R. Civ. P. 15(a), leave to amend will be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  "Reasons for denying leave include undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment." U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40, 48 (1st Cir. 2009) (citation omitted).

First, amendment at this stage would be futile.  In October 2020, the Court denied Mullane's first motion to amend his complaint, which sought to add the same WPEA count.  D. 23; D. 23-1 at 14; D. 35.  Upon review of the proposed amended complaint, the Court finds that there are no new facts or allegations as to the WPEA claim.  There are also no new facts as to either Counts I or II in Mullane's original complaint arising from his 2018 FOIA and Privacy Act requests.  Mullane now brings to the Court's attention a second FOIA and Privacy Act request, sent to DOJ in September 2020 after the Agencies moved for summary judgment on his 2018 request, where he requested additional records related to him and his internship.  D. 53-1 at 18. Mullane indicates that DOJ has yet to respond or produce documents related to this request, id., but amending the complaint with premature factual allegations and claims for liability regarding a separate FOIA request does not impact the facts and claims surrounding the 2018 request, the subject of these motions.  Finally, as discussed above, Mullane is barred from bringing claims under the Privacy Act related to his 2018 request for failure to exhaust administrative remedies.

Second, the Court finds undue delay in moving to amend.  Where, as here, "a considerable period of time has passed between the filing of the complaint and the motion to amend," the burden is on "the movant to show some valid reason for his neglect and delay."  Nikitine v. Wilmington Tr. Co., 715 F.3d 388, 390–91 (1st Cir. 2013) (citation omitted) (affirming denial of motion to amend when "plaintiff allowed nearly a year to elapse before seeking to amend his complaint and

proffered no good reason for the delay"). Mullane filed his complaint over two years ago, in November 2019. D. 1. As discussed above, the final transmission of responsive documents, in June 2020. D. 28-2 at 5. Mullane states that review of these documents uncovered facts "not previously available" to him, D. 53 at 3, but such facts were necessarily available to him since June 2020, before he first moved to amend, D. 23, before the Agencies moved for summary judgment, D. 27, and before he opposed the motion for summary judgment in December 2020, D. 44. Moreover, Mullane's proposed amended complaint as to the 2018 request is premised on the same facts as his original complaint, including the same exhibits and alleging the same theory that government agencies conspired to commit obstruction of justice in processing his 2018 FOIA and Privacy Act request. These are not new allegations; Mullane merely adds claims based on the same facts. Amendment to add allegations surrounding the 2020 FOIA/Privacy Act request is also not warranted as they are "additional claims related to new FOIA requests . . . [not filed] until after summary judgment briefing" on prior FOIA requests, where Mullane "provides no reason for this delay." James Madison Project v. Dep't of Just., 208 F. Supp. 3d 265, 280 (D.D.C. 2016) (denying leave to amend or supplement FOIA complaint to add allegations of additional FOIA requests sent to agencies after summary judgment was briefed).

Accordingly, Mullane's motion to amend is DENIED.

## VI.   Conclusion

For the foregoing reasons, the Court ALLOWS in part and DENIES in part the Agencies' motion for summary judgment, D. 27, and DENIES Mullane's motions to strike and amend. D. 53; D. 58. The motion for summary judgment is ALLOWED in all respects except for the documents described above that were withheld or redacted solely under the deliberative process privilege, see page 21, supra, which is DENIED without prejudice. The Agencies must produce

the communications with an external party unredacted, D. 28-2 at 14–15, and shall either submit a revised Vaughn index by **April 16, 2021**, correcting the deficiencies outlined above, or produce the documents unredacted to Mullane and inform the Court, also by **April 16, 2021**.

   **So Ordered.**

                                                 /s/ Denise J. Casper
                                                 United States District Judge