UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JONATHAN MULLANE,<br><br>          Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT<br>OF JUSTICE, and UNITED STATES<br>SECURITIES AND EXCHANGE<br>COMMISSION,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 1:19-12379-DJC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR RECONSIDERATION AND RESPONSE TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

INTRODUCTION

On March 19, 2021, this Court issued its Order granting Defendants' Motion for Summary Judgment in part and denying it in part. ("March 2021 Order"). *See* Dkt No. 66. In the March 2021 Order, the Court permitted Defendants to file a revised *Vaughn* index ("Revised *Vaughn*") by April 16, 2021, correcting the deficiencies outlined in that Order or produce the limited documents at issue to Plaintiff and inform the Court of Defendants' decision on that same date. *Id.*, p. 27. On April 16, 2021, Defendant filed its Revised *Vaughn*. *See* Dkt. No. 67.

On May 3, 2021, this Court issued another Order ("May 2021 Order") informing the parties that the Court was inclined to consider summary judgment on the limited documents at issue since the Revised *Vaughn* addressed this Court's concerns raised in the March 2021 Order and any such motion for partial summary judgment by Defendants was to be filed on or before May 14, 2021. *See* Dkt. No. 68. Moreover, in the May 2021 Order the Court also stated the following: "*Mullane's response to*

1

*Defendants' motion**, confined only to these entries described in D. 67 and D. 67-1,** shall be due on June 4, 2021."* (emphasis added). *Id.* In accordance with this Court's May 2021 Order, Defendants timely filed their Motion for Partial Summary Judgment on May 12, 2021. *See* Dkt. Nos. 69, 70.

In complete disregard of this Court's May 2021 Order, on June 7, 2021, Plaintiff filed the following:

1) Motion for Reconsideration, (Dkt. No. 71);
2) Motion for Renewed Motion for In Camera Review (Dkt. No. 72);
3) Motion for Judicial Notice Hearing (Dkt. No. 73);
4) Opposition to Motion for Summary Judgment and Cross Motion for Summary Judgement (Dkt. No. 74);
5) Supplemental Affidavit of E. Peter Mullane in Support of all filings (Dkt. No. 75);
6) Second Affidavit of Jonathan Mullane (Dkt. No. 76); and
7) Notice of Supplemental Authorities (Dkt. No. 77), which was filed on June 15, 2021.

Defendants file their (a) Opposition to the Plaintiff's Motion for Reconsideration ("Reconsideration Motion") and (b) Response to Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment.[1]

ARGUMENT

A. Defendants' Response to Plaintiff's Opposition to Defendants' Motion For Partial Summary Judgment

Plaintiff dedicates three pages in his Omnibus Brief on Defendants' Motion for Partial Summary Judgment. *See* Dkt. No. 74, pp. 3-5.[2] In his Omnibus Brief, Plaintiff argues that Defendant DOJ's Revised *Vaughn,* excluding the limited documents referenced in the March 2021 Order which has been

---

[1] Since Plaintiff's Cross-Motion is outside this Court's May 2021 Order and apparently reliant on the Reconsideration Motion, Defendants will not address the Cross-Motion herein. Rather, should the Court grant Defendants' Partial Summary Judgment Motion, Plaintiff's Cross-Motion would be moot. Should this Court wish Defendants to file a Response to Plaintiff's Cross-Motion for Summary Judgement, they request twenty-one (21) days from such order.

[2] Plaintiff discusses the FOIA Improvement Act of 2016 ("FIA") in this section, but it will be addressed in Defendants' Opposition to his Reconsideration Motion since it attacks this Court's ruling on finding that the Exemptions were properly discussed in their *Vaughns.*

cured by Defendants, displays that all the requested records directly pertain to "alleged misconduct."[3] *See* Dkt. No. 74, p. 4.  Plaintiff apparently believes that the use of the words "when intern misconduct is alleged" in the Revised *Vaughn*'s Exemption discussion section (*see* Dkt. No. 67, pp. 2, 6, 7) places it squarely within the "government misconduct exception."  *See* Plaintiff's Omnibus Opposition to Defendants' Motion for Partial Summary Judgment, Dkt. No. 74, pp. 3-4.  This circular argument will not be graced with a response except to state that Plaintiff is not the "government" envisioned in the "government misconduct exception" and the Plaintiff has shed more than enough light on the alleged intern misconduct in his papers.

Similarly, Plaintiff criticizes this Court's March 2021 Order where it notes that *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d, 867 (1st Cir. 1995) is distinguishable as that case dealt with civil discovery and not FOIA.  *See* Opposition, Dkt. No. 74, pp. 4-5.[4]  Needless to say, Chief Judge Dennis Saylor made the exact distinction in a similar FOIA case.  *See Stalcup v. CIA*, No. 11-cv-11250-FDS, 2013 WL 4784249 at *4 (D. Mass. Sept. 5, 2013), *aff'd* 768 F.3d 65 (1st Cir. 2014). Apparently, two judges of this Court have a vastly different understanding of the law than Plaintiff.  In the end, Plaintiff's repeated pounding on the "government misconduct exception" drum continues to ring hollow.[5]  Indeed, the few courts which have actually reviewed this legal principle, have held that the exception is extremely narrow, is to be used sparingly, and must be supported by evidence of "extreme government wrongdoing"; that is, the policy discussions sought to be protected within the deliberative process privilege are so out of bounds that merely discussing them is evidence of serious government misconduct, i.e., the very discussion is an act of misconduct.  *See, e.g.*, *National*

---

[3] Plaintiff conveniently omits the word "government" from this language even though the "government misconduct" exception pertains only to "government" misconduct.  *Id.*, p. 4. Likewise, Plaintiff asserts that the Defendant agree with him that the documents at issue fall within the "government misconduct exception."  *Id*. Nothing can be further from the truth.  Plaintiff makes similar leaps of faith in his filings which Defendants again deny as wholly inaccurate.
[4] Apparently, this argument is more directed to Plaintiff's flawed Reconsideration Motion.
[5] Plaintiff raised this issue at the hearing on Defendants' MSJ.  *See* Hearing Transcript, p. 33.

