**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____ )
                                )
JONATHAN MULLANE,               )
    Plaintiff,              )    DOCKET NO. 1:19-CV-12379-DJC
 v.                             )
                                )
UNITED STATES DEPARTMENT        )
OF JUSTICE,                     )
and                             )
UNITED STATES SECURITIES        )
AND EXCHANGE COMMISSION         )
    Defendants.             )
_____ )


**MOTION OF PLAINTIFF JONATHAN MULLANE TO VACATE JUDGMENT**
**PURSUANT FED. R.  CIV. P 60(b)(2) and (3), OR IN THE ALTERNATIVE FOR AN**
**INDICATIVE RULING PURSUANT TO FED. R. CIV. P. 62.1**


Now comes the Proposed Plaintiff Jonathan Mullane (hereinafter, "Plaintiff" ) and

hereby respectfully moves this Honorable Court to vacate the judgement entered in this

matter [DE 90] pursuant to Fed. R. Civ. P. 60(b)(2) and (3), or in the alternative for an

indicative ruling pursuant to Fed. R. Civ. P. 62.1.

Fed. R. Civ. P. 60 (b)(2) and (3) allows for "Relief from a Final Judgment, Order,

or Proceeding," and at this time the Court has jurisdiction to do so since to the appeal

has not been entered in the First Circuit Court of Appeals as of this date, and the filing

of this motion is within one (1) year from the date of judgment being February 14, 2022

[DE90].

Fed. R. Civ. P. 62.1 allows a district court to issue an indicative ruling on a motion

for relief from judgment when such a motion is filed during a pending appeal.  A District

Court can rule that it would grant the requested motion provided the Court of Appeals remands for that purpose, and/or that the motion raises a substantial legal issue(s).

When the District Court indicates that it would grant the requested motion for relief, the Court of Appeals may then remand at its discretion. Fed. R. App. P. 12.1(b).


**PROCEDURAL BACKGROUND**

The subject claims relating hereto all arise under the Freedom of Information Act (5 U.S.C. 552)("FOIA"), and the Privacy Act (5 U.S.C. 552a)("PA").This action was commenced on November 19, 2019 [DE 1]. Approximately 2 years and 3 months thereafter a final judgment (summary judgment) [DE 90] was entered by this Court.

During the course of these proceedings the Defendants filed a motion for summary judgment [DE 27].  Notwithstanding the Plaintiff's opposition thereto [DE 44], and his motion for reconsideration [DE 71], the Court entered partial summary judgment for the Defendants [DE 66].

Subsequent thereto, the Defendants filed a motion for partial summary judgment [DE 69], and again despite the Plaintiff's opposition and cross-motion for summary judgment [DE 74], the Court denied Plaintiff's cross-motion for summary judgment and allowed the Defendant's partial summary judgment [DE 86].

Plaintiff twice attempted to amend his complaint [DE 23 and 53] to include his PA claims in this action in a good faith effort to avoid any more of the potential conflicts of interest that foreseeably existed (**EXHIBIT D**), but these motions to amend were both denied by the Court [DE 35 and 66].

Plaintiff filed a motion to consolidate and transfer this case with a pending

Privacy Act cases in the U.S. District Court D.C. [DE 84], which was also denied by this

Court [DE 89].

Accordingly, judgment was entered by the Court on February 14, 2022 [DE 90].

<u>ARGUMENT</u>

**Summary Judgment** <u>Legal Standard:</u>   The role of summary judgment is "to

pierce the pleadings and to assess the proof in order to see whether there is a genuine

need for trial." <u>Mesnick v. Gen. Elec. Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991) (quoting

<u>Garside v. Osco Drug, Inc</u>., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the

moving party to show, through the pleadings, discovery and affidavits, "that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of

the suit under the governing law . . . ." <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242,

248 (1986). A genuine issue of material fact exists where the evidence with respect to

the material fact in dispute "is such that a reasonable jury could return a verdict for the

nonmoving party." Id. If the moving party satisfies its burden, the burden shifts to the

non-moving party to set forth specific facts showing that there is a genuine, triable

issue. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). The Court must view the

entire record in the light most favorable to the non-moving party, and make all

reasonable inferences in that party's favor. <u>O'Connor v. Steeves</u>, 994 F.2d 905, 907 (1st

Cir. 1993). Summary judgment is appropriate only if, after viewing the record in the non-

moving party's favor, the Court determines that no genuine issue of material fact exists,

and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477

U.S. at 322-23.

