## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

JONATHAN MULLANE,  )
      Plaintiff,  )   DOCKET NO. 1:19-CV-12379-DJC
v.  )
  )
UNITED STATES DEPARTMENT  )
OF JUSTICE,  )
and  )
UNITED STATES SECURITIES  )
AND EXCHANGE COMMISSION  )
      Defendants.  )
  )

**(a) OMNIBUS SUPPLEMENT TO MOTION OF PLAINTIFF JONATHAN MULLANE TO VACATE JUDGMENT PURSUANT FED. R.  CIV. P 60(b)(2)and (3), OR IN THE ALTERNATIVE FOR AN INDICATIVE RULING PURSUANT TO FED. R. CIV. P. 62.1.;**
**(b) MOTION FOR DISQUALIFICATION OF BOSTON U.S. ATTORNEY'S OFFICE; AND**
**(c) RECONSIDERATION OF MOTION FOR CONSOLIDATE AND TRANSFER**

Now comes the Plaintiff Jonathan Mullane (hereinafter, "Plaintiff" ) and in further supplement to his pending motion now before this Honorable Court to vacate the judgement entered in this matter [DE 90] pursuant to Fed. R. Civ. P. 60(b)(2) and (3), or in the alternative for an indicative ruling pursuant to Fed. R. Civ. P. 62.1. [DE 92], he further states in support thereof as follows.

## RELATED PROCEDURAL BACKGROUND

During the course of these proceedings the Plaintiff filed a motion for discovery [DE 15], and motions for In Camera Review [DE 72, 77 and 82]. Also, Plaintiff twice attempted to amend his complaint [DE 23 and 53] to include his PA claims in this action.

These discovery motions were filed in a good faith effort to support through the discovery a further demonstration to the Court the existence of these multiple ongoing conflicts of interest, and that it was apparent and foreseeably that this governmental misconduct would continue to exist without the intervention of this Court – as in fact has happened.  However, all these motions were unfortunately denied by the Court, thereby allowing the governmental misconduct to continue on undisclosed to this Court, but which has irreparably tainted the integrity and credibility of this entire FOIA/PA document production process by these Defendants – including the entire response from October 2018 through the present date.

Plaintiff also filed in a good faith in an effort to avoid these ongoing obstructions of justice and conflicts of interests by the government actors involved in this FOIA/PA document production a motion to consolidate and transfer this case with a pending Privacy Act case in the U.S. District Court D.C. [now docketed as 1:22-cv-00725-RBW]. That motion was also unfortunately denied by this Court [DE 89], and has allowed these governmental conflicts of interest to continue on, all to the irreparable harm and detriment of the Plaintiff.

## **BACKGROUND**

This entire FOIA/PA production process, from the initial request by the Plaintiff back in October of 2018, through the present date was one that was dominated, permeated and irreparably tainted by the collective "bad faith" conduct of certain government actors.  This entire response to Plaintiff's subject FOIA/PA request was difunctionally conducted within a diabolical web of conflicts of interest - as the record in this case clearly indicates.  As previously noted and submitted to this court, it was only

after the vigorous objection of the undersigned, and providing the Boston U.S. Attorney's Office with a copy of the attached Motion for Disqualification [**EXHIBIT A**], that was intended to be filed with this Court, that there was an agreement that AUSA Jason Weida ("Weida") would withdraw his appearance due to his obvious conflict of interest.

However, at such time when the Boston U.S. Attorney's Office became aware of Weida's engaging in his conflict of interest activities relating to his representation of Alison Lehr and Moreno, by his communicating, orchestrating and coordinating with the conflicted Miami U.S. Attorney's Office and the EOUSA to obstruct their required timely and complete production of the FOIA/PA documents, they were ethically required to recuse their entire office from any and all involvement in this case.  They were of course well-aware that Weida was engaged in the defense of his individual clients (Lehr and Moreno), and that his efforts and self-serving activities involved the unlawful efforts to stonewall, slow-walk, and manipulate the production and redactions of the FOIA/PA documents, all of which were highly relevant to the success of Plaintiff's claims – and they indeed remain so.  They also were aware that such "bad faith" conduct by Weida was for the sole purpose to assist and benefit him and his defense of Alison Lehr (who incredibly was then also spearheading the FOIA/PA document production at the conflicted Miami U.S.A.O.), and his defense of a federal judge (sitting in court that was also conflicted).