*Whistleblower Center v. Dept. of Health and Human Services*, 903 F. Supp. 2d 59, 69 (D.D.C. 2012) (declining use of government misconduct exception in context of Exemption 5); *Judicial Watch of Florida v. U.S. Dept. of Justice*, 102 F. Supp. 2d 6, 16 (D.D.C. 2000) (same).

Lastly, Plaintiff asserts that the Revised *Vaughn* contains conclusory assertions that the redactions therein relate to "agency procedure and policy" discussions regarding alleged intern misconduct, and, thus, because Plaintiff was involved in that misconduct those discussions are "employment discussions" that are not the kind of "agency policy formulation" protected under the deliberate process privilege in FOIA Exemption 5.  *See* Opposition, Dkt No. 74, p. 5.

In support, Plaintiff relies on, *in his words*, a "factually analogous" case to his, namely, *Allen v. Woodward*, No. 05-cv-1104, 2007 WL 309485 (E.D. Cal. Jan. 30, 2007).  Plaintiff's assertion in this regard is misplaced.  Indeed, *Woodward* concerned an 8th Amendment deliberative indifference to medical needs and malpractice claim concerning treatment of a prisoner while in a state custody.  *Id.*, at *1.  The court's decision was rendered in the context of a motion to compel discovery where, among other defenses raised to the motion, defendants claimed deliberative process privilege over documents covering the activities and decisions surrounding the doctor who performed the surgery in question and his termination from employment.  *Id.*, at *4.  Despite raising the privilege, defendants did not provide the necessary declarations identifying the information they contended was deliberative and protected; rather, they asserted the documents were not in their possession, custody, or control.  *Id.*

In response, the *Woodward* court noted that the deliberative process privilege is qualified and the court must weigh the competing interests in the documents, including relevance, availability of evidence, seriousness of the litigation, as well as possibility of future timidity by government employees.  *Id.*  However, this balancing analysis used in civil discovery is not germane to FOIA.  *See, e.g.*, *Habeas Corpus Resources Ctr. v. United States Department of Justice*, 2008 WL 5000224

\*4 (N.D. Cal. 2008) (case law addressing the circumstances under which the deliberative process privilege may be overcome in non-FOIA litigation cannot be applied in FOIA cases, because it is inapposite to ask whether the documents are so central to Plaintiff's underlying claim that the privilege may not be invoked).  *See also In re: Sealed Case*, 121 F.3d at 729, n 5 (D.C. Cir. 1997) (acknowledging that balancing of factors in determining "need" is not relevant in FOIA cases because the "particular purpose for which a FOIA requester seeks information is not relevant in determining whether FOIA requires disclosure.").

Furthermore, Plaintiff's citation to *Woodward* for the proposition that the documents sought therein (*e.g.*, documents concerning the doctor's activities and decisions) are "employment" type decisions, not policy formulations is equally inapplicable.  Here, the Revised *Vaughn* specifically notes that the discussions redacted were between high level officials in the Asset Forfeiture Unit ("AFU"), the Executive Office, and Chief of the Civil Division on what procedures and policies should be formulated concerning the internship program at the USAO – SDFLA in the context of how to respond to a law school's request for final evaluation when intern misconduct is alleged; new protocols on extending an interns standard time beyond 240 hours; HR's role on that issue; what individual acts are appropriate concerning the term of an intern when misconduct is alleged; and what internal investigative procedures the office should undertake under these circumstances.  *See* Revised *Vaughn*, Dkt. No. 67-1, pp. 3, 4, 6, 7.  These discussions concerning policies and procedures the USAO-SDFLA should formulate when intern misconduct is alleged are not employment decisions as referenced in *Woodward*, *supra*.[6]

For these reasons and those stated in Defendants' Motion for Partial Summary Judgment, this Court should grant judgment in favor of Defendants on the remaining issues identified in this Court's

---

[6] Incidentally, Plaintiff was not an employee of the USAO-SDFLA, but a volunteer, unpaid law intern, a fact which Plaintiff finally seems to admit.

March 2021 and May 2021 Orders.

    B.  <u>This Court Should Deny Plaintiff's Motion for Reconsideration</u>

        (1)  <u>Motion for Reconsideration Standard</u>

Conspicuously absent from Plaintiff's Reconsideration Motion is any mention of the stringent standard for issuance of such a procedural maneuver. Generally, it is well-established that the granting of a motion for reconsideration is an "extraordinary remedy which should be used sparingly." *Palmer v. Champion Mortgage,* 465 F.3d 24, 30 (1st Cir. 2006) *citing* 11 Charles Alan Wright et al., Federal Practice and Procedure § 2801.1 (2d ed. 1995). Lost on Plaintiff is the fact that a motion for reconsideration is *not* to be used as a vehicle for revisiting a party's case and rearguing theories previously advanced and rejected. *See In re Sun Pipe Line Co.,* 831 F.2d 22, 24-25 (1st Cir. 1987). To obtain relief, the movant must demonstrate that newly discovered evidence (not previously available) has come to light, there has been an intervening change of law, or that the rendering court committed a manifest error of law or was clearly unjust. *See Marie v. Allied Home Mortg. Corp.,* 402 F.3d 1, 7 n.2 (1st Cir. 2005); *Intellectual Ventures I, LLC. v. Lenovo Gray, Ltd.,* 392 F. Supp. 3d 138, 149 (D. Mass. 2019) (reconsideration denied regarding interlocutory order); *Chudy v. Colvin,* 68 F. Supp. 3d 242, 244 (D. Mass. 2014) (no intervening change of law for Rule 59(e) reconsideration motion); *Shea v. Millett,* No. 17-cv-12233-ADB, 2019 WL 11541167, at *1 (D. Mass. Oct. 31, 2019) (denying reconsideration of interlocutory order) . These exceptions are "narrowly configured and seldomly invoked." *See United States v. Connell,* 6 F.3d 27, 31 (1st Cir. 1993).