Unfortunately, the Court failed to address in its consideration and order(s) the

highly relevant fact that this case involves both FOIA and PA, and in that proper context

it materially and substantively impacts any legal analysis of the applicable Exemptions

that were available to Defendants.  The Court erroneously concluded that "Mullane's

Privacy Act claim is barred because he failed to exhaust his administrative remedies...."

[DE 66 – p. 24].  However, these is no expressed provision under the Privacy Act to

take an administrative appeal, and there was no evidence on the record presented by

the Defendants to establish or to make such an inaccurate factual conclusion. To the

contrary, as the Defendants' own affidavits that were submitted in support of its motion

for summary judgment, they readily admit and confirm that every FOIA request from an

individual is treated by the agency as also being a Privacy Act request – there is no

differentiation administratively.  That very significant legal issue aside,  FOIA mandates

disclosure of agency records upon request, unless they are subject to one of the nine

statutory exemptions. See Milner v. Dep't of Navy, 562 U.S. 562, 565 (2011); see also 5

U.S.C. §§ 552(a)(3)(A), (b)(1)–(9). "In order to obtain summary judgment the agency

must show that it made a **good faith effort** to conduct a search for the requested

records, using methods which can be reasonably expected to produce the information

requested." Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). This court

applies a reasonableness standard to determine whether an agency performed an

adequate search, Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 27 (D.C. Cir. 1998),

and our review is heavily fact-dependent, Weisberg v. U.S. Dep't of Justice, 705 F.2d

1344, 1351 (D.C. Cir. 1983). The agency bears the burden of justifying the applicability of FOIA exemptions, which are exclusive and must be narrowly construed. Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec., 777 F.3d 518, 522 (D.C. Cir. 2015).

**Good Faith:**  A significant discussion and documentation appearing in Plaintiff's oppositions  and cross-motion for summary judgment by the Plaintiff involved what is the indisputably a material fact  - the existence, or the lack, of "good faith."  In that context, as demonstrated to this Court throughout these proceedings there existed an ongoing pervasive conflicts of interest situation by these Defendants and others assisting them.  The final and untimely responses to these document requests  can best be described as a semblance of compliance under FOIA and PA.

As previously argued and well-documented to this Court, there was the obvious intentional and deliberate "slow-walking" and self-serving timing of the partial document production received to date.  These documents were required to be produced in a matter of weeks upon request on October 14, 2018  - not several years later in 2021 as happened in this case. (See **EXHIBIT A**.)  This extreme and unlawful delay was one that was knowingly and intentionally coordinated and undertaken for the specific purpose of obtaining an unlawful advantage in the related pending and companion civil litigation arising out of these same events. The related pending case involved the same AUSA Jason C. Weida ("Weida") acting a defense counsel of record in that case at all times relevant hereto, and with one of his clients being former AUSA Alison Lehr ("Lehr).   As the record before this course confirms, Lehr was the internship supervisor for the Plaintiff in the USAO at all times that these incidents occurred.  As demonstrated in the affidavit being Exhibit 8 to Plaintiff's Omnibus Opposition [DE 44], a copy being

attached hereto for the convenience of the Court as **EXHIBIT B**, Lehr certainly did not

demonstrate being the kind of person behaving and having due respect for the law, nor

behaving like one in conformity to the mores of even a normal law-abiding citizen – let

alone a higher standard expected of one being as AUSA.