In this context, the Boston U.S.A.O. failed to timely recuse themselves and request Special Counsel be appointed by the Department of Justice.  They were required to request and implement the same appropriate DOJ agency procedure that

3

was finally effectuated to deal with the conflicts that have always existed at all times

relevant hereto with the involvement of the Miami U.S. Attorney's Office – and for these

very same ethical reasons and considerations.

This recusal was also required and mandated under our applicable Rules of

**Professional Conduct 1.10: Imputed Disqualification: General Rule**, which reads in

pertinent part as follows:

> (a) While lawyers are associated in a firm, none of them shall knowingly
> represent a client when any one of them practicing alone would be prohibited
> from doing so by Rules 1.7 or 1.9….
>
> Comment:
>
> Definition of "Firm":
> [1] For purposes of the Rules of Professional Conduct, the term "firm" includes
> lawyers in a private firm, and lawyers in the legal department of a corporation, or
> other organization, or in a legal services organization….
>
> [2] With respect to the law department of any organization, there is ordinarily no
> question that the members of the department constitute a firm within the meaning
> of the Rules of Professional Conduct.

## ARGUMENT

**Good Faith Standard:** "In order to obtain summary judgment the agency must

show that it made a **good faith effort** to conduct a search for the requested records,

using methods which can be reasonably expected to produce the information

requested." See Milner v. Dep't of Navy, 562 U.S. 562, 565 (2011); see also 5 U.S.C. §§

552(a)(3)(A), (b)(1)–(9). Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir.

1990). This court applies a reasonableness standard to determine whether an agency

performed an adequate search, Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 27

(D.C. Cir. 1998), and our review is heavily fact-dependent, <u>Weisberg v. U.S. Dep't of Justice,</u> 705 F.2d 1344, 1351 (D.C. Cir. 1983).

The significant and extensive discussions and documentation appearing of record in this case establishes a clear and indisputably material fact - there has not been the exercise of "good faith" or an "adequate search" by these Defendants in their untimely, unlawfully redacted and partial production of the requested FOIA/PA documents.   In that context, as has been demonstrated and argued to this Court throughout these proceedings of record, "good faith" did not, and cannot, exist through an ongoing deceptive scheme conducted within a web of pervasive conflicts of interests and obstruction of justice that were engaged in by these Defendants and others representing and/or providing assistance to them throughout their document production response process.

Despite the prohibition provided by Rule 1.7 of the Rules of Professional Responsibility, Weida initially also appeared for a time as counsel of record in this matter. However, these dual appearances of record unwittingly are an admission of misconduct of record, being totally consistent with his prior ongoing "bad faith" conflicted interactions, communications and misconduct.  He certainly could not represent all of the conflicting interest and statutory obligations of all of the Defendants (clients) in both of these related cases. See, **EXHIBIT A**.  However, despite Weida's appropriate and untimely withdrawal of appearance in this matter, most of the harm and prejudice that he had engineered had already occurred.

The Boston U.S. Attorney's Office (Weida's office) then appeared of record in his place in this matter [DE 9], despite the clear prohibition of them appearing in these

circumstances as provided by Rule 1.10 of the Rules of Professional Responsibility. Thereby, this was replacing one ASUA who had a conflict of interest with another who also had a conflict of interest being in the same office and department.  It raises the rhetorical question whether at that point the interest/client loyalty of the Boston U.S. Attorney's Office was that of protecting by failing to disclose the misconduct of their employee Weida to the Court, or did they act in the best interests of their clients (DOJ and SEC) by failing to disclose Weida's "bad faith" conduct to the Court in compliance with their ethical obligations under Rule 3.3 in acting with "candor toward the court?" It certainly is apparent that the interests/client loyalty of the Boston U.S. Attorney's Office was never that of ensuring that there was full and timely compliance of the FOIA/PA document production as required of these Defendants by statute.  The facts of the case are more consistent with that of the Boston U.S. Attorney's Office being focused on protecting Weida's misconduct by continuing on with this ongoing scheme to obstruct and avoid the disclosure of evidence that would be harmful to the defense of Weida's individual clients. Notwithstanding, the bottom line is that the continuing appearance of the Boston U.S, Attorney's Office is prohibited as the facts exist and are set forth herein establishing their actual conflict of interest, and what is no debatable is that their appearance in this matter has always been prohibited by said Rule 1.10.