Motions for reconsideration are also *not* to be used as an opportunity to undo a party's own procedural failures or to advance arguments that could or should have been made before a court issued its order. *See, e.g., DeGiovanni v. Jani-King Int'l, Inc.,* 968 F. Supp. 2d 447, 450 (D. Mass. 2013). Moreover, a disagreement with the Court's decision is not a basis for reconsideration. *See Ofari v.*

*Ruby Tuesday, Inc.,* 205 F. App'x 851, 852-53 (1st Cir. 2006). *See also Hall v. Capeless,* No. 19-cv-30138-DJC, 2021 WL 217341, at * 7-8 (D. Mass. Jan. 20, 2021) (court denied motion for reconsideration on several rulings made by court on various requests).

On this legal backdrop, Defendants will not expend much of the inkwell on Plaintiff's Reconsideration Motion because it does not present a manifest error of law committed by this Court, newly discovered evidence which supports this extraordinary request, or an intervening change of law. *See Mangianfico v. Stanton,* No. 19-cv-10490-ADB, 2019 WL 2285765, at * 1 (D. Mass. May 5, 2019). Instead, Plaintiff advances arguments previously made *or that could have been made* prior to this Court's issuance of its March 2021 Order, while supporting these same arguments with some additional (albeit inapposite) case law, all of which was in existence at the time of filing his Opposition to Defendants' Motion for Summary Judgment ("Opposition to MSJ"), thereby requiring denial of the Reconsideration Motion. *See DiGiovanni,* 968 F. Supp. 2d at 450. (emphasis added).

(2) <u>Adequacy of Search</u>

By way of example, regarding the adequacy of Defendants' search, Plaintiff maintains that Defendant DOJ limited its search to emails only, omitting from its reach documents dealing with telephone records, texts, notes, or anything else. *See* Reconsideration Motion, Dkt. No. 71, p. 9. This is the same argument made in Plaintiff's Opposition to Defendants" Motion for Summary judgement ("Opposition to MSJ") wherein Plaintiff alleged that the search conducted by the U.S. Attorney's Office for the Southern District of Florida ("US0-SDFLA"), as described in the Francys Marcenaros Declarations, was inadequate because it would not have captured certain records, such as, telephone logs, communications between former U.S, Attorney Benjamin Greenberg, personal emails of AUSAs or staff. *See* Opposition to MSJ, Dkt. No. 44, p. 6.

However, as this Court appropriately noted, the Marcenaros search request was sent office-

7

wide seeking *any* records relating to **Jonathan Mullane** during the short period of time he was an unpaid, volunteer law clerk in the AFU at the USAO-SDFLA. *See* Marcenaros Decl., Dkt. Nos. 28-1, ¶¶ 6, 7; 57-1, ¶ 5. *See also* March 2021 Order, Dkt. No. 66, p. 7. Obviously, this search was not limited to emails only. In fact, Marcenaros sent a separate request to those AUSAs who worked with Plaintiff in the AFU and they responded to Marcenaros that the only documents they perceived responsive in their possession were emails. *See* Supplemental Marcenaros Decl., Dkt. No. 57-1, ¶¶ 5, 7-8. *See also* March 2021 Order, Dkt. No. 66, p. 8. Marcenaros also directed her request to the Human Resources office. *Id.* In short, Plaintiff's assertion that the search was limited to emails is a misstatement of fact.

Similarly, in the Reconsideration Motion, Plaintiff readdresses the "Gera Peoples" email which mentions therein an attachment, and, thus, since that attachment was not produced (and must exist), Defendant DOJ's search was inadequate. *See*, Dkt. No. 71, pp. 10, 14, 20. This was the exact argument made in Plaintiff's Opposition. *See* Opposition, Dkt. No. 44, pp. 6, 9. In fact, Plaintiff attached as an exhibit thereto, a copy of the Gera Peoples email. *Id.,* Dkt. No. 44-1, p. 54. As defendants noted previously and this Court cited in its March 2021 Order, the failure to produce a document that might exist, does not render a search inadequate. *See Oglesby v. U.S. Dep't of Defense,* 658 F. Supp. 2d 288, 298 (D. Mass. 2009). *See also* March 2021 Order, Dkt. No. 66, p. 12. However, Plaintiff now expands his argument on the Gera Peoples email, stating that the USAO-SDFLA should have searched all *former* employees computer records because at the time Marcenaros sent out her office-wide search request, Gera Peoples was no longer an employee at that office[7]. *See* Reconsideration Motion, Dkt. No. 71, pp. 13-14. This argument was certainly available to Plaintiff at the time he filed his Opposition to MSJ and appeared for argument with this Court but was not raised and should be rejected outright

---

[7] It should be noted that all the recipients of the Gera Peoples' email, excluding former U.S. Attorney Greenberg, are currently employed at the USAO-SDFLA.

for reconsideration purposes. Likewise, this argument flies in the face of well-established FOIA law which holds that the adequacy of an agency's search is determined not by whether relevant documents might exist, but whether the agency's search was reasonably calculated to discover the requested documents. *See Moffatt v. U.S. Dep't of Justice,* 716 F.3d 244, 254 (1st Cir. 2013).