However, as the record in this case clearly demonstrates from the government's

own documents, that despite Lehr being requested by a paralegal in the Miami USAO to

not be involved in the FOIA/PA document production, she proceeded anyway to lead

the office in furnishing documents to the EO that were then at least partially produced

and highly redacted.  Of course, thanks to her attorney Weida,  and those in her office,

she of course was well aware that the FOIA/PA request had been requested by Plaintiff

over two (2) years earlier.  This inexcusable time delay certainly gave her more than

enough time to strategize how to minimize and engage in damage control.  It was this

direct involvement of Lehr, in combination with the involvement of her counsel Weida, in

this FOIA/PA document production that not only was blatant misconduct and a conflict

of interest for both, but it has irreparably tainted the reliability and credibility of this entire

document response that Plaintiff has received to date.

With Lehr as one of his clients, and having another client being a judge within

that same courthouse, Weida was at all times relevant hereto orchestrating and

communicating behind the scenes with others from the Miami USAO and the EOUSA of

the DOJ – a fact that has been documented and is now part of the record herein.

Amazingly, all of this is evident just from the documents that were produced and not

redacted, so what will unredacted and a complete document production demonstrate?

The self-serving timing and the substance (what to produce, what to redact, etc.) of the

document production required hereunder in these  cases was the coordinated efforts of many, which is why discovery was such an important .  Despite what was an apparent prohibition provided by Rule 1.7 of the Rules of Professional Responsibility,  Weida actually appeared as counsel of record for all of these defendants in both related cases. record of this case. It was only after my objection communicated directly to Weida before he filed his appearance in this case, and thereafter following considerable telephonic confrontational objections to his continuing to appear in this matter with his superiors, that he finally withdrew his appearance in this case [DE 12].

It appears from the Orders of the Court that it was not willing to accept these undisputed facts, the extraordinary highly unusual delays, and the coincidental convenient timing of the document production events, together with the supporting documents and emails, to find that the Defendants were acting in "bad faith" at all times relevant hereto.  There is no disagreement that if the court had made a finding of "bad faith" that the consequence thereof would be yet another reason why the Defendants would not be entitled to assert the exemptions they have as a matter of law.  However, in applying the basic and applicable summary judgment standards noted above, and given the record of this case, there was indeed "a dispute of a material fact" thereby summary judgment should not have entered.  As will follow, based upon the newly discovered evidence described hereinafter, there can be no doubt at least as to the core material fact that the Defendants at all times relevant hereto engaged in substantial  and inexcusable misconduct, to the level of  irreparably tainting the reliability and credibility of their entire document response.  Indeed, the facts of this case, and the misconduct engaged in one or more these government actors, may give rise to the need for this

Court to take appropriate action and referral that is required by the Judicial Code of
Conduct, Canon 3B(6)?

Accordingly, it should be no surprise to this Court that once again after an entry
of judgment in this matter, there is the emergence of **"newly discovered evidence."**
This evidence produced by the government is a related civil proceeding in volving this
Plaintiff is right on point to the foregoing discussion, and confirms what has always been
argued by the Plaintiff as an obvious fact in the "bad faith" conduct involved in this
FOIA/PA document production process.  This evidence and admission confirm and
admits that there has always existed a pervasive and malicious conflicts of interest
surrounding this FOIA/PA  document production – both within and without the Miami
USAO. On March 3, 2022 (after judgment had entered in this case), there was filed in
the U.S. District Court for the Southern District of Florida the attached quite important
**EXHIBIT C** memo, being a directive from the Washington office of the DOJ.  Although
this directive would have been more timely, effective and appropriately had it been filed
and mandated upon the commencement of this action, or better would have been at the
time of the initial FOIA/PA request back in October 2018, nonetheless the DOJ had
indeed finally acknowledged and admits of record that which the Plaintiff has argued
throughout this case - which was frustratingly obvious.  In pertinent part, the DOJ has
now acknowledged with respect to the entire Miami USAO as follows:

> **THIS IS FORMAL NOTICE** that Bradley Weinsheimer, Associate Deputy
> Attorney General (ADAG), has approved the recusal of the entire United States
> Attorney's Office for the Southern District of Florida from the Privacy Act
> lawsuit brought by a former USAO intern [Mullane]. The ADAG authorized this
> **recusal i**n accordance with Justice Manual 3-1.140 **based upon existing**

**conflicts of interest or the appearance of conflicts of interest** pertaining to the matter.

…All Assistant United States Attorneys subsequently assigned to this matter **must be appointed as Special Attorneys in order to appear on behalf of the government** in the Southern District of Florida….