As previously noted and requested, and based upon the facts of record in this case, it is important for this Court in the interests of preserving an "honest effective government" to take the appropriate action at this time as required by the Judicial Code of Conduct, Canon 3B(6), with a referral of this matter for a complete investigation by the Office of the Inspector General (DOJ).  See Texaco Puerto Rico, Inc. v. Department

6

of Consumer Affairs, 60 F.3d 867, 885 (1ˢᵗ Cir. 1995); In re Sealed Case, 121 F.3D 729,

738 (D.C. Cir. 1997)("[W]here there is reason to believe the documents sought may

shed light on government misconduct, the privilege is routinely denied, on the grounds

that shielding internal government deliberations in this context is routinely denied, on

the grounds that **shielding internal government deliberations in this context does**

**not serve the public's interest in honest, effective government.**")

## SUMMARY

This newly discovered evidence and the record of this case further established

the unlawful and "bad faith" communicating and cooperation amongst these government

actors in pursuit of the common goal of assisting Weida in his defense of Lehr and

Moreno.  All of these obstruction efforts, *inter alia*, unlawfully interfered with the

administration of justice, and the due process and statutory rights (FOIA/PA) granted to

Plaintiff.  Their obvious goal at all times relevant hereto was to protect and defeat the

ongoing parallel and related civil case in which Weida was the defense counsel of

record.  This fact is obvious just from a review of the record and the chronology of

events therein in both these ongoing cases as presently exists.

The existence of these conflicts, and the motivation for engaging in such

governmental misconduct, would have been further supported with the assistance of

discovery and an In Camera inspection of the redacted documents - to the extent that

they were finally actually produced in part.  All of these government actors that were

involved in this misconduct and obstruction were attorneys, and as such were officers of

the court with a duty to always act with candor toward the court.  Their actions as

attorneys can never be justified when as in this case their failure to act with candor toward the court created a miscarriage of justice – as what happened in this case.

In this regard, and in the interests of ultimately achieving justice, considering overall judicial economy, and to allow the expeditious and final conclusion of these related case to be heard before the same court, Plaintiff again respectfully requests, upon the vacating of judgment, the consolidation and transfer of this case to the U.S. District Court in D.C. (now noted as 1:22-cv-00725-RBW) as previously requested [DE 84].

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), the Proposed Plaintiff-Intervenor respectfully requests oral argument on this motion, as he believes that oral argument may assist the Court in its consideration of the merits hereof.

## RELIEF

**WHEREFORE,** the Plaintiff respectfully requests that this Honorable Court:

(i)     Enter an order vacating the judgment entered on February 14, 2022 [DE 90]; or

(ii)    Enter a favorable indicative ruling to the attached Proposed Motion for Reconsideration and/or Relief from Final Judgment [DE 90], indicating that that it would grant the motion for relief were the Court of Appeals to remand at its discretion for this purpose as permitted under Fed. R. Civ. P. 62.1; and/or in the alternative,

(iii)   Enter an order to consolidate and transfer this case to the U.S. District Court in the District of Columbia (1:22-cv-00725) as previously requested [DE 84].

(iv)   Enter an order immediately disqualifying the Boston U.S. Attorney's Office from appearing in this case, and including their disqualification from appearing in any appeals relating hereto.

DATED: March 31, 2022

Respectfully submitted,

/s/ E. Peter Mullane, Esq.
E. Peter Mullane, Esq.
MULLANE, MICHEL & McINNES
6 Bennett Street
Cambridge, MA 02138
Tel. (617) 661-9000
Email:  peter@3mlaw.com

## L.R. 7.1(a)(2) CERTIFICATION

Pursuant to L.R. 7.1(a)(2) the undersigned hereby certifies that he attempted in good faith to confer with counsel for Defendants via electronic correspondence on March 22, 2022, who did not respond.

/s/ E. Peter Mullane, Esq.
E. PETER MULLANE, ESQ.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that this filing submitted via the CM/ECF system shall be transmitted electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF"), and that paper copies shall be mailed via first class mail, postage prepaid, to those indicated as non-registered participants on the date of filing.

DATED:        March 31, 2022

/s/ E. Peter Mullane, Esq.
E. PETER MULLANE, ESQ.