Without undue repetition, Marcenaros sent an office-wide email to every USAO-SDFLA employee asking that they search for all records regarding Plaintiff and then sent a second, more targeted request to those who worked directly with Plaintiff, as well as the Civil Chief and Human Resources Office. *See* Marcenaros Declarations, Dkt. Nos. 28-1, ¶¶ 6-7; 57-1, ¶ 5. Marcenaros equally had the former U.S. Attorney's files searched since Plaintiff was involved in alleged misconduct and he had sued Judge Moreno who, according to Plaintiff, had conversations about Plaintiff with the U.S. Attorney. *Id.,* 28-1, ¶ 7. As this Court correctly found, such an expansive search was adequate considering Plaintiff's role and tenure at the USAO-SDFLA, and the documents requested. *See* March 2021 Order, Dkt. No. 66, p. 8.[8] In Plaintiff's view, every FOIA request would require an agency to search not only places where it reasonably believes responsive materials will likely be located, but also all former employees without regard to whether they had any relation to the subject matter of the request. Obviously FOIA does not require such a burdensome search. *Stalcup v. C.I.A.,* 768 F.3d 65, 74 (1st Cir. 2014) (agency need not search every record system, but instead the agency need only

---

[8] Plaintiff cites to *Campbell v. DOJ,* 164 F. 3d 20, 28 (D.D.C. 1998) and accuses this Court of *myopically* confining its review to what Marcenaros knew at the time she sent out her search request and not supplementing her search upon observing that Gera Peoples sent an email. *See* Reconsideration Motion, Dkt. No. 71, p. 14. Despite Plaintiff's assertions that *Campbell* is controlling, one need only take a cursory review of the case to understand the facts therein are completely different than the case at hand. In *Campbell,* the FBI searched a specific file system (CSR), but did not search another file system (tickler) even though it knew that records might exist in that record system and was previously searched in other similar FOIA requests. In stark contrast, here, Defendant sent its search request to all individuals reasonably likely to have responsive materials (and beyond). Gera Peoples would not have been a person reasonably likely to have responsive records. In fact, other than former U.S. Attorney Greenberg whose files were searched, the Peoples email was sent to individuals in the USAO-SDFLA, all of whom still are employed at that office. In any event, the USAO-SDFLA had no obligation to supplement that search. *See James v. U. S. Secret Service.,* 811 F. Supp. 2d 351, 358 (D.D.C. 2011) (noting that agency is not required to update or supplement a prior response to a request). Moreover, the DOJ's email archive is not a "system of records" covered under the Privacy Act ("PA"). *See Gordon v. Courter,* No. 14-cv-1382, 2015 WL 4602588, at * 9 (D.D.C. July 31, 2015).

perform a good faith, reasonable search of record systems likely to possess the requested information).

Likewise, in his Reconsideration Motion, Plaintiff again attacks the DOJ's search because the Marcenaros Declaration is void of any search terms used to conduct its search. *See* Dkt. No. 71, p. 11. As a common theme throughout his Reconsideration Motion, this argument was previously made in Plaintiff's Opposition to MSJ. *See* Dkt. No. 44, pp. 4, 6 n 3, 7.[9]  Next, Plaintiff asserts that the memorandum written by AUSA Adrienne Rosen must be released in full because she is a "fact" witness, not counsel to AUSA Alison Lehr in the *Moreno* litigation; thus, Defendant DOJ's claim that the memorandum falls within the attorney work-product privilege in Exemption 5 of FOIA is flawed. *See* Reconsideration Motion, Dkt. No. 71, p. 16.  Again, a similar argument was equally raised in Plaintiff's Opposition to MSJ where he maintained that the attorney work-product privilege was inapplicable because AUSA Rosen was not acting as counsel to AUSA Lehr in the *Moreno* litigation, nor was she a party to that matter. *See* Dkt. No. 44, p. 15. As discussed previously, taking Plaintiff's argument to its logical conclusion, no document prepared by an attorney would be protected under the privilege unless they were a party to the litigation to which the document speaks (or counsel of record).[10]  Additionally, agencies need only prove that the document at issue was prepared under the direction of an attorney in contemplation of litigation. *See Am. Civ. Liberties Union Found., Inc. v. U.S. Dep't of Edu.,* 320 F. Supp. 270, 281 (D. Mass. 2018). Here, as the Court found, where litigation was on-going during the period AUSA Rosen memo was created, it is protected under the attorney work-product privilege. *See* March 2021 Order, Dkt. No. 66, p. 15, *citing Diaz v. Davis,* 327 F.R.D. 26, 29 (D. Mass. 2018).  Plaintiff's repeated attempt to distinguish the AUSA Rosen memo to escape

---

[9] Strikingly, Defendants cleared up this issue through the Marcenaros Declarations, *see* Dkt No. 28-1, ¶ 6. 57-3, ¶¶ 3-4, and in the McInerny Supplemental Declaration, Dkt. No. 57-3, ¶ 4, wherein both declarants specified the search terms used.
[10] Plaintiff asserts that no applicable exception exists in the Privacy Act ("PA") protecting attorney work-product privilege materials. *See* Reconsideration Motion, Dkt. No. 71, p. 17 n. 14. However, the PA contains several exemptions, including 5 U.S.C. § 552a(d)(5), which exempts any materials compiled in reasonable anticipation of litigation, including attorney work-product documents. *See Martin v. Office of Special Counsel,* 819 F.2d 1181, 1187-89 (D.C. Cir. 1987).

the work-product privilege is without merit.