In the event that the Middle District of Florida wants **to use AUSAs from the Southern District of Florida** to assist it in this matter, it **must** submit a request to General Counsel's Office, EOUSA, that includes:  (1) a detailed justification of the need for the use of an USUA; and (2) a detailed statement of the role the USA would play.  The ADAG retains the authority to approve/disapprove any such request.

Nothing has changed with respect to the Miami USAO, going back to October 2018, to the DOJ filing of record the **EXHIBIT C** this month.  Those conflicts of interest existed back in 2018, and they certainly continue to exist today. Indeed, Weida already had his own conflict of interest issues even before immersing himself into interacting, coordinating and directing the Miami USAO (the DOJ now admitting they still have a conflict of interest), and also EOUSA at DOJ. They all collectively orchestrated the dilatory, incomplete and self-serving document FOIA/PA production on behalf of their employer the U.S. Government.  This, inter alia, was another most compelling reason the allowance discovery and a review of the redacted documents in camera was so important to ensuring the integrity of this FOIA/PA production process and the seemingly end result.

What the DOJ has now finally done in a very late effort to disarm these conflicts of interest within the Miami USAO and others, they should have done at least at the

time this action for commenced.  It would have prevented Weida from coordinating as he did with the Miami USAO and EOUSA.  Also, the **EXHIBIT C** confirms and admits not only the error in their ways in not acknowledging sooner the irreparable harm created by such conflicts, but it is refreshing to see that the government acknowledgers that the Rules of Professional Responsibility must apply to them as well.  See <u>Texaco Puerto Rico, Inc. v. Department of Consumer Affairs</u>, 60 F.3d 867, 885 (1st Cir. 1995); <u>In re Sealed Case</u>, 121 F.3D 729, 738 (D.C. Cir. 1997)("[W]here there is reason to believe the documents sought may shed light on government misconduct, the privilege is routinely denied, on the grounds that shielding internal government deliberations in this context is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in honest, effective government.")

Finally, we also have the newly filed Order of Transfer dated March 14, 2022 (**EXHIBIT D**).  Consistent with the foregoing, are the additional conflicts of interest surrounding this same Miami USAO and courthouse.  As noted therein, every single judge in that district has recused themselves based upon a conflict of interest, or at least have indicated that they will refuse an assignment of the case to them for the same reason with regard to this related Privacy Act case.

Knowing full-well of the existence of these conflicts and the very social culture involved within the Miami federal courthouse, the Plaintiff twice attempted to amend his complaint [DE 23 and 53] to include his PA claims in this action in a good faith effort to avoid such conflicts and the inefficiencies of all concerned that would be created thereby. Having no practical alternative or choice of jurisdiction, the Plaintiff commenced

his Privacy Act case in the U.S. District Court of D.C.  The USAO there, in an effort to avoid what appeared to them to be another imposition on them, successfully moved to have it transferred to the U.S. District Miami over Plaintiff's objection and informing the court that Miami was conflicted out of this and every case.   However, not then having the benefit of these new filings on this subject matter, the court unwittingly did transfer it to Miami only to have retransferred back to it as noted in **EXHIBIT D.**

This is a difficult and inconvenient situation for all of the many involved, including the courts. It is litigation that unnecessarily and inexcusably has gone on for way too long.  In this context, the calming wisdom and experience of Magistrate Dein was provided during a February of 2019 hearing, whereby she stated in open court to all counsel (including Weida), "It is my strong suggestion that you all agree to a mediation to resolve this matter as soon as you can."  There would certainly be a lot more trees in the forest had her advice been followed, and perhaps a few more dollars in the U.S. Treasury?   As this Court knows from all her years of experiences as an AUSA, one can never seem to find a person within the government having the authority and interest to resolve civil cases – regardless of the facts or the merits.  Certainly that has been my frustrating experience with all these related matter going back to December of 2018, and it was a case at the time would have been easy to resolve in the best interest of everyone.