Lastly, as has been Plaintiff's overarching narrative in this FOIA action, Plaintiff spends countless words regurgitating his conspiracy theory that the Defendant DOJ intentionally waited 15 months to begin its search for responsive material to his FOIA request to gain an unfair and fraudulent advantage in a then active lawsuit in Massachusetts against a sitting federal judge (Honorable Federico A. Moreno) and an AUSA (Alison Lehr). *See* Reconsideration Motion, Dkt. No. 71, p. 17. *See also* Second Affidavit of Jonathan Mullane, Dkt. No. 76, ¶¶ 15-16. Plaintiff's counsel submitted a 46-page affidavit cataloguing the purported fraud committed by the USAO-SDFLA so it could prevail in the Massachusetts *Moreno* litigation, all of which has been previously brought before this Court.[11] Oddly, in that affidavit, Plaintiff's counsel asserts these allegations made therein are newly discovered before this Court's hearing on Defendants' Motion for Summary Judgment on **February 24, 2020.** *See* Dkt. No. 75, ¶ 89. However, the hearing occurred on **February 25, 2021** (Dkt. No. 52), a year after the above stated date in his Supplemental Affidavit and after Plaintiff was in possession of all USAO-SDFLA responsive records by June 9, 202, over 8 months before the hearing on Defendants' MSJ. (Dkt. No. 28-2, ¶ 15).

Spinning the conspiracy web even wider, Plaintiff now asserts that the actions by the government in defending this FOIA suit is another attempt to shield documents that would be useful in his Florida suit against Judge Moreno, AUSA Lehr, former U.S. Attorney Benjamin Greenberg, and SEC counsel Lisa Roberts ("Florida Action"). *See* Reconsideration Motion, Dkt. No. 71, p. 16. *See*

---

[11] The Peter Mullane declaration is a candidate for being stricken because it is merely a recitation of his legal conclusion, conclusory allegations, and unsupported speculation. *See generally, Mackey v. Town of Tewksbury,* No. 15-cv-12173-MBB, 2020 WL 68243 (D. Mass. Jan. 7, 2020). Moreover, under Rule 12(f), a party may move to have the court strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter. *See* Fed. R. Civ. P. 12(f). This declaration is the poster child for redundancy, immateriality, impertinence, and scandal. It spends 46 pages accusing AUSAs in Boston and Florida, a sitting federal judge, and a former U.S. Attorney of conspiring to delay the production of and concealment of information that would have assisted Plaintiff in a lawsuit dismissed on personal jurisdiction grounds. Moreover, the declaration is nothing more than expansion of the same arguments made in Plaintiff's Reconsideration Motion and, thus, is an impermissible attempt to file a brief exceeding 20 pages without leave of Court.

*also* Second Affidavit of Jonathan Mullane, Dkt. No. 76, p. 12, ¶ 41; p. 15, ¶¶ 54-55.

One need only review the decision by the U.S. District Court (Kallon, J.) dismissing the Florida Action to understand that no document would have been helpful to his case since the claims against Judge Moreno were dismissed on judicial immunity grounds, and as to all defendants on qualified immunity grounds for the asserted *Bivens* claims, as well as under 12(b)(6) for their failure to state valid claims.  *See Mullane v. Federico A. Moreno, et al.,* No. 20-cv-21339-AKK, 2021 WL 2661175 (S.D. Fla. June 29, 2021).  As one can glean from the Decision in the Florida Action, Mullane relies on the same facts in the Florida Action that support his conspiracy theory in this FOIA, even attaching declarations he filed in this FOIA suit as support for his claims against the Defendants in Florida.  *Id.,* at * 3 n. 4.[12] .  Plaintiff also argued that the delay in responding to his FOIA request was part of a civil conspiracy.  *Id.,* at * 12.  At bottom, this Court has reviewed all the materials submitted in this matter and determined that the delay was not caused by bad faith on the part of the USAO-SDFLA and that the Massachusetts *Moreno* action was dismissed on personal jurisdiction grounds which the delay had no legal bearing.  *See* March 2021 Order, Dkt. No. 66, p. 10.[13]

Plaintiff also contends that this Court failed to consider the "countervailing evidence" he submitted on the issues raised as to adequacy.  *See* Reconsideration Motion, Dkt. No. 71, pp. 11, 15.  Nonetheless, Plaintiff ignores this Court's holding that the countervailing evidence submitted by Plaintiff did not warrant a finding of inadequate search.  *See* March 2021 Order, Dkt. No. 66, p. 11.  In

---

[12] Plaintiff alleged seventeen claims against Judge Moreno, including claims arising out of, among other things, Judge Moreno's alleged request to AUSA Lehr to "deceptively" request Plaintiff's employment records to send to Judge Moreno (*id.,* at *5); statements made by Judge Moreno at a hearing regarding Plaintiff's alleged misconduct (*id.,* at *5); and a letter Judge Moreno sent to University of Miami Law School alerting it to the fact that Plaintiff had filed a verified recusal request of Judge Moreno who was presiding over his personal claim against Barclay's Bank and that the statements in Paragraph 16 of that pleading contained blatant misstatements of fact that were confirmed through video. (*id.,* at * * 5-6).