## <u>SUMMARY</u>

This newly discovered evidence attached hereto at a minimum puts into dispute the question as to whether or not there existed "bad faith" and government misconduct

that was involved in the FOIA/PA document production process.  **EXHIBIT C** is actually late but a welcomed admission by the Defendants of the existence of the pervasive conflict of interest involving all who participated in this FOIA/PA production process - from the Miami USOA, Weida, and the EOUSA of the DOJ.  They were all communicating and cooperating amongst each other in pursuit of their common goal which, *inter alia*, violated of the statutory rights (FOIA/PA) granted to Plaintiff.  Their obvious goal was to protect and defeat the ongoing parallel and related civil case in which Weida was defense counsel of record.  The Defendants were not only involved in misconduct in a general sense, but such actions were inconsistent with our obligations as officers of the court, and our duty to always act with candor toward the court.  We have hopefully nor arrived at a place where winning at all costs has now become the acceptable and expected ethical standard in our profession?

"[W]here there is reason to believe…government misconduct…shielding internal government deliberations in this context is routinely denied, on the grounds that shielding internal government deliberations in this context does not serve the public's interest in **honest, effective government**.") <u>In re Sealed Case</u>, *Id*.  In this context, and in the interest of our having an "honest, effective government," the Plaintiff respectfully requests the Court to vacate its judgment of February 14, 2022 [DE 90].  Additionally,  in the interests of justice, overall judicial economy and the expeditious and final conclusion of all these related case before the same court, request is also made to allow the consolidation and transfer of this case to the U.S. District Court in D.C. as previously requested [DE 84].  In the event a resolution has not been arrived at in the interim, this would obviate the need for there to be two separate appeals h- one here (with notice of

appeal now pending before this Court) and in D.C.  As consolidated cases they would involve the same core facts, statutory and legal issues, and would result in one complete and consistent decision by a single Circuit Court of Appeals.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), the Proposed Plaintiff-Intervenor respectfully requests oral argument on this motion, as he believes that oral argument may assist the Court in its consideration of the merits hereof.

## RELIEF

**WHEREFORE,** the Plaintiff respectfully requests that this Honorable Court:

(i)      Enter an order vacating the judgment entered on February 14, 2022 [DE 90]; or

(ii)     Enter a favorable indicative ruling to the attached Proposed Motion for Reconsideration and/or Relief from Final Judgment [DE 90], indicating that that it would grant the motion for relief were the Court of Appeals to remand at its discretion for this purpose as permitted under Fed. R. Civ. P. 62.1; and/or in the alternative,

(iii)    Enter an order to consolidate and transfer this case to the U.S. District Court in the District of Columbia as previously requested [DE 84].

DATED: March 21, 2022

Respectfully submitted,

/s/ E. Peter Mullane, Esq.
E. Peter Mullane, Esq.
MULLANE, MICHEL & McINNES
6 Bennett Street
Cambridge, MA 02138
Tel. (617) 661-9000
Email:  peter@3mlaw.com

## L.R. 7.1(a)(2) CERTIFICATION

Pursuant to L.R. 7.1(a)(2) the undersigned hereby certifies that he attempted in good faith to confer with counsel for Defendants via electronic correspondence on March 19, 2022, who did not respond.

/s/ E. Peter Mullane, Esq.
E. PETER MULLANE, ESQ.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this filing submitted via the CM/ECF system shall be transmitted electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF"), and that paper copies shall be mailed via first class mail, postage prepaid, to those indicated as non-registered participants on the date of filing.

DATED:        March 21, 2022

/s/ E. Peter Mullane, Esq.
E. PETER MULLANE, ESQ.