[13] Plaintiff submits a second declaration with his Reconsideration Motion noting that the documents produced in response to the FOIA request could have changed the outcome of the Massachusetts *Moreno* action.  That is simply incorrect.  The examples Plaintiff provides in his declaration all occurred in Florida, while he was an unpaid, volunteer law intern in Florida, and committed by individuals who reside in Florida.  *See* Second Declaration of Jonathan Mullane, Dkt. No. 76, ¶16 (1)-(4); ¶ 21 (i)-(vii).

12

other words, this Court reviewed Plaintiff's purported "countervailing evidence" but rejected his contention that it showed inadequacy of search and government misconduct. Plaintiff's quarrel with this Court's finding, as noted herein, is not a legitimate legal basis for reconsideration. *See Mangianfico,* 2019 WL 2285765, at * 1 (D. Mass. May 29, 2019).

The above represents a few of the glaring deficiencies in Plaintiff's Reconsideration Motion. Indeed, as mentioned above, a motion for reconsideration cannot be used as a vehicle to reargue issues previously made (or that should have been made) with the Court before it rendered its decision. *See DeGiovanni,* 968 F. Supp. 2d at 450 (D. Mass. 2013). Plaintiff's attempt to do so by citing additional case law in support of his previously made arguments is not a lifeline to escape the onerous limitations to a reconsideration motion because where the law cited was available to the moving party before the Court's ruling, it is not "newly discovered evidence" warranting reconsideration review. *See Bauersachs v. Massing,* No. 19-cv-10295-ADB, 2019 WL 4918271 at * 2 (D. Mass. Oct. 4, 2019). At bottom, Plaintiff's Reconsideration Motion, virtually in its entirety, amounts to nothing more than his disagreement with this Court's March 2021 Order within which he readdresses arguments previously made in his Opposition to MSJ (and at the hearing). Accordingly, the Reconsideration Motion should be denied. *See Ofari,* 205 F. App'x at 852-53 (1st Cir. 2006).

(3) <u>Defendants did not violate the FOIA Improvement Act of 2016</u>

Under the FOIA Improvement Act of 2016 ("FIA"), an agency shall withhold information only if, "the agency reasonably foresees that disclosure would harm an interest protected by an exemption…" 5 U.S.C. § 522 (a)(8)(A)(i)(I) (2016). Defendant DOJ is unaware of any cases in the First Circuit which directly defines the "foreseeable harm" standard under the FIA. The Congressional Committee on Government Oversight and Reform defined this standard as, "the ability to articulate both the nature of the harm and the link between the specified harm and specific information contained

in the material withheld." H.R. Rep. No. 114-391, at 9 (2016).

In many circumstances, the withheld information may be so obviously sensitive that, "a simple statement illustrating why the privilege applies and identifying the harm likely to result from release 'may be enough.'" *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 107 (D.D.C. 2019). In other cases, where the deliberations involve "more mundane, quotidian matters, or the decision has already been made" a meaningful connection may not be readily inferred and requires more explanation. *Id. See also Judicial Watch, Inc. v. US Dept. of Commerce,* 375 F. Supp. 3d 93 (D.D.C. 2019) (holding general justification for withholding mundane pre-deliberative communications insufficient under FIA).

Bearing the above in mind, Defendant DOJ has met the standard of the FIA. By way of example, under Bates Number 00915 – 00948 of the *Vaughn* Index, it characterizes the documents as emails between AUSA Alison Lehr, defense counsel AUSA Jason Weida, and Civil Chief Wendy Jacobus regarding an active case. *See* Wilkinson Decl., Dkt. No. 28-2, ¶¶ 25, 28. These are discussions between a client (AUSA Lehr) and her defense counsel (AUSA Weida and Civil Chief) concerning the on-going case in Massachusetts, the disclosure of which would have the obvious harm of chilling any future communications between an attorney and client. The foreseeable harm to this relationship was recognized by this Court in its March 2021 Order. *See* Dkt. No. 66, p. 14. Draft memoranda of law exchanged between AUSA Lehr and her counsel in defense of the Massachusetts litigation, as well as emails in this regard are so blatantly protected from disclosure as the foreseeable harm would be so detrimental to anyone's defense in litigation. *Id.*

In addition, the Wilkinson Declaration states the following:

> In emails Bates labeled 01216 through 01224, Alison Lehr sought guidance from her supervisor, Evelyn Sheehan, on office policies relating the USAO Spring Internship Program's final evaluation and certification. In an email Bates labeled 01570 through 01578, Alison Lehr seeks guidance from USAO-FLS Civil Litigation Chief regarding policies governing USAO

14

employees who may be named in civil litigation.  Similarly, my declaration describes numerous discussions throughout the responsive document set that are pre-decisional and deliberative in nature.  Id.  Those discussions have been segregated where possible and properly withheld when those deliberations would chill future government deliberations and/or confuse the public about the deliberation process. *See* Declaration of Justin P. Wilkinson, Dkt. No. 28-2, ¶ 22.

The accompanying *Vaughn* Index expanded on the harm assessment by describing in detail the types of harm that would be incurred if the documents were released to the public. Bates numbers 00080 through 00095 were described as internal emails between government personnel at USAO-SDFLA. *See* Dkt. No. 28-2, *Exhibit A,* p. 14. That entry stated that the document concerns "civil litigation with Plaintiff—contains pre-decisional discussions between government attorneys regarding legal tactics and strategies that are antecedent to the adoption of a final strategy.  The release of such a communication would chill governmental deliberations and confuse the public's understanding of the deliberative process."  *Id.*  Certainly, the USAO should be able to freely discuss how the office should proceed in a legal matter, prior to the adoption of a final policy, without being concerned that those deliberations are going to be released to the public or otherwise be misconstrued.

Furthermore, regarding routine communications, Bates numbers 00823 through 00825 describe an email from AUSA Alison Lehr to AUSAs Eloisa Fernandez and Nalina Sombuntham transmitting USAO-SDFLA's AFU Division Weekly Activity Report.  *Id.* at p. 22. That entry further states that "each active asset forfeiture case in the USAO-FLS has an entry that discusses possible strategies and/or actions that are antecedent to the adoption of a final strategy. These options are pre-decisional, the disclosure of which may chill future governmental deliberations and/or confuse the public." *Id.* at p. 23.  In conformity with the interest of the deliberative process privilege described above, the USAO should be able to freely discuss how proceed in various legal matters—those that are integral to the primary function of the office—without being concerned that those deliberations are going to be released to the public or otherwise be misconstrued.

Bates numbers 00913 through 00914 describes emails from AUSA Lehr to Civil Chief Wendy Jacobus. *Id.* at p. 26. That entry further states that "AUSA Lehr email to the Chief of Civil litigation to discuss potential actions that may be taken in light of new information provided by her defense counsel. The civil chief is the appropriate decision-maker from which AUSA Lehr should seek pre-decisional guidance from under the circumstances. The disclosure of such communication may chill future governmental deliberations and confuse the public about the deliberation process." *Id.* In conformity with the interest of the deliberative process privilege described above, AUSA Lehr should be able to seek guidance from a superior officer on how to proceed professionally when the office is involved in civil litigation without being concerned that those deliberations are going to be released to the public or otherwise be misconstrued.

In short, the DOJ provided information to establish a meaningful connection between withheld documents and foreseeable harm for *both* obviously sensitive material *and* mundane communications. Excluding the few documents referenced in this Court's March 2021 Order, this Court found that the DOJ declarations and initial *Vaughn* were proper and provided the Court a basis for that ruling. *See* March 2021 Order, pp. 13-18.

        (4) <u>Dismissal of Privacy Act Claim</u>

On the other hand, the only new issue not previously argued by Plaintiff is the Court's *sua sponte* dismissal of his Privacy Act ("PA") claim for its failure to exhaust administrative remedies. *See* Reconsideration Motion, Dkt. No. 71, pp. 2-3. Briefly, one of the basis for Plaintiff's objection to this Court's ruling on the PA issue was that he was never provided any notice from the agency of his need to seek administrative review concerning its response to his FOIA request and to whom said request should be sent. *Id.,* p. 3. However, Plaintiff submits with his Reconsideration Motion copies of two responses to his FOIA/PA request. Each response specifically notifies Plaintiff where and with

whom an administrative appeal of those rulings should be sent. *Id.,* Dkt. No. 71-1, pp. 4-6.[14]

In any event, assuming, *arguendo,* this Court's failure to exhaust ruling is in error, for purpose of reconsideration, it is harmless. Indeed, Plaintiff's PA claim is subject to dismissal on other grounds, including without limitation, the fact that both the DOJ and SEC unequivocally stated that all PA record systems were searched concerning Plaintiff and the responsive records were produced in full, without any redactions. *See* Second Wilkinson Decl., Dkt. No. 56-1*,* ¶ 13; Supplemental McInerney Decl., Dkt. No. 57-3, ¶ 4.[15]

Likewise, Plaintiff has a fundamental misunderstanding of the PA in this regard. That is, while FOIA permits any person to seek access to agency records, the PA permits only "an individual to seek access to only his or her own records, and only if that record is maintained by the agency within a 'system of records'". *See Lane v. Dep't of Justice,* No. 02-cv-6555-ENV, 2006 WL 1455459, at * 5 (E.D.N.Y. May 22, 2006). Merely "because an agency is capable of retrieving the information, and just because it does so to comply with a FOIA request, does not mean that information is maintained in a Privacy Act 'system of records'". *See Yonemota v. Dep't of Veterans Affairs,* No. 06-cv-00378-BMK, 2007 WL 1310165, at * 6 (D. Haw. May 2, 2007).

Here, excluding the records contained in the Human Resources department at the USAO-SDFLA, all other responsive records were retrieved from individual AUSAs in that office, including the former U.S. Attorney. *See* Marcenaros Decl., Dkt. No. 28-1, ¶ 8. Needless to say, these documents were not kept in a file system specifically indexed under Plaintiff's name or other identifier. *See, e.g., Mobley v. C.I.A.,* 924 F. Supp. 2d 24, 56 (D.D.C. 2013), *aff'd* 806 F.3d 568 (D.C. Cir. 2015) (holding

---

[14] In his Reconsideration Motion, Plaintiff asserts that no search was conducted in DOJ's Washington office for responsive records. Such is belied by *Exhibit 1* attached to said reconsideration Motion wherein the EOUSA Washington informs Plaintiff that it has no responsive records to his FOIA/PA request. *See* Dkt. No. 71-1, p. 4.

[15] The same holds true for Plaintiff's assertion that this Court committed reversible error for not discussing segreability where both the DOJ and SEC state they produced all non-exempt segregable documents. *Id.,* Wilkinson Decl., Dkt. No. 28-2, ¶ 39; Supplemental McInerney Decl., Dkt. No. 57-3, ¶ 8.

that a database of emails is not a "system of records" because emails are not indexed by a personal identifier). As the DOJ declaration explained, the USAO-SDFLA is an "agency or component thereof which performs as its principal function any activity pertaining to the law enforcement of criminal laws." *See Watson v. DOJ,* No. 12-21209, 2013 WL 4749916 at * 3 (W.D. La. Sept. 3, 2013): *Plunkett v. DOJ,* 924 F. Supp. 2d 289, 306-07 (D.D.C. 2013); *Holub v. EOUSA,* No. 09-347, 2009 WL 3247000 at * 5-6 (D.D.C. Oct. 12, 2009). As such, its systems of records related to that function are exempt from disclosure under 5 U.S.C. § 552a(j)(2). As further noted by Mr. Wilkinson in his second declaration, some of the records that were responsive to the Request were related to investigations or prosecutions of third parties. *See* Second Wilkinson Decl., Dkt. No. 57-2, ¶ 12. Consequently, those records were outside the scope of the PA and were processed solely under FOIA.

However, some records retrieved by the USAO-SDFLA were subject to the PA, namely, those relating to Plaintiff's internship with the office and maintained in the Human Resources office under his name; thus, they were processed under the PA. *Id.,* Dkt. No. 57-2, ¶¶ 13-14. EOUSA determined that all PA material should be released in full and no PA exemptions were applied. *Id.* On this issue, the Marcenaros' Supplemental Decl. notes that, although Plaintiff never identified any particular system of records at the USAO-SDFLA he wanted searched, for purposes of his PA request, the office searched and found a file in his name in the Human Resources Department which is a covered PA record system. *See* Supplemental Marcenaros Decl., Dkt. No. 57-1, ¶ 10. In addition, to comply with its FOIA obligations, the office thoroughly searched for other records responsive to his request. *Id.,* ¶ 11. In sum, all systems of records covered by the PA were searched. *Id.*

In short, even if this Court's PA ruling was in error, Plaintiff's challenge to this Court's March 2021 Order regarding his PA claim is without merit and this Court should deny the Reconsideration Motion. *See, e. g., Bauersachs,* No. 19-cv-10295, 2019 WL 4918271 at * 3 (D. Mass. Oct 4, 2019)

(although court may have committed manifest error of law in applying the *Booker-Feldman* doctrine as the reason for dismissal of complaint, such error was harmless because the action was subject to dismissal on other grounds, thereby warranting denial of reconsideration motion).

(5) <u>Plaintiff's Motion for *In Camera* Review Should be Denied</u>

Plaintiff takes another bite at the *in camera* apple, despite this Court's May 3, 2021 Order, which can be readily rejected. Again, 5 U.S.C. 552(a)(4)(B), courts limit *in camera* review to extraordinary rather than routine cases since such review circumvents the adversarial process and can be burdensome to conduct. *Missouri Coalition for Environmental Foundation. Coal. v. U.S. Army Corp. of Engineers*, 542 F.3d 1204, 1210 (8th Cir. 2008) (stating that "*in camera* inspection should be limited as it is contrary to the traditional role of deciding issues in an adversarial context upon evidence produced in court.") (internal quotations and citation omitted).

*In camera* review is particularly unnecessary when agencies, like here, meet their burden of proof through reasonably detailed declarations. *Maynard,* 986 F.2d at 559 (1st Cir. 1993) (court conducted *in camera* review of documents because CIA could not submit a detailed affidavit since to do so would have revealed sensitive information); *Associated. Press v. U.S. Dept. of Justice*, 549 F.3d 62, 67 (2d Cir. 2008) (concluding that, "in light of relatively detailed nature of the [agency's] declarations," district court's decision not to conduct *in camera* review was not an abuse of discretion).

Here, as this Court found in its March 2021 Order, the DOJ has submitted detailed declarations concerning the information contained in the redactions from the documents at issue.[16] Plaintiff's request for *in camera* review provides no legitimate support for said review in this context. *Abdul-Alim v. Wray,* 277 F. Supp. 3d 199, 211 (D. Mass. 2017) (even though only 29 pages were at issue,

---

[16] As noted previously, SEC has only redacted personal information under Exemption 6 in all the documents it produced; thus, Plaintiff's *in camera* review would not apply to it. Overall, Plaintiff has not claimed that Exemption 6 redactions were not permissible. As mentioned above, the little he identifies in his Reconsideration Motion as it relates to SEC (*see* Dkt. No. 76, p. 19) had already been made or could have been made in his Opposition to MSJ, thus requiring denial of his Motion.

court refused *in camera* review because agency declaration was sufficient to determine adequacy of search); *See also Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978) ("*In camera* inspection requires effort and resources and therefore a court should not resort to it routinely on the theory that 'it can't hurt.'").

(6) <u>Plaintiff's Request for a Mandatory Hearing should be Rejected</u>

Plaintiff baldly maintains that a mandatory hearing is required because the Court took judicial notice of the procedural posture of the Massachusetts *Moreno* litigation when it rendered its March 2021 Order. *See* Dkt. No. 73, pp. 2-3. Plaintiff has repeatedly used this information as the basis for his government misconduct claim, but apparently the Court is forbidden to review a public record in this regard. That being said, Defendants maintain that no greater waste of resources could be imagined than a hearing on filings that are not only in direct conflict with the Court's May 2021 Order, but represent issues already briefed, argued, and decided by this Court. Certainly, Fed. R. Evid. 201(e) should not be used as an avenue for such gamesmanship. *See Jonas v. Jonas,* No. 13-cv-90-DWM, 2014 WL 978099, at * 2 (D. Mt. Mar. 14, 2014).

<u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff's Reconsideration Motion should be denied, and Defendants' Motion for Partial Summary Judgment be granted.

Respectfully submitted,

NATHAN R. MENDELL,
Acting United States Attorney

By:   */s/ Michael Sady*
Michael Sady
Assistant U.S. Attorney
U.S. Attorney's Office
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100
Michael.sady@usdoj.gov